**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Xiaoling Che and Jinyan Duan, | Case No. 1:25-cv-04946 |
| Plaintiffs, | |
| v. | Judge: Virginia M. Kendall |
| Shenzhen Mumuwan Maoyi Youxian Gong Si et al., | Complaint Filed:  May 5, 2025 |
| Defendants. | |

**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   THE ASSERTED PATENT ...............................................................................2

III.  LEGAL STANDARD ........................................................................................6

A.    GENERAL CLAIM CONSTRUCTION STANDARD ....................................6

B.    MEANS-PLUS-FUNCTION CLAIMS..............................................................7

C.    INDEFINITE CLAIMS .....................................................................................8

IV.   CONSTRUCTION OF THE DISPUTED TERMS OF THE '648 PATENT .................8

A.    TERM 1: "A ROTATING ASSEMBLY" (CLAIM 10)......................................8

B.    TERM 2: "SUPPLEMENT ARRANGEMENT" (CLAIMS 1, 5-6, 9-10, 13, 15, 17, 19, 23)  11

C.    TERM 3: "A FIXING PORTION EXTENDING FORM THE PUZZLE PLATE" (CLAIMS 1, 10, AND 17)........................................................................14

D.    TERM 4: "RESTRICTING WALL" (CLAIMS 1, 10, 13, 17, AND 20) ........................16

E.    TERM 5: "SUCCESSIVELY STACKED" (CLAIMS 1, 10,  AND 17) ........................17

F.    TERM 6: "ACTUATED TO SLIDE IN-AND-OUT OF THE DRAWER CAVITY" (CLAIMS 1, 10, 17, AND 19)........................................................................20

G.    TERM 7: "COOPERATED WITH THE PUZZLE BOARD FOR FORMING AT LEAST ONE DRAWER CAVITY" (CLAIMS 1 AND 10)........................................22

i

**TABLE OF AUTHORITIES**

Case Law

*Feit Elec. Co. v. CFL Techs., LLC*, No. 13 09339, 2025 WL 2444161, at *2 (N.D. Ill. Aug. 25, 2025)..................................................................................................................................9

*IPCom GmbH & Co. v. HTC Corp.*, 861 F.3d 1362, 1370 (Fed. Cir. 2017).........................13

*Mantissa Corp. v. First Fin. Corp.*, No. 17 C 9174, 2022 WL 1487577, at *4 (N.D. Ill. May 11, 2022)...............................................................................................................................10

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)......................................8

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371-72 (Fed. Cir. 2015)......................................................................................................................................14

*MTD Products Inc. v. Iancu*, 933 F.3d 1336 (Fed. Cir. 2019)..............................................11

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)...................................10

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014)...................................12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). 8

*Phillips v. AWH CORP.*, 415 F.3d 1303, 1312 (Fed. Cir. 2015)..............................................8

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)...............................9

*Robotic Vision Sys., Inc. v. View Eng'g Inc.*, 189 F.3d 1370, 1375 (Fed. Cir. 1997)..............8

*Sumitomo Dainippon Pharma Co., Ltd. v. Emcure Pharmaceuticals Limited,* 887 F.3d 1153, 1157–58 (Fed. Cir. 2018)........................................................................................................8

*Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005)........................................8

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339....................................................................3

Statute

35 U.S.C. § 112(b)....................................................................................................................4

35 U.S.C. § 112(f).....................................................................................................................3

## I. INTRODUCTION

Pursuant to Local Patent Rule 4.2(a), Defendants Shenzhen Ximeikeji Youxian Gongsi, Shenzhen Mumuwan Maoyi Youxian Gong Si, Qingyunxiangesiweishangmaoyouxiangongsi, and Shenzhen Mengdudu Chongwu Yongpin Youxian Gongsi (collectively, "Defendants") respectfully submit this opening claim construction brief addressing the disputed terms of U.S. Patent No. 12,220,648 (the "'648 Patent").

The '648 Patent is directed to a children's puzzle board. The claimed apparatus includes a flat *puzzle plate* on which the puzzle pieces are assembled, a raised *restricting wall* along the edge of the plate that prevents the pieces from sliding off, and a *supplement arrangement* of interior walls that cooperates with the board to form one or more drawer cavities for storing the pieces. Certain claims further recite a *rotating assembly* that permits the board to rotate.

The parties take opposite approaches to claim construction. Plaintiffs, as the patentee, seek the broadest possible reading of the asserted claims and largely resist construction. Plaintiffs identified only one term for construction, and the construction they proposed for that term simply restates the claim language instead of defining it. For every other disputed term, Plaintiffs offer nothing more than "plain and ordinary meaning." Defendants, by contrast, ask the Court to construe the disputed terms according to the meaning the intrinsic record actually supports.

Two of those terms, "a rotating assembly" and "supplement arrangement," are means-plus-function limitations governed by 35 U.S.C. § 112(f). Each one pairs a generic, nonstructural word ("assembly" or "arrangement") with a stated function ("rotating" or "supplement"), and neither recites any structure for performing that function. Under the *en banc* decision in *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015), terms of this kind fall under § 112(f) even without the word "means." The Court should therefore limit each term to the

1

corresponding structure disclosed in the specification and its equivalents. If the specification discloses no such structure, the term is indefinite under 35 U.S.C. § 112(b). Plaintiffs' position that no claim element is governed by § 112(f) cannot be squared with the claim language.

## II. THE ASSERTED PATENT

The '648 Patent titled "Movable Puzzle Platform," was issued on February 11, 2025, to inventors Xiaoling Che and Jinyan Duan who are the Plaintiffs in this action. (JA0001 ('648 Patent front page)). The patent generally relates to a puzzle apparatus designed to retain unfinished puzzle pieces while allowing a player to access different areas of the puzzle without having to physically move around the table. (JA0059 ('648 Patent at col. 1, ll. 23–27)).

According to the specification, assembling large puzzles presents a logistical challenge because the dimensions of the puzzle often exceed a player's arm length, requiring them to move around the playing surface to reach different sections. (JA0059 ('648 Patent at col. 1, ll. 45–55)). additionally, there is a constant risk of misplacing or losing unattached puzzle pieces. (JA0059 ('648 Patent at col. 1, ll. 60–65)).

To address these issues the '648 Patent discloses a movable puzzle platform comprised of several highly specific structural components, including:

1. The Board Assembly as depicted in Figure 3 – the core of the invention is a board assembly that includes a flat "puzzle plate" where the puzzle is actively assembled, and a "fixing portion" that extends form the edge of the puzzle plate. (JA0061 ('648 Patent at col. 6, ll. 6–16, 43–46)).

2



Fig. 3

(JA0005 ('648 Patent fig. 3) (annotated))



Fig. 7

(JA0008 ('648 Patent fig. 7) (annotated))

2. The Restricting Wall – to prevent pieces from accidentally falling off the board when it is rotated, the patent discloses a "restricting wall." *See e.g.,* (JA0062 ('648 Patent at col. 7, ll. 14–21)). This wall is constructed from multiple "extending walls" (e.g., a

3

first extending wall and a second extending wall) that extend upwardly from the fixing portion. (JA0061 ('648 Patent at col. 6, l. 63 – col. 7, l. 5)).



Fig. 1

(JA0003 ('648 Patent fig. 1) (annotated))

3. The Supplement Arrangement – below the puzzle plate, the invention features a "supplement arrangement" used to store loose puzzle pieces. (JA0061 ('648 Patent at col. 6, ll. 17–21)). This arrangement relies on a interconnected grid of walls (including a "first main supporting wall," a "second main supporting wall," "dividing supporting walls," and "inner supporting walls") that attach to the bottom surface of

4

the puzzle board. (JA0004 ('648 Patent fig. 2)). Together, these walls "cooperate" with the puzzle board to form distinct hollow "drawer cavities" that house sliding "puzzle drawers." (JA0062 ('648 Patent at col. 8, ll. 25–49)).

4. The Rotating Assembly – Claim 10 of the '648 Patent recite a "rotating assembly" attached to the board assembly. (JA0071 ('648 Patent claim 10)). This assembly is designed to allow the entire puzzle board to be movable. (JA0067 ('648 Patent at col. 18, ll. 22–25)). The specification details highly specific mechanical structures to achieve this, such as a multi-ring framework utilizing ball bearings or a plurality of swivel-type wheels. *See e.g.*, (JA0065 ('648 Patent at col. 14, ll. 6–50)).



Fig. 9

Rotating Assembly

(JA0010 ('648 Patent fig. 9) (annotated))

5

A central focus of the '648 Patent's claims is the precise physical arrangement and vertical orientation of these components. For example, the patent requires that the "extending wall" and the "fixing portion" be "successively stacked" directly on top of the "main supporting wall."

## III. LEGAL STANDARD

### A. General Claim Construction Standard

The ultimate construction of patent's claims is a question of law exclusively for the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *see also Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005). When the parties present a fundamental dispute regarding the scope of a claim terms, it is the Court's affirmative duty to resolve that dispute and actively construe the term. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

While claim terms are generally given their ordinary and customary meaning, this meaning is never determined in a vacuum. *See Phillips v. AWH CORP.*, 415 F.3d 1303, 1312 (Fed. Cir. 2015) (en banc). Rather, it is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, read in the context of the entire intrinsic record. *See id.* at 1313-18.

The claim language is the starting point for claim construction analysis because it frames and ultimately resolves all issues of claim interpretation. *See Sumitomo Dainippon Pharma Co., Ltd. v. Emcure Pharmaceuticals Limited,* 887 F.3d 1153, 1157–58 (Fed. Cir. 2018); *Robotic Vision Sys., Inc. v. View Eng'g Inc.*, 189 F.3d 1370, 1375 (Fed. Cir. 1997). While in some cases, the "ordinary and customary" meaning of the claim language may be readily apparent, "[i]n many cases[…] the court must proceed beyond the bare language of the claims and examine the

patent specification." *See Feit Elec. Co. v. CFL Techs., LLC*, No. 13 09339, 2025 WL 2444161, at *2 (N.D. Ill. Aug. 25, 2025) (citing *Phillips*, 415 F.3d at 1314-15).

"The [POSA] is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *See Phillips,* 415 F.3d at 1313. The specification "'is the single best guide to the meaning of a disputed term.'" *See id* at 1314-15 (citations omitted). Patentee often uses the specification to "set forth an explicit definition for a claim term that could differ in scope from that which would be afforded by its ordinary meaning." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). The court may also look to the patent's prosecution history. *See Phillips*, 415 F.3d at 1317. Finally, a court may also consult "extrinsic evidence," to "shed useful light on the relevant art." *See Phillips*, 415 F.3d at 1317-18.

### B. Means-Plus-Function Claims

Means-plus-Function claims are governed by 35 U.S.C. § 112(f) which states:

> An element in a claim for combination may be expressed as a means or step for performing specified function without the recital of structure, material, or acts in support thereof, and such claims shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

As this Court previously explained, a "means-plus function claim construction occurs in two steps[:]" (1) "the Court identifies the claim function then classifies the structure[;]" and (2) "the Court 'determine[s] what structure, if any, disclosed in the specification corresponds to the claimed function." *See Feit Elec. Co.*, 2025 WL 2444161 at *2 (citing *Rain Computing, Inc. v. Samsung Elecs. Am.*, Inc., 989 F.3d 1002, 1007 (Fed. Cir. 2021)). "Under [the] second step, structure disclosed in the specification is corresponding structure only if the specification or

7

prosecution history clearly links or associates that structure to the function recited in the claim."

*See Rain Computing, Inc.*, 989 F.3d 1002 (citations omitted).

### C. Indefinite Claims

A patent "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or joint inventor regards as the invention." 35 U.S.C. § 112(b). "A patent claim is indefinite it fails to provide a person of ordinary skill in the art reasonable certainty regarding the scope of the claimed invention." *See Mantissa Corp. v. First Fin. Corp.*, No. 17 C 9174, 2022 WL 1487577, at *4 (N.D. Ill. May 11, 2022), *aff'd,* No. 2022-1963, 2024 WL 607717 (Fed. Cir. Feb. 14, 2024) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)). Because finding of indefiniteness is a challenge to claim validity, the failure of any asserted claim to comply with 35 U.S.C. § 112 must be shown by clear and convincing evidence. *See Nautilius, Inc.*, 572 U.S. at 912.

## IV. CONSTRUCTION OF THE DISPUTED TERMS OF THE '648 PATENT

### A. Term 1: "a rotating assembly" (Claim 10)

| Claim Term | Defendants' Proposed Construction |
|---|---|
| "a rotating assembly" | Governed by 35 U.S.C. § 112(f)<br><br>**Function:** Rotating the board assembly.<br><br>**Structure:** A rotatable mechanical mechanism attached to the board assembly, structurally disclosed as multiple forms of multi-ring framework comprising a circular first moving member, a second moving member coaxially engaged therewith, and intervening bearing unit.<br><br>**Alternative Construction**: Indefinite under 35 U.S.C. § 112(b) for failing to disclose a clear, definite structural boundary or specific configuration within the specification to limit the "assembly" nonce word. |

8

The claim term "a rotating assembly" appears in asserted claim no. 10 and is governed by 35 U.S.C. § 112(f) because the claim language pairs the generic, nonstructural nonce word "assembly" with the activate function of "rotating," without reciting sufficient structure to perform that function within the claim itself. *See generally MTD Products Inc. v. Iancu*, 933 F.3d 1336 (Fed. Cir. 2019) (holding that term "mechanical control assembly" was governed by statute governing means-plus-function limitations). The term "assembly" does not convey sufficiently definite structure to a person of ordinary skill in the art to escape the application of § 112(f). *See id.* at 1343. To ascertain the corresponding structure that actually performs the rotational function, one must look to the specification. While the specification describes various iterations of how the assembly mounts on the board, it explicitly and narrowly limits the rotational mechanism itself to a complex, multi-ring framework. (JA0065 ('648 Patent at col. 13, ll. 52–63; Col.14, 1-5). Across every disclosed embodiment, the rotational structure is consistently defined as comprising a circular first moving member, a second moving member coaxially engaged therewith, and an intervening bearing unit (such as ball bearings) sandwiched between them. (JA0066 ('648 Patent at col. 16, ll. 24–40)); see also (JA0068 ('648 Patent at col. 19, ll. 3–7, 33–35, 58–66)). The specification notably lacks any disclosure of simpler rotational mechanisms, such as swivel wheels. In fact, the specification explicitly contrasts its design against the use of castors. (JA0065 ('648 Patent at col. 14, ll. 2–5) ("The rotating assembly with friction pads is easy to conveniently control the board assembly compared with castors or other similar swivel-type wheels attached on the board assembly.").

The prosecution history further solidifies that "a rotating assembly" is a highly specific structural limitation and cannot be read broadly. During prosecution, the Examiner explicitly rejected pending claims of the Shultz prior art reference (U.S. Pat. No. 5,127,720), which

9

disclosed a lottery ticket tray.  (JA0341 (August 26, 2024 Non-Final Rejection at 7)). To overcome this rejection and secure allowance, the Applicant specifically argued that "claim 10 recites…'a rotating assembly attached to the board assembly.' Which are also not disclosed by Shultz." (JA0359 (October 1, 2024 Response to August 26, 2024 Non-Final Rejection at 7)). The Examiner relied on this precise structural distinction, stating in the Notice of Allowance that "regarding claim 10, the prior art does not teach the puzzle platform comprising…the rotating assembly." (JA0421 (November 19, 2024 Notice of Allowance and Fees Due at 7)). Because Plaintiffs explicitly relied on the presence of a "rotating assembly" to distinguish the prior art and secure their patent, they cannot now broaden this nonce word to mean any basic rotational ability. Instead, the term must be strictly limited to the actual rotating structures disclosed in the specification.

If the Court declines to apply 35 U.S.C. § 112(f) to limit "a rotating assembly" to the specific mechanical structures disclosed in specification, the term becomes ambiguous and indefinite under 35 U.S.C. § 112(b).  A patent claim is indefinite if, when read in light of the specification and prosecution history, it fails to inform a person of ordinary skill in the art about the scope of the invention with reasonable certainty. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). The claims must point out and distinctly claim the subject matter regarded as the invention, rather than using functional language to claim an outcome.

Failing to map this term to the specific structures in the specification renders the scope of the "assembly" nonce word ambiguous. Plaintiffs cannot use vague functional claim drafting to improperly recapture broad, unclaimed scope that covers any conceivable mechanism that allows a board plate to rotate. If "rotating assembly" is construed to cover anything beyond the specific

10

corresponding structure in the specification, Claim 10 is invalid for indefiniteness because it fails to provide reasonable certainty regarding the scope of the invention.

**B. Term 2: "supplement arrangement" (Claims 1, 5-6, 9-10, 13, 15, 17, 19, 23)**

| Claim Term | Defendants' Proposed Construction |
|---|---|
| "supplement arrangement" | Governed by 35 U.S.C. § 112(f) <br><br> **Function:** Supplementing the puzzle board to structurally house sliding puzzle drawers. <br><br> **Structure:** An interconnected spatial grid consisting of a first main supporting wall, a parallel second main supporting wall, perpendicular dividing supporting walls, and perpendicular inner supporting walls defining separate lateral and longitudinal hollow cavities, or structural equivalents thereof. <br><br> **Alternative Construction**: Indefinite under 35 U.S.C. § 112(b) because the specification fails to cleanly bound or define the structural intersection of the required structural elements, rendering the scope of the "arrangement" nonce term insolubly ambiguous. |

The claim term "supplement arrangement" appears in asserted claims nos. 1, 5-6, 9-10, 13, 15, 17, 19, 23, and must likewise be construed as a means-plus-function term governed by 35 U.S.C. § 112(f). The patentee relies on the generic, nonstructural word "arrangement" to perform the "supplement" function. Like "assembly," the word "arrangement" is a nonce word devoid of structural meaning on its face. *See e.g., IPCom GmbH & Co. v. HTC Corp.*, 861 F.3d 1362, 1370 (Fed. Cir. 2017). The specification must be consulted to understand how this arrangement is formed, and it dictates that the corresponding structure is an exact intersecting grid of supporting walls.

Plaintiffs will likely argue that "supplement arrangement" is sufficiently defined in the claims and thus does not qualify for a means-plus-function construction. The Federal Circuit,

11

however, has made it clear that reciting some structure is not enough to avoid means-plus function scrutiny if the claim fails to recite sufficient structure to perform the entirety of the claimed function. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371-72 (Fed. Cir. 2015) (applying § 112(f) where the claim recited some structure, but not enough to perform the claimed function).

Here, the stated function of the "supplement arrangement" is cooperating with the puzzle board for "forming at least one drawer cavity" such that a "puzzle drawer is actuated to slide in-and-out." (JA0071 ('648 Patent claim 10)). A review of the claims proves that the "supplement arrangement" itself does not recite sufficient structure to achieve this. Independent Claim 10 recites that the supplement arrangement comprises only a single "first main supporting wall." *See id.* Under the doctrine of claim differentiation, because Plaintiffs chose to relegate additional walls (such as second main supporting wall, dividing walls, and inner walls) to dependent claims like Claims 13 and 15, Claim 10 must be read without them. (JA0071 ('648 Patent claims 10, 13, 15)).

It is physically impossible for a single wall abutting a flat board to form an enclosed "drawer cavity" capable of housing and mechanically guiding a sliding drawer. Because independent claims like Claim 10 fail to recite the complete structure necessary to perform the cavity-forming function, the term "supplement arrangement" remains a functional nonce word. The Court therefore must apply section 112(f) and look to the specification to supply the missing structure. The specification reveals that actually forming these drawer cavities requires a highly specific, interconnected grid consisting of main supporting walls, dividing supporting walls, inner supporting walls, and a base panel to enclose the cavities. (JA0062 ('648 Patent at col. 7, l. 28 – col. 9, l. 18)). Plaintiffs cannot rely on a generic nonce word in their independent claims to

12

capture any cavity-forming structure while completely ignoring the intricate grid architecture they actually invented.

The prosecution history is also fata; to Plaintiffs' attempt to avoid construction here. During prosecution, the Examiner rejected the claims over Shultz, noting that Shultz possessed a "supplement arrangement" formed by simple walls. (JA0341 (August 26, 2024 Non-Final Rejection at 7)). In a direct response to overcome this rejection, the Applicant submitted an Amendment on October 1, 2024, explicitly cancelling Claim 18 and importing its structural limitation into independent Claim 17. (JA0356 (October 1, 2024 Response to August 26, 2024 Non-Final Rejection at 4)). This critical amendment required that the supplement arrangement include a "first inner supporting wall attached on the bottom surface of the puzzle board for improving the structural strength of the puzzle board." *See id.* Concurrently, the Applicant amended the specification itself to painstakingly detail this interconnected grid, expressly outlining the rigid geometric relationships between the "first main supporting wall," the "first dividing supporting wall," and the "first inner supporting wall." (JA0358 (October 1, 2024 Response to August 26, 2024 Non-Final Rejection, Amendment to the Specification at 6)); *see also* (JA0069 ('648 Patent at col. 21, ll. 3–48)).. The Examiner explicitly allowed the claims on this exact basis, confirming in the Statement of Reasons for Allowance that the prior art did not reach a supplement arrangement comprising a supplement arrangement with "a first supporting wall attached on the bottom surface of the puzzle board for improving the structural strength of the puzzle board, in combination with other limitations recited." (JA0421 (November 19, 2024 Notice of Allowance and Fees Due at 7)).

Without limiting this term to the disclosed interconnected grid structure, the term is indefinite. Adopting a plain and ordinary meaning would completely ignore the Applicant's own

13

explicit prosecution disclaimers and the substantive amendments made to bypass the Shultz reference.

### C. Term 3: "a fixing portion extending form the puzzle plate" (Claims 1, 10, and 17)

| Claim Term | Defendants' Proposed Construction |
|---|---|
| "a fixing portion extending from the puzzle plate" | A distinct structural extension of the puzzle plate dedicated specifically to attaching the restricting wall. |

The claim term "a fixing portion extending from the puzzle plate" appears in asserted claims nos. 1, 10, 17, and requires construction to prevent the term from becoming meaningless. Plaintiffs' proposed definition "fixing portion" as a "portion…used for fixation" fails to give this limitation any actual structural boundaries. A claim construction that merely repeats the claim language is entirely unhelpful to a jury and fails to fulfill the Court's duty to resolve the scope of the dispute.

The intrinsic record, including the patent figures and the detailed descriptions of the assembly, dictates that this fixing portion must be structurally distinct extension that is used expressly for the purpose of attaching the restricting wall to the board. It cannot merely be an arbitrary zone on the flat surface of the puzzle board. The specification explicitly defines the physical structure of this feature, stating that the puzzle board comprises "a fixing portion 102 extending form the edge of the puzzle plate 101 and connected with the supplement arrangement 30 and the restricting wall 50, respectively." (JA0061 ('648 Patent at col. 6, ll. 44–46)).

Furthermore, the specification repeatedly describes this fixing portion as distinct, protruding ledge that physically slots into other components to secure the assembly. For example, the patent explains that the restricting wall forms a "first receiving space 103 for fixing and receiving the fixing portion 102 of the puzzle board 10," and it similarly forms a "second

14

receiving space 104 for fixing and receiving the fixing portion 102." (JA0063 ('648 Patent at col. 10, ll. 34–41)). The structural necessity of this distinct extension is critical to the invention's integrity. As the specification details, "[t]he side of the fixing portion 102 is accommodated in the first and second receiving spaces 103, 104 [. . .] thus can avoid the puzzle board 10 being removed from the restricting wall 50 […] under larger exterior impact." (JA0063 ('648 Patent at col. 10, l. 66 – col. 11, l. 4)).

Under Plaintiffs' improperly broad interpretation, any flat area, of the puzzle plate where glue is applied could be considered a "portion used for fixation." The specification, however, make clear that the "fixing portion" must be a dedicated structural feature extending form the edge of the plate to interlock with the receiving spaces of the restricting walls, as shown below.

15



(JA0011 ('648 Patent fig. 11) (annotated))

### D. Term 4: "restricting wall" (Claims 1, 10, 13, 17, and 20)

| Claim Term | Defendants' Proposed Construction |
| --- | --- |
| "restricting wall" | A raised barrier that physically prevents items from sliding off the puzzle plate. |

The claim term "restricting wall" appears in asserted claims Nos. 1, 10, 13, 17, 20, and must be construed to clarify its functional and structural boundaries. The specification makes clear that the "restricting wall" is not merely an aesthetic edge or a flush boarder. Rather, it serves a highly specific physical and functional purpose: it must act as a raised perimeter barrier

16

physically preventing puzzle pieces from sliding off the puzzle plate during assembly, transport, or rotation. The specification explicitly defines this purpose, stating: "[t]he restricting wall 50 configured for preventing the players form accidentally or unintentionally pushing the puzzle pieces 100 off the puzzle plate 101." (JA0062 ('648 Patent at col. 7, ll. 9–11)). The specification further details that this raised barrier is crucial to the core functionality of the movable platform, explaining that the restricting wall "is configured for preventing the puzzle pieces fall off from the puzzle board when the board assembly is rotated […] and/or when the board assembly is moved by a user or a player from one place to another." (JA0062 ('648 Patent at col. 7, ll. 14–21)).

Giving this term no boundaries and relying on a vague "plain and ordinary meaning" risks improperly capturing standard flush boarders, decorative frames, or flat edges that do not perform the structural restricting function that is central to the patent's purpose. Defendants' construction accurately tethers the term to its consistent, dedicated us in the specification.

### E. Term 5: "successively stacked" (Claims 1, 10, and 17)

| Claim Term | Defendants' Proposed Construction |
|---|---|
| "successively stacked" | Positioned vertically directly on top of one another in sequential physical contact at the same point of location. |

The claim "successively stacked" appears in asserted claims Nos. 1, 10, 17, and requires active construction to clarify the precise vertical and sequential physical orientation required by the '648 Patent. The claims require the extending wall, the fixing portion, and the supporting wall to be "successively stacked." For example, Claim 1 recited "wherein the first extending wall and the fixing portion of the puzzle board are successively stacked on the first main supporting wall."

17

If given a broad, undefined meaning, this phrase could improperly read on disconnected components, components merely placed side-by-side, or objects floating in a general vertical column but separated by intervening structures. The specification and the prosecution history foreclose such a broad such a broad reading. The specification explicitly defines this stacking architecture as direct, physical vertical layering, noting that "the first extending wall 51f and the fixing portion 102f of the puzzle board 10f are successively stacked on the first main supporting wall 311f," and similarly for the second walls. (JA0069 ('648 Patent at col. 21, ll. 52–58)).

To maintain fidelity to the '648 Patent, the Court must clarify that "successively stacked" means vertical placement in sequential physical contact, precisely as depicted consistently through the '648 Patent's cross-sectional figures (e.g., Figures 7, 8, 52, and 53). (JA0008–JA0009 ('648 Patent figs. 7–8); JA0041 ('648 Patent figs. 52–53)). These figures clearly illustrate the extending restricting wall resting directly on top of the fixing portion, which in turn rests directly on top of the main supporting wall, as shown below.

18



(JA0040 ('648 Patent fig. 51) (annotated))

Crucially, this sequential, physical contact is not merely a preferred embodiment, it is a defining feature of the invention that secured its allowance. During prosecution, the Examiner explicitly cited this exact structural orientation, stating "wherein the first extending wall and the fixing portion of the puzzle board are successively stacked on the first main supporting wall[,]" as a primary reason the claims were allowable over the prior art. Plaintiffs cannot now abandon it in favor of a vague, boundaryless interpretation. Defendants' proposed construction ensures the term retains its required structural meaning.

19

**F. Term 6: "actuated to slide in-and-out of the drawer cavity" (Claims 1, 10, 17, and 19)**

| Claim Term | Defendants' Proposed Construction |
|---|---|
| "actuated to slide in-and-out of the drawer cavity" | Mechanically guided to slide inward and outward via flat horizontal panels moving through standard physical tracks. |

The claim term "actuated to slide in-and-out of the drawer cavity" appears in asserted claims nos. 1, 10, 17, 19, and necessitates construction to explain the mechanical mechanism underpinning the movement. The word "actuated" imparts a requirement for mechanical guide or track, not simply the manual shoving of a loose box into a hollow space. If "actuated to slide" meant nothing more than placing an object inside a hole, the word "actuated" would be rendered entirely superfluous.

The patent specification consistently relies on standard physical tracks and flat horizontal panels to accomplish this sliding actuation seamlessly. For example, the specification explicitly defines the mechanical structure required for this sliding, noting that "each of the puzzle drawer 32 comprises a rectangular bottom panel 321 slidably received in the corresponding drawer cavity 31." (JA0063 ('648 Patent at col. 9, ll. 63–65)). To ensure the drawer is actually "actuated" to slide, the specification details a mechanical track system, termed "complementary conformation 80d[,]" which comprises "a pair of engaging portions 326d extending outwardly […] and a pair of engaging slots 305d […] for receiving the corresponding engaging portions 326d." (JA0066 ('648 Patent at col. 15, ll. 32–45)). The specification further confirms that "in usage state, each of the engaging portions 326d is configured for smoothly sliding in the corresponding engaging slot 305d." (JA0066 ('648 Patent at col. 15, ll. 47–51)). Patent figures, further confirm such understanding as shown below:

20



Fig. 26

(JA0021 ('648 Patent fig. 26) (annotated))

Without this construction the mechanical nature of the actuation remains too broad and undefined, risking the recapture of any generic tray sitting loosely under a table. Defendants' construction properly grounds the "actuated" sliding motion in the physical, mechanical realities of the disclosed invention: flat horizontal panels guided by physical tracks.

21

### G. Term 7: "cooperated with the puzzle board for forming at least one drawer cavity" (Claims 1 and 10)

| Claim Term | Defendants' Proposed Construction |
|---|---|
| "cooperated with the puzzle board for forming at least one drawer cavity" | Physically joined to the puzzle board structure to create a fully enclosed structural hollow storage space. |

The claim term "cooperated with the puzzle board for forming at least one drawer cavity" appears in asserted claims nos. 1, 10, and must be construed to define the requisite physical relationship between the components. The "cooperation" described in the specification requires actual physical joining to the puzzle board in order to create a fully enclosed structural hollow storage space, rather than mere proximity, loose association or temporary alignment.

The specification explicitly dictates that this cooperation requires physical attachment. It states that the "supplement arrangement 30 comprises a supporting portion 301 connected with the bottom surface 12 of the puzzle plate 101 for forming at least one drawer cavity 31". (JA0062 ('648 Patent at col. 7, ll. 29–31)). It repeatedly emphasizes that these walls are "attached on the bottom surface 12 of the puzzle board" to accomplish this task. (JA0062 ('648 Patent at col. 7, ll. 54–58)).

Furthermore, "forming" a cavity implies establishing the definitive physical boundaries of the hollow space itself, not merely being located near a pre-existing cavity. The specification makes clear that these cavities are formed by the structural intersection of multiple walls, noting for example that a cavity is "formed by the first main supporting wall 311 cooperated with the first dividing supporting wall 313 and the first inner supporting wall 315." (JA0062 ('648 Patent at col. 8, ll. 35–38)).

Without active construction, Plaintiffs could attempt to stretch the word "cooperated" to cover any independent or unattached object sitting underneath the puzzle board. Defendants'

22

construction provides necessary, well-supported clarity to the factfinder regarding how these components must interact structurally to fall within the scope of the claims.

Dated: June 29, 2026

Respectfully submitted,

/s/ Marjorie Ouyang_____
Marjorie Ouyang
Marta Sylwia Rocha
Valley & Summit Law P.C.
One Park Plaza, #600
Irvine, CA 92614
marjorie.ouyang@valleysummitlaw.com
marta.rocha@valleysummitlaw.com

Attorneys for Defendants

23

## CERTIFICATE OF SERVICE

I certify that on June 29, 2026, I caused the foregoing *Defendants' Opening Claim Construction Brief* to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

Dated: June 29, 2026

Respectfully submitted,

/s/ Marjorie Ouyang_____
Marjorie Ouyang
Marta Sylwia Rocha
Valley & Summit Law P.C.
One Park Plaza, #600
Irvine, CA 92614
marjorie.ouyang@valleysummitlaw.com
marta.rocha@valleysummitlaw.com

Attorneys for Defendants

24