IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
*Eastern Division*

| | | |
|---|---|---|
| Xiaoling Che, et al., | ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) ) | |
| v. | ) ) | Case No. 1:25-cv-04946 |
| Shenzhen Mumuwan Maoyi Youxian Gong Si, et al., | ) ) ) ) | Honorable Virginia M. Kendall |
| Defendants/Counter-Plaintiffs. | ) ) | |

**PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    OVERVIEW OF THE '648 PATENT........................................................................2

III.   ARGUMENT..........................................................................................................5

      A.    Claim Construction Principles ...............................................................5

      B.    The Court Need Not Construe Terms that Defendants Have Conceded Are Practiced by the Accused Products. ....................................................5

      C.    Defendants Have Waived Their 112(f) and Indefiniteness Arguments..............7

      D.    The Court Should Adopt Plaintiffs' Proposed Construction of "a Fixing Portion Extending from the Puzzle Plate" (Claims 1, 10, 17). ...........8

            a)    The Claim Language Supports Plaintiff's Construction.............8

            b)    The Specification Confirms Plaintiffs' Proposed Construction. ................................................................................9

            c)    Defendants Identify No Basis for Departing from the Ordinary Meaning. ...................................................................11

      E.    The Court Need Not Construe Any of the Remaining Terms. .........12

            1.    "A Rotating Assembly" (Claim 10).......................................13

            2.    "Supplement Arrangement" (Claims 1, 5-6, 10, 13, 15, 17, 19) ..........15

            3.    "Restricting Wall" (Claims 1, 10, 13, 17)..............................19

            4.    "Successively Stacked" (Claims 1 and 17)...........................20

            5.    "Actuated to Slide In-and-Out of the Drawer Cavity" (Claims 1, 10, 17, 19) .................................................................................21

            6.    "Cooperated with the Puzzle Board for Forming at Least One Drawer Cavity" (Claims 1 and 10) .......................................23

IV.   CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                            **Page(s)**

*Applied Med. Res. Corp. v. United States Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006)...................................................................................9

*Comark Communs., Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998)..................................................................................8

*Dyfan, LLC v. Target Corp.*,
28 F.4th 1360 (Fed. Cir. 2022) ...................................................................... 13, 16

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014).......................................................................5, 21, 23

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir., 2015)..........................................................................17-18

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
No. 14 C 3618, 2022 U.S. Dist. LEXIS 250378 (N.D. Ill. Mar. 30, 2022) ..........................6

*Merck & Co. v. Teva Pharms. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005)..................................................................................24

*MTD Prods., Inc. v. Iancu*,
933 F.3d 1336 (Fed. Cir. 2019)..................................................................................14

*Nazomi Communs., Inc. v. ARM Holdings, PLC*,
403 F.3d 1364 (Fed. Cir. 2005)........................................................................... 18, 24

*Oatey Co. v. IPS Corp.*,
514 F.3d 1271 (Fed. Cir. 2008)....................................................................................5

*Promptu Sys. Corp. v. Comcast Corp.*,
92 F.4th 1372 (Fed. Cir. 2024) ...............................................................................2, 6

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998)....................................................................................5

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005)..................................................................................21

*SanDisk Corp. v. Memorex Prods.*,
415 F.3d 1278 (Fed. Cir. 2005)........................................................................... 12, 23

*Sloan Valve Co. v. Zurn Indus.*,
No. 10-cv-204, 2012 U.S. Dist. LEXIS 130399 (N.D. Ill. Sep. 13, 2012) ...............2, 19, 20

ii

*Thorner v. Sony Comput. Entm't. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)..................................................................................11

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009)..................................................................15, 18-19

*U.S. Water Servs. v. Novozymes A/S*,
    No. 13-cv-864, 2017 U.S. Dist. LEXIS 233154 (W.D. Wis. Sep. 13, 2017) ......................7

*UV Partners, Inc. v. Proximity Sys.*, No.
    20-cv-4120, 2022 U.S. Dist. LEXIS 124607 (S.D. Tex. 2022)..........................................17

*Vitronics Corp. v. Conceptronic*,
    90 F.3d 1576 (Fed. Cir. 1996)......................................................................................5

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)............................................................................ 13, 16

*Zeroclick, LLC v. Apple Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018).....................................................................................14

## I.  INTRODUCTION

The only claim term relevant to resolving the parties' infringement dispute is "a fixing portion extending from the puzzle plate" because that is the only term that Defendants identify in their contentions as missing from the accused products.  To try and manufacture a non-infringement argument, Defendants contend that the "fixing portion" language in this term requires a structure possessing some distinctive physical characteristic that separates it from the rest of the puzzle plate—a "distinct structural extension," in Defendants' words.  The claims, specification and figures impose no such requirement.  To the contrary, U.S. Patent No. 12,220,648 ("the '648 patent") repeatedly and consistently discloses that the fixing portion and puzzle plate are two regions on the same uniform puzzle board structure.  In fact, this is the *only* embodiment of the fixing portion and puzzle plate reflected in the entire patent specification.  Defendants' construction therefore is improper because it excludes all of the disclosed embodiments of the invention.  Plaintiffs, by contrast, propose a definition that is consistent with all these embodiments: "a portion extending from the puzzle plate that is used for fixation."  Plaintiffs therefore ask the Court to reject Defendants' proposed definition and accept Plaintiff's proposed definition.

The Court should decline to construe the remaining terms for three independent reasons.  *First*, two of these terms are not properly before the Court because Defendants assert a means-plus-function claim construction argument under section 112(f) and a 112(b) invalidity argument in the alternative.  Defendants waived both these arguments by not disclosing them in their invalidity contentions.  *Second*, the Court should exercise its discretion and decline to construe all terms except "fixing portion" because Defendants have conceded that the accused products practice the limitations associated with all of these other terms.  Accordingly, these terms are not material to any underlying defense and construing them would be a purely

1

academic exercise. As the Federal Circuit has explained, Courts need only construe those terms "that are in controversy, and only to the extent necessary to resolve the controversy." *Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024). *Third*, even if the Court were to consider these terms, no further construction is necessary. When read in the context of the claims, the ordinary meaning of the term is apparent. As this Court has explained, when the plain meaning is "clear on its face, there is no need to rephrase [it]." *Sloan Valve Co. v. Zurn Indus.*, No. 10-cv-204, 2012 U.S. Dist. LEXIS 130399, at *43 (N.D. Ill. Sep. 13, 2012).

## II. OVERVIEW OF THE '648 PATENT

The '648 Patent is directed to a movable puzzle platform that allows players to conveniently assemble large puzzles. JA0059[1] at 2:6-9[2]. As depicted in Fig. 1 of the '648 patent below, the puzzle platform is generally comprised of a "puzzle board" (10), a "supplement arrangement" (30), a "restricting wall" (50), and a plurality of "drawers" (not numbered in the below image). *See, e.g.* JA0059 at 2:6-19; JA0061 at 6:7-12.



JA0003 ('648 Patent, Fig. 1)

---

[1] Citations to JA___ are to the Joint Appendix, Dkt. 76-1.

[2] References to the '648 patent are by column and line. *E.g.*, "2:6-9 refers to column 2, lines 6-9.

The supplement arrangement includes "main supporting walls" (311, 312), as shown in Fig 11 below. *See, e.g.* JA0062 at 7:28-29 and 7:54-59.



JA0011 ('648 Patent, Fig. 11)

When assembled, an extending wall and a portion of the puzzle board are stacked on a main supporting wall, as shown in the excerpt from Fig. 8 below. *See, e.g.* JA0059 at 2:6-19; JA0061 at 6:42-46; JA0061-62 at 6:62-7:5; JA0069 at 21:52-57.



JA0009 ('648 Patent, excerpt from Fig. 8)

3

In this context, the specification describes the puzzle board (10) as having two portions: a "puzzle plate" (101) and a "fixing portion" (102), as shown in the excerpt from Fig. 8 below. JA0061 at 6:42-48. The "puzzle plate" is the portion of the puzzle board that remains exposed "for playing the puzzle pieces [] thereon," while the fixing portion refers to the portion of the puzzle board that is "connected with the supplement arrangement 30 and the restricting wall 50, respectively." *Id.*; *see also* JA0040-41 at Figs 51-53, JA0068 at 20:42-46 (similarly depicting and describing the fixing portion (102f) as being integral with the puzzle plate (101f)[3]). In short, the "fixing portion" and the "puzzle plate" are merely two different regions on the puzzle board.



JA0009 ('648 Patent, excerpt from Fig. 8)

The patent also discloses at least two embodiments of a rotating assembly that allows the puzzle platform to be rotated in different ways. In one embodiment, the rotating assembly is a multi-ring structure, as shown in Fig. 9 (below left), which allows the board to be self-rotated 360°. *See, e.g.* JA0061 at 6:12-16; JA0064 at 12:46-58. In another embodiment, the rotating assembly includes a "second bearing unit 24" for "sliding the puzzle board 10 on the

---

[3] In the '648 specification, reference numbers that differ only by alphabetic suffixes (*e.g.*, 102 and 102f) designate the same or corresponding components in the different embodiments.

4

playing surface at different planar directions," as shown in Fig. 13 (below right). JA0065 at 13:17-24.



JA0010 ('648 Patent, Fig. 9)               JA0012 ('648 Patent, Fig. 13)

### III.   ARGUMENT

#### A.    Claim Construction Principles

"[T]he claim construction inquiry [] begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (citation omitted). Although the specification is highly relevant, courts may not "read limitations from the embodiments in the specification into the claims" even where the specification discloses only a single embodiment, absent "words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371-72 (Fed. Cir. 2014) (citation omitted). Likewise, courts ordinarily do not construe claims to exclude preferred embodiments absent a clear indication in the intrinsic record that the patentee intended that result. *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276-77 (Fed. Cir. 2008); *see also Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

#### B.    The Court Need Not Construe Terms that Defendants Have Conceded Are Practiced by the Accused Products.

The Patent Local Rules require accused infringers to disclose their non-infringement theories before claim construction so that, among other things, the parties and the Court know

5

what disputes actually require construction. *See* Patent L.R. 2.3, 3.2; *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, 2022 U.S. Dist. LEXIS 250378, at *7-8 (N.D. Ill. Mar. 30, 2022). Here, Defendants identified only one claim limitation that the accused products allegedly do not satisfy: the "fixing portion" limitation. PA010-16. Defendants argued that the accused products did not practice this limitation because, according to Defendants, the "claim element requires two separate components, puzzle plate, and a fixing portion which extends from the puzzle plate." PA010. Defendants admitted that all of the other terms are present in the accused products. PA010-16.[4]

As the Federal Circuit has explained, courts "are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." *Promptu Sys. Corp.*, 92 F.4th at 1380 (quoting *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)) (emphasis in original). "The purpose of claim construction is to resolve 'disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement' or invalidity." *Id.* (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)). "Accordingly, '*only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy*.'" *Id.* (emphasis added) (quoting *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)); *see also U.S. Water Servs. v. Novozymes A/S*, No. 13-cv-864, 2017 U.S. Dist. LEXIS 233154, at *14 (W.D. Wis. Sep. 13, 2017) ("The purpose of claim construction is to resolve

---

[4] Notably, Defendants never served Final Non-Infringement Contentions as required by the Patent Local Rules. Plaintiffs thus notified Defendants that, absent timely Final Contentions, Plaintiffs would treat the Initial Contentions as Defendants' final infringement positions for purposes of claim construction. *See* PA017. Defendants never responded, objected, or sought leave to amend their contentions.

actual disputes that have some bearing on a claim or defense, not to resolve an academic debate.").

Defendants have no non-infringement defense that hinges on the construction of any remaining claim terms. They attempt to manufacture disputes by speculating that, absent construction, the claims might encompass "flush borders," "decorative frames," or "generic trays." Dkt. 76 at 17, 21. Those hypothetical features do not apply to the accused products. Nor do they correspond to any disclosed non-infringement or invalidity theory. Claim construction exists to resolve actual disputes affecting the pending claims and defenses—not abstract questions about products that are not before the Court.

### C.      Defendants Have Waived Their 112(f) and Indefiniteness Arguments

The Court should also decline to consider Defendants' 112(f) and indefiniteness arguments on the "rotating assembly" and supplemental arrangement" terms for a second, independent reason. Local Patent Rule 2.3 required Defendants to disclose (i) the identity of any claim element they contend is governed by 35 U.S.C. § 112(f) (the "means plus function" rule) and (ii) a detailed statement of any grounds of invalidity based on indefiniteness. LPR 2.3(b)(3) and 2.3(b)(4). Defendants provided neither. In fact, Defendants expressly represented that (i) "***Defendants do not invoke 35 U.S.C. § 112(f) towards any of the claims***" (PA004) and "***Defendants have not asserted invalidity based on indefiniteness***" (PA007). As such, Defendants' Section 112(f) and indefiniteness arguments for the "rotating assembly" and "supplemental arrangement" terms are waived.

7

**D.** **The Court Should Adopt Plaintiffs' Proposed Construction of "a Fixing Portion Extending from the Puzzle Plate" (Claims 1, 10, 17).**

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| A distinct structural extension of the puzzle plate dedicated specifically to attaching the restricting wall | Plain and ordinary meaning, which is: a portion extending from the puzzle plate that is used for fixation. |

As noted above, this is the only term whose meaning is material to the parties' infringement dispute. Plaintiffs contend that this term should be construed in accordance with its plain and ordinary meaning. Defendants, on the other hand, contend that the claimed "fixing portion" must be narrowly construed to possess some distinctive physical characteristic separating it from the puzzle plate—a "distinct structural extension," in their words.

The intrinsic record uniformly supports Plaintiffs' construction. The claims, specification, and figures consistently identify the "fixing portion" as the portion of the puzzle board extending from the puzzle plate. None suggests that the fixing portion must be a separately formed component or possess some distinctive physical characteristic. Indeed, Defendant's narrowing limitation appears nowhere in the patent.

**a)** **The Claim Language Supports Plaintiff's Construction.**

The "appropriate starting point" for construing a patent claim "is always with the language of the asserted claim itself." *Comark Communs., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Each asserted claim recites "a puzzle board comprising a puzzle plate and a fixing portion extending from the puzzle plate." That language never requires the fixing portion to be structurally distinct from the puzzle plate. It requires only that the fixing portion is a portion of the puzzle board that extends from the puzzle plate.

A "portion" is simply part of a larger whole. Likewise, "extending from" describes a spatial relationship. It does not, standing alone, require the fixing portion to be a separate

8

structural element from the puzzle plate or to possess any physical characteristic distinguishing it from the remainder of the puzzle board.

Defendants appear to assume that because the claims separately recite a "puzzle plate" and a "fixing portion," those terms necessarily describe physically distinct structures. The Federal Circuit has rejected that premise, explaining that while separate claim terms must carry different *meanings*, they do "not . . . necessarily refer to two different structures." *Applied Med. Res. Corp. v. United States Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006). That is precisely the case here. The term "puzzle plate" identifies the playing surface for arranging the puzzle pieces, while "fixing portion" identifies the peripheral portion extending from the puzzle plate that performs the fixing function. Although these terms refer to different portions of the puzzle board, they do not require different structures.

### b) The Specification Confirms Plaintiffs' Proposed Construction.

The written description says exactly what the claims say. It describes a first preferred embodiment in which "[t]he puzzle board 10 comprises a puzzle plate 101 . . . and a fixing portion 102 extending from the edge of the puzzle plate 101 and connected with the supplement arrangement 30 and the restricting wall 50." JA0061 at 6:42-46; *see also* JA0068 at 20:42-44 ("[t]he puzzle board 10f comprises a puzzle plate 101f and a fixing portion 102f extending from the edge of the puzzle plate 101f").

The specification identifies the fixing portion by *where it is located*—extending from the edge of the puzzle plate—and by *its relationship to adjoining components*. In particular, it explains that the "puzzle plate" is the part of the puzzle board that remains exposed "for playing the puzzle pieces [] thereon," while the fixing portion is the portion of the puzzle board that is "connected with the supplement arrangement 30 and the restricting wall 50, respectively."

9

JA0061 at 6:42-48. The specification never attributes to the fixing portion any distinctive or separate structural characteristic. Nor does it require the fixing portion be physically distinguishable from the puzzle plate, as Defendants contend.

The figures make this point even more clearly. For instance, Figures 8 and 11 identify reference numeral 102 as the peripheral fixing portion of the puzzle board extending from puzzle plate 101 in the first preferred embodiment. As these figures illustrate, the fixing portion is not a separately formed component or structure. Rather, the fixing portion 102 and puzzle plate 101 are integral aspects of the same puzzle board 10.



Fig. 11 (JA0011)                    Excerpt from Fig. 8 (JA0009)

Similarly, Figures 52 and 53 depict a cross section of another embodiment. Again, these images make clear that the puzzle plate 101f and the fixing portion 102f are two portions of the same continuous puzzle board, and not separate components or structures. *See also* JA0068 at 20:42-46.



Fig. 52 (JA0041)



Excerpt of Fig. 53 (JA0041)

### c) Defendants Identify No Basis for Departing from the Ordinary Meaning.

The Federal Circuit has identified only two exceptions to the rule that claim terms are given their ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Neither applies here.

Defendants identify neither lexicography nor disavowal for the term "fixing portion." Indeed, in requesting *ex parte* reexamination of the '648 Patent, one of the Defendants represented to the Patent Office that no lexicography applied here, stating that "[n]o special

11

definitions were provided in the specification" for terms including "fixing portion." PA026-27. Defendants offer no explanation for taking the opposite position here.

Nor do the specification passages on which Defendants rely support their construction. *See* Dkt. 76 at 14-15 (citing JA0061 at 6:44-46 and JA0063 at 10:34-41, 10:66-11:4). Those passages merely describe where the fixing portion is located and how it interfaces with adjoining components. They do not impose the structural limitation Defendants seek to import into the claims. Plaintiffs also cite without explanation to Fig. 11. But this Figure also provides no basis to narrowly construe the claim as Defendants seek. Indeed, Defendants cannot identify a single embodiment that supports their strained reading of the claim.

As the Federal Circuit has explained, a construction that excludes the preferred embodiments of a patent "is rarely, if ever, correct." *SanDisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (quoting *Vitronics*, 90 F.3d at 1583). Here, Defendants' narrowing construction *cannot* be correct because it would exclude *every* embodiment of the '648 patent.

Accordingly, for all the reasons above, Plaintiffs ask the Court to construe "a fixing portion extending from the puzzle plate" according to its plain and ordinary meaning: *"a portion extending from the puzzle plate that is used for fixation."*

### E. The Court Need Not Construe Any of the Remaining Terms.

The Court need not construe any remaining terms because, as explained above, Defendants have (i) already conceded that the accused products practice these limitations and (ii) waived any argument that the claims either are subject to Section 112(f) or are indefinite.

If the Court chooses to address these terms, it nonetheless should reject Defendants' proposed constructions because, as explained below, each of Defendants' constructions improperly imports narrowing structural or functional limitations unsupported by the claim

language, specification, or prosecution history.  Nor is there any basis to invoke § 112(f), even setting aside Defendants' waiver.

### 1.    "A Rotating Assembly" (Claim 10)

| Defendants Proposed Construction | Plaintiffs Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(f) | Not governed by 35 U.S.C. § 112(f). |
| **Function:** Rotating the board assembly. | No construction necessary; plain and ordinary meaning. |
| **Structure:** A rotatable mechanical mechanism attached to the board assembly, structurally disclosed as multiple forms of multi-ring framework comprising a circular first moving member, a second moving member coaxially engaged therewith, and intervening bearing unit. | |
| **Alternative Construction**: Indefinite under 35 U.S.C. § 112(b) for failing to disclose a clear, definite structural boundary or specific configuration within the specification to limit the "assembly" nonce word. | |

Even if Defendants had not waived any argument that the term "rotating assembly" is either subject to Section 112(f) or indefinite by failing to disclose either theory in their invalidity contentions as required by the Patent Local Rules, their argument also fails on the merits.

It is well-established that when a claim limitation does not use the word "means," the absence of that word triggers a presumption that Section 112(f) does not apply.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).  To overcome the presumption, Defendants must show, "by a preponderance of the evidence, that persons of ordinary skill in the art would not have understood [the claim term] to connote structure in light of the claim as a whole."  *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1367 (Fed. Cir. 2022).  Defendants do not even acknowledge this presumption, let alone meet their burden to overcome it.

13

Defendants argue without support that "term 'assembly' does not convey sufficiently definite structure to a person of ordinary skill to escape the application of § 112(f)." Dkt. 76 at 9. Defendants have the burden backwards. The question is not whether the term can escape Section 112(f), but whether Defendants have provided sufficient evidence to overcome the presumption against it.

*MTD Products,* on which Defendants rely, illustrates this point. There, the Federal Circuit relied on undisputed expert testimony that "mechanical control assembly" lacked a reasonably well-understood structural meaning in the relevant art and "does not bring to mind any specific structure to a person of ordinary skill in the art." *MTD Prods., Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019). Defendants present no comparable evidence here. They identify no evidence addressing how a person of ordinary skill would understand "rotating assembly" in the context of the '648 Patent, cite no technical treatise or dictionary, and offer no expert testimony. Their argument rests entirely on analogy to a different claim term in a different patent directed to different technology. That is insufficient to rebut the presumption against applying § 112(f). *See Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-08 (Fed. Cir. 2018) (affirming refusal to apply § 112(f) where challenger "provided no evidentiary support" and therefore failed to rebut the presumption). If anything, Defendants' own brief appears to acknowledge that a person of ordinary skill in the art would recognize this term as referring to a known class of "rotational mechanisms, such as swivel wheels." Dkt. 76 at 9.

Because Defendants fail to establish that § 112(f) applies, their discussion of corresponding structure is beside the point. But even if § 112(f) did apply, Defendants improperly limit the claim to a single preferred embodiment. The specification discloses additional rotational structures, including an embodiment employing a "second bearing unit 24"

14

that permits "sliding the puzzle board 10 on the playing surface at different planar directions." JA0065 at 13:17-24; JA0012, Fig. 13.

Defendants' reliance on the prosecution history is similarly misplaced. The prosecution history distinguishes the Shultz reference because it lacks a rotating assembly; it does not define "rotating assembly" as the particular multi-ring mechanism advocated by Defendants or otherwise disclaim other rotational structures. JA0359; JA0421.

Defendants' alternative indefiniteness argument fares no better. It rests on the same flawed premise—that unless "rotating assembly" is confined to the preferred embodiment identified by Defendants, the claim is indefinite. But a claim is not indefinite simply because it is broader than the embodiments disclosed in the specification. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009). Defendants offer no evidence that a person of ordinary skill in the art would be unable to determine the scope of "rotating assembly" with reasonable certainty.

## 2. "Supplement Arrangement" (Claims 1, 5-6, 10, 13, 15, 17, 19)[5]

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(f) **Function:** Supplementing the puzzle board to structurally house sliding puzzle drawers. **Structure:** An interconnected spatial grid consisting of a first main supporting wall, a parallel second main supporting wall, perpendicular dividing supporting walls, and perpendicular inner supporting walls defining separate lateral and longitudinal hollow cavities, or structural equivalents thereof. | Not governed by 35 U.S.C. § 112(f). No construction necessary; plain and ordinary meaning. |

---

[5] Defendants also identify claims 9 and 23. Those claims, however, are not presently being asserted by Plaintiffs.

15

| | |
|---|---|
| **Alternative Construction**: Indefinite under 35 U.S.C. § 112(b) for failing to cleanly bound or define the structural intersection of the required structural elements, rendering the scope of the "arrangement" nonce term insolubly ambiguous. | |

Defendants have waived any argument that the term "supplement arrangement" is either subject to Section 112(f) or indefinite by failing to disclose either theory in their invalidity contentions as required by the Patent Local Rules. In any event, Defendants' argument fails for the reasons below.

As explained above with respect to "rotating assembly," Defendants bear the burden of overcoming the presumption against § 112(f) by demonstrating that a person of ordinary skill in the art would not understand "supplement arrangement," viewed in the context of the claims, to connote sufficiently definite structure. *Williamson*, 792 F.3d at 1349; *Dyfan*, 28 F.4th at 1367. But Defendants offer no evidence directed to that inquiry. They cite no expert testimony, technical treatise, dictionary, or other evidence addressing how a person of ordinary skill would understand the claimed term

Moreover, the claims and specification here consistently describe the supplement arrangement in terms of its structure and not its function. Claim 1 recites a "supplement arrangement comprising *a first main supporting wall attached on the[] bottom surface of the puzzle board, [and] a second main supporting wall attached on the bottom surface of the puzzle board and disposed apart from the first main supporting wall*." Claim 5 recites that the "supplement arrangement further comprises *a first inner supporting wall attached on the bottom surface*." Claim 6 recites that the "supplement arrangement further comprises *a first dividing supporting wall position below the bottom surface*." Claims 10, 13, 15, 17 and 19 similarly recite structural limitations. The specification likewise consistently describes the "supplement

16

arrangement" in terms of structure and not function. *See, e.g.,* JA0059 at 2:12-14 and 2:24-26, JA0061 at 6:9-10, JA0062 at 7:28-8:19. A person of ordinary skill in the art would therefore understand the supplement arrangement limitations to be describing a structure, thus precluding the application of Section 112(f). *See, e.g., UV Partners, Inc. v. Proximity Sys.*, No. 20-cv-4120, 2022 U.S. Dist. LEXIS 124607, at *51-53 (S.D. Tex. 2022) (finding "support member" is not a means-plus function term because the term "is used to describe a structure, and not to describe performing a function").

Having no evidence to the contrary, Defendants set up a straw man. They contend that the claimed function of the supplement arrangement is "cooperating with the puzzle board for 'forming at least one drawer cavity' such that a 'puzzle drawer is actuated to slide in-and out'" (as recited in claim 10) and then argue that the claims do not recite sufficient structure to achieve this function. Dkt. 76 at 12. But that is not the claimed *function* of the supplement arrangement. As explained above, the supplement arrangement is claimed in terms of its structure. The cooperating and actuating elements are separate limitations of claim 10 that set forth a specific way in which the supplement arrangement structurally cooperates with the puzzle board.[6]

Defendants' reliance on *Media Rights* is likewise misplaced. The Court in *Media Rights* did not apply Section 112(f) to claims that "recited some structure, but not enough to perform the claimed function" as Defendants contend. Dkt. 76 at 12. In *Media Rights*, the Court held that the term "compliance mechanism" was a means-plus-function limitation because the claims and the specification "only describes the term's function" and provided no "meaning of the

---

[6] Defendants' assertion that claim 10 does not recite sufficient structure to practice the claim also fails because it is based on Defendants' flawed interpretation of the "actuated" and "cooperated" limitations. *See infra* at Sections III.E.5 and III.E.6 (addressing Defendants' flawed constructions of the "actuated' and "cooperated" limitations).

17

term's structure." *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1373 (Fed. Cir., 2015). Only after having reached that conclusion did the Court consider whether the specification disclosed corresponding structure for multiple recited functions. *Id.* at 1374-1375. Unlike *Media Rights*, the claims and the written description here indisputably describe the "supplement arrangement" in terms of its structure. As such, Section 112(f) does not apply.

Moreover, even if § 112(f) applied, Defendants are wrong that the supplement arrangement must have a "highly specific, interconnected grid consisting of main supporting walls, dividing supporting walls, inner supporting walls, and a base panel." Dkt. 76 at 12. Structural components such a "supporting wall" or a "dividing supporting wall" are recited in dependent claims. Under the doctrine of claim differentiation, it would be improper to read the limitations from the dependent claims into the independent claims. Dkt. 76 at 12; *see also Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("Claim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'").

Nor does the prosecution history support Defendants' narrowing construction. Defendants rely on amendments adding an additional supporting-wall limitation to Claim 17. Dkt. 76 at 13-14. At most, those amendments distinguish the prior art as to Claim 17. They do not redefine "supplement arrangement" for every asserted claim, let alone justify limiting construing the term as a means-plus-function element.

Defendants' alternative indefiniteness argument fares no better. It merely repackages their unsuccessful § 112(f) theory by assuming that, unless "supplement arrangement" is limited to Defendants' preferred embodiment, the claim is indefinite. But as noted above, a claim is not indefinite just because it is broader than the embodiments disclosed in the specification.

18

*Ultimax Cement*, 587 F.3d at 1352.  Defendants offer no evidence that a person of ordinary skill in the art could not determine the scope of "supplement arrangement" with reasonable certainty.

### 3. "Restricting Wall" (Claims 1, 10, 13, 17)[7]

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
| --- | --- |
| A raised barrier that physically prevents items from sliding off the puzzle plate. | No construction necessary; plain and ordinary meaning. |

Claims 1, 10 and 17 recite a "restricting wall having a first extending wall upwardly extending from the fixing portion and stacked on the fixing portion of the puzzle board." Claim 1 also adds that the restricting wall has "a second extending wall upwardly extending from the fixing portion, stacked on the fixing portion of the puzzle board." These limitations are straightforward and require no construction.

Defendants suggest that providing no construction would result in the term having "no boundaries." But the claim language expressly recites the structure needed to practice each claim using plain language that a jury would understand. As this Court has previously explained, when a term is "clear on its face, there is no need to rephrase [it]." *Sloan Valve Co.*, U.S. Dist. LEXIS 130399, at *43.

Defendants' proposed construction is also contrary to the specification. Defendants insist that a restring wall must be limited to a raised barrier that "physically prevents items from sliding off the puzzle plate." But the patent expressly discloses embodiments having only three restricting walls, leaving one side of the puzzle board open. Compare Fig. 1 (shown at JA0003 and described at JA0061-62 at 6:60-7:5), which depicts an extending wall mounted on all four sides of the puzzle platform, with Fig. 17 (shown at JA0015 and described at JA0065 at 14:20-

---

[7] Defendants also identify claim 20. Claim 20, however, is not presently being asserted by Plaintiffs.

19

26), which depicts an extending wall mounted on only three of the four sides of the puzzle platform. Thus, consistent with the plain language, the restricting wall restricts puzzle pieces from sliding off. Nothing in the claim or the specification require it to prevent puzzle pieces, let alone all "items," from sliding off.

### 4. "Successively Stacked" (Claims 1 and 17) [8]

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| Positioned vertically directly on top of one another in sequential physical contact at the same point of location. | No construction necessary; plain and ordinary meaning. |

The phrase "successively stacked" consists of ordinary English words that are readily understood in the context of the claims. For instance, claim 1 recites that "the first extending wall and the fixing portion of the puzzle board are *successively stacked* on the first main supporting wall" and "the second extending wall and the fixing portion of the puzzle board are *successively stacked* on the second main supporting wall." Similarly, Claim 17 recites that "the first extending wall and the fixing portion of the puzzle board are *successively stacked* on the first main supporting wall." The claim language is thus clear on its face; it requires certain components (depending on the claim) to be successively stacked on other components. There is no need for rephrasing or further construction. *Sloan Valve Co.*, 2012 U.S. Dist. LEXIS 130399, at *43.

Defendants' assertion that the specification "explicitly defines" this term to mean something different from its plain and ordinary meaning is without merit. Dkt. 76 at 18. Defendants rely on a single sentence in the specification, which states: "the first extending wall

---

[8] Defendants also identify claim 10. However, the phrase "successively stacked" does not appear in claim 10.

51f and the fixing portion 102f of the puzzle board 10f are successively stacked on the first main supporting wall 311f." *Id.* (citing JA0069 at 21:52-58). But this sentence provides no special definition. Just like the claims, the specification merely uses the term in its plain and ordinary context.

Defendants also wrongly insist that "successively stacked" must be limited to the structure "precisely as depicted consistently through the '648 Patent's cross-sectional figures." Dkt. 76 at 18. It is well-settled that reading limitations from embodiments into the specification is improper, even in circumstances where the specification describes only one embodiment. *Hill-Rom Servs.*, 755 F3d at 1371-72 (Fed. Cir. 2014). The only exception to this rule is if "patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Id.* Defendants identify no such expressions of manifest exclusion or restriction, as none exist.

Defendants' reliance on the prosecution history is equally misplaced. The Examiner merely quoted the existing claim language when identifying reasons for allowance. JA0421. Nothing in the Notice of Allowance suggests that the Examiner assigned "successively stacked" any meaning other than its ordinary one. Nor can the Examiner's unilateral statements create the clear and unmistakable disclaimer required to narrow otherwise ordinary claim language. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005).

### 5. "Actuated to Slide In-and-Out of the Drawer Cavity" (Claims 1, 10, 17, 19)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| Mechanically guided to slide inward and outward via flat horizontal panels moving through standard physical tracks. | No construction necessary; plain and ordinary meaning. |

Each of claims 1, 10, 17 and 19 recites that one or more puzzle drawers are "actuated to slide-in-and-out of the drawer cavity." Once again, this phrase consists of ordinary English words used in their ordinary sense. Defendants identify neither lexicography nor a clear and unmistakable disclaimer requiring departure from that ordinary meaning. Instead, they seek to rewrite the claims by importing into them an optional guide mechanism disclosed only in a later embodiment.

Specifically, Defendants contend that "actuated to slide" requires drawers that are "[m]echanically guided . . . via flat horizontal panels moving through standard physical tracks." Dkt. 76 at. 20. The claims, however, impose no such requirement.

Nor does the specification. Defendants rely exclusively on the fourth embodiment, which introduces a "complementary conformation" comprising engaging portions 326d and engaging slots 305d that guide the drawers as they slide. Dkt. 76 at 20 (citing JA0066 at 15:32-51). But the specification does not describe that guide mechanism as part of the invention generally or as the meaning of "actuated to slide." Rather, it introduces those features only when describing the fourth embodiment.

The contrast with the first embodiment is telling. There, the specification states simply that the puzzle drawers are "independently actuated to slide in-and-out of the corresponding lateral cavity." JA0063 at 9:40-52. It does not disclose the engaging slots, engaging portions, or other guide mechanism on which Defendants rely. Figures 7 and 28 illustrate this distinction.



Fig. 7 (JA0008)  Fig. 28 (JA0023)

Figure 7 depicts the first embodiment, in which the drawers slide in and out without the engaging slots (305d) and engaging portions (326d). Figure 28 depicts the fourth embodiment, which adds those structures as a "complementary conformation." Defendants' construction would improperly transform that later-added feature into a claim requirement applicable to every embodiment. But the rules of claim construction establish that, absent lexicography or a clear and unmistakable disclaimer, courts may not import features from one embodiment into otherwise ordinary claim language. *Hill-Rom Servs., Inc.* 755 F.3d at 1371-72. Nor should claims be construed to exclude disclosed embodiments. *SanDisk Corp.*, 415 F.3d at 1285-86.

### 6. "Cooperated with the Puzzle Board for Forming at Least One Drawer Cavity" (Claims 1 and 10)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| Physically joined to the puzzle board structure to create a fully enclosed structural hollow storage space | No construction necessary; plain and ordinary meaning. |

The phrase consists of ordinary English words used in their ordinary sense. Thus, once again, no construction is needed.

23

Defendants argue that the word "cooperated" should be interpreted to require that the supplement arrangement be "physically joined" to the puzzle board. Dkt. 76 at 22. But to the extent an attachment is required, the claims already recite it. Claims 1 and 10 require the first main supporting wall to be "attached on the bottom surface of the puzzle board," and Claim 1 likewise requires the second main supporting wall to be attached. Defendants would import that attachment limitation into the separate "cooperated" limitation, rendering the earlier attachment language largely superfluous. The better reading gives effect to both limitations. *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). The claims first specify that the supporting walls are attached to the puzzle board and then recite what those attached structures do: they cooperate to form at least one drawer cavity.

Defendants' argument that the "drawer cavity" must be a "fully enclosed structural hollow storage space" (Dkt. 76 at 22) is similarly without support. The claims impose no such requirement. Indeed, because the drawer cavity must permit the puzzle drawers to slide in and out, it logically cannot be "fully enclosed." Nor is there any basis for Defendants to import into the independent claims the dividing supporting walls and inner supporting walls. These other structures are the subject of dependent claims (*see, e.g.,* claims 5, 6, 7, 15 and 16) and so under the doctrine of claim differentiation should not be read into the independent claims. *Nazomi*, 403 F.3d at 1370 (limitations in dependent claims ordinarily are not read into the independent claims from which they depend).

24

## IV.     CONCLUSION

For these reasons, Plaintiffs ask the Court to construe "a fixing portion extending from the puzzle plate" to mean "a portion extending from the puzzle plate that is used for fixation," and decline to construe the remaining six terms.

Respectfully submitted,

Dated:  August 3, 2026

/s/ Marina N. Saito
Edward H. Rice
Marina N. Saito
Steven M. Lubezny
Rice Technology Law Group
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@ricetechlaw.com
marina@ ricetechlaw.com
steve@ ricetechlaw.com
(224) 331-0568

*Counsel for Plaintiffs*
*Xiaoling Che and Jinyan Duan*

25