**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| XIAOLING CHE, et al.,<br>　　　　Plaintiffs/Counter-Defendants,<br><br>v.<br><br>SHENZHEN MUMUWAN MAOYI<br>YOUXIAN GONG SI, et al.,<br>　　　　Defendants/Counter-Plaintiffs. | Case No. 1:25-cv-04946<br><br>Hon. Virginia M. Kendall<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR PROPOSED CLAIM CONSTRUCTIONS**<br><br>Amended Complaint Filed: May 8, 2025 |

## I.　　INTRODUCTION

Plaintiffs ask the Court to apply plain and ordinary meaning to six disputed terms. They propose a construction for the seventh term, "fixing portion." Their response confirms that the parties disagree about the scope of every term submitted for construction. The Court should resolve those disputes under *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1361–63 (Fed. Cir. 2008).

Plaintiffs' procedural objections do not remove the disputes from the case. Defendants' initial contentions stated that claim-construction positions would be disclosed later and were not admissions about claim scope. PA003. Defendants then served an LPR 4.1 disclosure on May 18, 2026. Ex. A at 1–6. That disclosure identified "rotating assembly" and "supplement arrangement" under § 112(f), along with the claimed functions and proposed corresponding structures. *Id.* at 5 .

The response also reads several proposed constructions more narrowly than their words require. "Distinct" does not mean separately manufactured, and it does not exclude an integral puzzle board. A restricting wall need not surround all four sides, and a drawer cavity need not be

1

sealed at its access opening. Those clarifications answer Plaintiffs' principal concerns without changing Defendants' proposed constructions.

The Court should adopt the constructions in Defendants' opening brief. At a minimum, it should decide whether § 112(f) applies and identify the corresponding structures. The Court may address the alternative § 112(b) positions separately if it finds a procedural issue concerning those validity grounds.

## II. PLAINTIFFS' THRESHOLD OBJECTIONS DO NOT ELIMINATE THE CLAIM-SCOPE DISPUTES

### A. Defendants disclosed their § 112(f) positions under LPR 4.1 before claim-construction briefing.

Plaintiffs rely on two preliminary statements in Defendants' initial contentions. Those statements said that, "[a]t this time," Defendants did not invoke § 112(f) and had not asserted indefiniteness. PA004; PA007. Plaintiffs omit the surrounding reservations and the separate statement that Defendants' claim-construction positions "shall be disclosed in due course." PA003. The same page states that nothing in the contentions should be treated as an admission about how the claims should be construed. *Id.*

The Local Patent Rules provide for a later claim-construction disclosure. LPR 4.1(a) requires each party to identify the terms it asks the Court to construe, its proposed constructions, any element governed by § 112(f), the claimed function, and the corresponding structure. Defendants served that disclosure on May 18, 2026. Ex. A at 1–4. Plaintiffs therefore received the § 112(f) positions before the opening brief, and they addressed those positions in detail in their response.

The May 18 disclosure stated that the proposed constructions were preliminary. The opening brief later refined and narrowed certain wording after further review of the intrinsic

record. Defendants rely on Exhibit A to show notice of the § 112(f) issues. The constructions presented for decision are those stated in Dkt. 76.

Plaintiffs treat LPR 2.3 and LPR 4.1 as if they served the same purpose. They do not. LPR 2.3(b)(3) addresses how a party charts claim elements against prior art in its initial invalidity contentions. LPR 4.1(a) then requires the parties to exchange the claim-construction positions that will be presented to the Court. Defendants' preliminary contentions preserved that later exchange, and Defendants made the exchange on May 18.

The § 112(f) question is also a claim-construction issue for the Court. The Court must first identify the claimed function and then determine the corresponding structure. *WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1347–49 (Fed. Cir. 1999). Plaintiffs had notice of both parts of Defendants' position and addressed them in their responsive brief.

The alternative indefiniteness grounds present a separate issue because indefiniteness is a validity ground under LPR 2.3(b)(4) and LPR 3.1(b). Defendants preserve the alternative positions stated in the opening brief and disclosed on May 18. If the Court concludes that those alternatives should be deferred on procedural grounds, it should still decide the underlying § 112(f) questions. The Court can determine the claimed functions and corresponding structures without deciding the alternative § 112(b) issues now.

## B. The initial product comparisons do not determine the objective scope of the claims.

Plaintiffs also argue that only "fixing portion" matters because Defendants' initial non-infringement charts did not then dispute other limitations. The contentions themselves reject that reading. They were based on "apparent claim constructions," reserved modification after the Court's constructions, and stated that they did not limit Defendants' claim-construction positions. PA001–04.

An initial comparison of an accused product to unconstructed claim language does not establish the legal scope of that language. Claim construction comes first and supplies the meaning used in later infringement and validity analysis. The parties now disagree about whether the six remaining terms require specific structural or functional limits. Those are claim-scope disputes, even if Plaintiffs call their position "plain and ordinary meaning."

*O2 Micro* addresses this situation. A court need not rewrite every familiar word, but it must resolve an actual dispute about scope. 521 F.3d at 1361–63. Plaintiffs' response confirms several such disputes. It contests the proposed physical limits for "restricting wall," "successively stacked," and "drawer cavity." Dkt. 79 at 19–24. Leaving each term to unspecified "plain meaning" would give the jury no answer to those disputes.

### C. The reexamination statement does not prevent construction.

Plaintiffs cite a reexamination statement that the specification provides no "special definitions" for certain terms. PA026–27. That statement means the patent owner did not supply an express special definition. It does not mean that the claims must be read without the context supplied by the claims, specification, and prosecution history.

Defendants do not contend that the patent expressly defines "fixing portion" in a glossary. They contend that the intrinsic record shows what physical portion the claim language identifies and what role it serves. Nor does the absence of an express definition answer whether § 112(f) applies. That inquiry follows the statute and the functional language used in the claims.

### III. "FIXING PORTION" IS A DISTINCT PORTION, BUT IT NEED NOT BE A SEPARATELY MADE PIECE

Defendants propose: "A distinct structural extension of the puzzle plate dedicated specifically to attaching the restricting wall." Plaintiffs argue that this construction excludes the

4

embodiments because the fixing portion and puzzle plate may be integral. That argument gives "distinct" a meaning that Defendants did not propose.

The construction distinguishes two claimed regions of the puzzle board. It does not require two pieces, a seam, or separate manufacturing. The Federal Circuit has recognized that different claimed components may be "distinct structural portions of an integral structure." *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1303–04 (Fed. Cir. 2011). Thus, Figures 8, 11, 52, and 53 are consistent with Defendants' construction because an integral board may still have an identifiable puzzle plate and an identifiable fixing portion.

The claim language requires that distinction. Claims 1, 10, and 17 recite a puzzle board "comprising a puzzle plate and a fixing portion extending from the puzzle plate." JA0071–72. The two terms must retain different meanings, even if they occupy one integral piece. *See Retractable Technologies*, 653 F.3d at 1303–04. Claim 11's statement that the puzzle plate is "coplanar with the fixing portion" also fits this reading. JA0071. Two distinct regions can lie in the same plane.

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP* does not create a rule that every separately recited element must be separately manufactured. Its result followed the specific language "connected to," which would otherwise have required one element to be connected to itself, and the specification assigned the structures different functions. 616 F.3d 1249, 1254–55 (Fed. Cir. 2010). Read with *Retractable Technologies*, the cases support a narrower point here: the puzzle plate and fixing portion are distinct claimed portions, but they may form parts of one integral board.

The specification also assigns the fixing portion a specific location and role. It states that the fixing portion extends from the edge of the puzzle plate and connects with the supplement

arrangement and restricting wall. JA0061 at 6:42–48. It further discloses receiving spaces that fix and receive the fixing portion. JA0063 at 10:34–41. The side of the fixing portion is accommodated in those spaces to resist removal under impact or a failure in gluing. JA0063–64 at 10:66–11:4.

Those passages do more than identify any area where glue might happen to be placed. They describe a peripheral structural extension used in the claimed attachment arrangement. The phrase "dedicated specifically" describes that claimed role. It does not mean that the fixing portion can have no contact with the supplement arrangement or serve no related structural purpose.

Plaintiffs' proposal does not resolve the dispute. "A portion extending from the puzzle plate that is used for fixation" leaves "fixation" undefined and does not state what is fixed. It would permit any selected region to become a fixing portion after an attachment is placed there. Defendants' construction instead identifies the portion before infringement is assessed and ties it to the restricting wall required by the claims.

## IV. "ROTATING ASSEMBLY" AND "SUPPLEMENT ARRANGEMENT" ARE GOVERNED BY § 112(f)

### A. The claims use generic labels to state functions without sufficient structure.

Defendants recognize that neither term uses the word "means." That creates a rebuttable presumption that § 112(f) does not apply. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348–49 (Fed. Cir. 2015) (en banc in relevant part). Defendants bear the burden to overcome that presumption. They may do so by showing that the term lacks sufficiently definite structure or states a function without sufficient structure to perform it. *Id.* at 1349–50.

*Williamson* rejected the former "strong" presumption. The essential question is whether a person of ordinary skill would understand the words, in context, as the name for sufficiently

definite structure. *Id.* Generic labels can operate as substitutes for "means" when they state a function but identify no particular structure. *Id.* at 1350–51.

*MTD Products Inc. v. Iancu* applies that rule to the word "assembly." The Federal Circuit held that "mechanical control assembly" was a generic black-box term, even though the claim said the assembly was coupled to other components. 933 F.3d 1336, 1343–45 (Fed. Cir. 2019). The coupling language gave some structural context, but it did not identify what the assembly was. *Id.* at 1343–44. The court also kept two questions separate: whether § 112(f) applies, and what corresponding structure the specification discloses. *Id.* at 1344–45.

*Fintiv, Inc. v. PayPal Holdings, Inc.* confirms that the analysis depends on context, not a blanket rule about connecting words or functional modifiers. 134 F.4th 1377, 1382–84 (Fed. Cir. 2025). There, the modifier "payment" did not add structure to the generic word "handler." *Id.* The claim still used a black-box label for something that performed stated functions. *Id.*

Plaintiffs fault Defendants for not submitting expert testimony. Expert evidence may assist the analysis, and *MTD Products* included such evidence. But the governing cases do not make an expert declaration an absolute requirement. The Court may examine the claim language and intrinsic record to decide the legal question before it. *See WMS Gaming*, 184 F.3d at 1347–49. Here, that record shows that "rotating" describes what the assembly does, while "supplement" describes the arrangement's purpose.

Plaintiffs' cited cases do not change that result. *Zeroclick* involved terms that the record treated as references to conventional graphical-interface programs or code. The challenger offered no evidentiary support for removing them from that context. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007–08 (Fed. Cir. 2018). *Dyfan* involved evidence that "code" and "application" were terms of art that denoted known software structures. *Dyfan, LLC v. Target*

*Corp.*, 28 F.4th 1360, 1367–68 (Fed. Cir. 2022); *see Fintiv,* 134 F.4th at 1383–84 (distinguishing *Dyfan*). Nothing in the '648 Patent identifies "rotating assembly" or "supplement arrangement" as the name of a comparably recognized class of mechanical structures.

**B. "Rotating assembly" identifies a function and attachment point, not a structure that performs rotation.**

Claim 10 recites "a rotating assembly attached on the board assembly." JA0071. "Rotating" states the function, and "attached on the board assembly" states location and connection. The claim does not identify the parts that produce rotation. This is the same difference *MTD Products* drew between language that locates or connects an assembly and language that states what the assembly is. 933 F.3d at 1343–44.

Plaintiffs argue that Defendants' brief itself recognizes a class of rotational mechanisms because it mentions swivel wheels. Dkt. 79 at 14. The reference does not show that "rotating assembly" names one definite class. It shows the opposite: many unrelated mechanisms might produce movement unless § 112(f) ties the functional label to the structure disclosed for the claimed function.

The specification supplies that structure. It links rotation to a circular first moving member, a coaxially engaged second moving member, and an intervening bearing unit. JA0065 at 13:52–14:5; JA0066 at 16:24–40; JA0068 at 19:3–7, 19:33–35, 19:58–66. Section 112(f) covers that disclosed multi-ring framework and its structural equivalents, as stated in Defendants' proposed construction.

Plaintiffs identify the "second bearing unit 24" as another rotational structure. Dkt. 79 at 14–15. The cited passage draws the opposite distinction. It states that the second bearing unit permits the board to slide in planar directions, while the first bearing unit permits the board to

8

rotate. JA0065 at 13:17–24. The sliding bearing therefore does not replace the disclosed structure that performs the claimed rotation.

The prosecution history confirms that "rotating assembly" mattered to allowance, but the specification identifies the corresponding structure. The applicants relied in part on the absence of a rotating assembly to distinguish Shultz, and the Examiner cited the rotating assembly, in combination with the other limitations, in allowing Claim 10. JA0359; JA0421. Defendants do not rely on those statements as an express definition of the term. They show why the limitation cannot be treated as an undefined reference to any way of moving a board.

Once § 112(f) applies, the Court should identify the claimed function and corresponding structure. *See Williamson*, 792 F.3d at 1351–52; *WMS Gaming*, 184 F.3d at 1347–49. If the Court finds the disclosure inadequate, that conclusion may raise indefiniteness. *Williamson*, 792 F.3d at 1351–52. If the Court instead concludes that § 112(f) does not apply, Defendants preserve the alternative § 112(b) position stated in the opening brief, subject to the Court's procedural ruling.

### C. "Supplement arrangement" does not identify enough structure to perform the cavity-forming and drawer-housing function.

"Arrangement" is also a generic label. The word does not identify a particular component or recognized mechanical structure. "Supplement" describes a purpose, not a physical form. The term therefore must be examined in the full claim context under *Williamson*.

The claims recite some supporting walls, but that does not end the question. The issue is whether the claim identifies enough structure to perform the entire function attributed to the supplement arrangement. *Williamson*, 792 F.3d at 1349–51. Partial structure, location, or connection may provide context without naming the structure that performs the function. *MTD Products*, 933 F.3d at 1343–45.

9

Claim 10 illustrates the gap. It states that the supplement arrangement comprises a first main supporting wall. JA0071. It later states that the arrangement cooperates with the puzzle board to form at least one drawer cavity from which each drawer slides in and out. *Id.* One identified wall and a flat board do not state the remaining physical boundaries or layout of that cavity. The claim thus recites an outcome without identifying the complete structure that produces it.

The dependent claims confirm that the generic term itself does not carry the missing structure. Claim 13 adds a second main supporting wall, and Claim 15 adds an inner supporting wall. JA0071. Other claims add dividing walls and further wall relationships. JA0071–72. Those additions show that "supplement arrangement," standing alone, does not name a fixed collection of structural parts.

Plaintiffs invoke claim differentiation, but that doctrine does not replace the statutory analysis. If a limitation uses means-plus-function format, § 112(f) directs the Court to the corresponding structure and equivalents. The Court does not import a preferred embodiment by choice; it identifies the structure that the specification clearly links to the claimed function. *See MTD Products*, 933 F.3d at 1344–45.

Here, the specification links the cavity-forming and drawer-housing function to an interconnected grid of supporting walls. It describes main supporting walls, dividing supporting walls, and inner supporting walls that cooperate with the puzzle board to define lateral and longitudinal cavities. JA0062–63 at 7:28–9:18. That is the structure in Defendants' proposed construction, together with structural equivalents.

The prosecution history provides additional support only where it applies. During prosecution, the applicants added an inner-supporting-wall limitation to Claim 17 and described

10

the wall relationships in further detail. JA0356; JA0358. The Examiner's reason for allowance also referenced that added structure. JA0421. Defendants do not contend that the amendment rewrote every claim, but it confirms the structural importance of the disclosed wall system for Claim 17.

Plaintiffs' reliance on the claims' references to walls mixes the two steps of the analysis. The presence of some structure in a claim does not establish that "supplement arrangement" itself names sufficient structure for the full function. *See MTD Products*, 933 F.3d at 1344–45. The Court should apply § 112(f) and adopt the function and corresponding structure set out in Defendants' opening brief.

### V.     THE REMAINING TERMS REQUIRE THE STRUCTURAL CLARITY PROVIDED BY DEFENDANTS' CONSTRUCTIONS

#### A. "Restricting wall" is a raised barrier that performs a restricting function.

Defendants' construction does not require a wall on all four sides of the puzzle plate. It also does not say that every item must be prevented from leaving through every possible opening. The construction states that a restricting wall is "[a] raised barrier that physically prevents items from sliding off the puzzle plate." Dkt. 76 at 16.

That language fits both the four-sided and three-sided embodiments. A three-sided raised wall prevents pieces from sliding off at the three protected edges, even though the fourth side remains open. JA0065 at 14:20–26. The embodiment therefore does not turn the restricting wall into a flush edge or decorative feature.

The specification repeatedly identifies the wall by this physical function. It prevents players from accidentally pushing pieces off the puzzle plate, and it prevents pieces from falling when the board is rotated or moved. JA0062 at 7:9–21. Plaintiffs' "plain meaning" position does

11

not tell the jury whether a raised barrier and that restricting function are required. Defendants' construction answers that concrete dispute without adding a closed-perimeter requirement.

### B. "Successively stacked" states a specific ordered physical relationship.

Defendants agree that "successively stacked" appears in Claims 1 and 17, not Claim 10. The reference to Claim 10 in the opening brief's heading and table was a clerical error. That correction does not change the proposed construction or its support.

The claims use the phrase to describe three ordered layers. In Claim 1, the first extending wall and fixing portion are successively stacked on the first main supporting wall, and the second extending wall and fixing portion are successively stacked on the second main supporting wall. JA0071. Claim 17 recites the same ordered relationship for the first extending wall, fixing portion, and first main supporting wall. JA0072.

Defendants do not rely on a special dictionary definition. They rely on how "successively stacked" is used in the claims and shown in the intrinsic record. The specification repeats the same three-layer relationship, and the cross-sectional figures show the components in sequential physical contact. JA0008–09; JA0040–41; JA0069 at 21:52–58.

Plaintiffs' response leaves unresolved whether intervening components, lateral placement, or separated objects satisfy the phrase. Dkt. 79 at 20–21. Defendants' construction resolves that scope dispute by requiring vertical, sequential physical contact at the same location. That construction gives effect to both "successively" and "stacked."

### C. "Actuated to slide in-and-out" requires guided sliding movement.

Plaintiffs argue that Defendants imported the engaging slots and portions from one embodiment. Defendants' construction does not require the particular slots numbered 305d or

engaging portions numbered 326d. Those features are examples of physical guidance for sliding movement.

The first embodiment also describes a physical sliding relationship. Each drawer is "slidably coupled" at a side of the board, retained in a drawer cavity, and independently actuated to slide in and out. JA0063 at 9:40–52. Each drawer also has a rectangular bottom panel "slidably received" in the corresponding cavity. JA0063 at 9:63–65. Those statements describe more than placing a loose container under a board.

The later engaging slots and portions make that guidance express. Each engaging portion slides in a corresponding slot. JA0066 at 15:32–51. This example supports the proposed guided-sliding requirement. It does not limit the claim to that numbered design.

Plaintiffs' position does not resolve what "actuated" and "slide" require. Defendants' construction requires inward and outward guided motion by the flat drawer panels through physical tracks. In this context, "tracks" means physical guiding paths or surfaces. It is not limited to one disclosed slot design.

**D. "Cooperated with the puzzle board for forming at least one drawer cavity" requires physical attachment and a structurally bounded cavity.**

The proposed construction states that the components are "[p]hysically joined to the puzzle board structure to create a fully enclosed structural hollow storage space." Dkt. 76 at 22. "Fully enclosed" refers to the structural boundaries of the cavity. It does not mean sealed shut. The cavity retains the access opening through which the drawer slides.

The claim language and specification require more than nearby placement. Claims 1 and 10 state that supporting walls are attached on the bottom surface of the puzzle board and cooperate with the board to form a drawer cavity. JA0071. The specification likewise states that

the supporting portion is connected with the bottom surface to form the cavity. JA0062 at 7:28–31. It then describes the walls that cooperate to form particular cavities. JA0062 at 8:25–49.

Plaintiffs argue that "physically joined" duplicates the separate attachment language. The attachment clauses identify the relationship of specified walls to the board. The disputed phrase states how the combined structures form the resulting cavity. Reading the phrase to permit unattached nearby placement would remove that physical cooperation.

Plaintiffs also argue that a cavity cannot be "fully enclosed" because a drawer must move through an opening. That reads "enclosed" as "sealed shut," which Defendants do not propose. A drawer cavity is a bounded hollow storage space with an access opening. The construction distinguishes that cavity from an unbounded area beneath a board while preserving the claimed sliding access.

## VI.    CONCLUSION

The response confirms real disputes about the scope of all seven terms. Defendants disclosed their claim-construction positions under LPR 4.1 before briefing, and Plaintiffs addressed them on the merits. The Court should resolve the disputes and adopt the constructions set out in Defendants' opening brief.

At a minimum, the Court should decide whether "rotating assembly" and "supplement arrangement" invoke § 112(f) and identify the corresponding functions and structures. Any procedural ruling on the alternative indefiniteness grounds can be made separately. That approach resolves the claim-construction questions without treating a distinct validity issue as a reason to leave the claim language undefined.

14

Dated: August 10, 2026

Respectfully submitted,

<u>/s/ Marjorie Ouyang</u>
Marjorie Ouyang
VALLEY & SUMMIT LAW PC
One Park Plaza, Suite 600
Irvine, CA 92614
Tel: (909) 248-4522
E-Mail: marjorie.ouyang@valleysummitlaw.com
Attorney for Defendants/Counter-Plaintiffs

15

# Exhibit  A

Case: 1:25-cv-04946 Document #: 80 Filed: 08/11/26 Page 17 of 22 PageID #:1305

 Gmail                                            **Marjorie Ouyang <marjorie.ouyang@valleysummitlaw.com>**

---

# Che et al. v. Shenzhen Mumuwan Maoyi Youxian Gong Si et al. - LPR 4-1 Disclosure
3 messages

---

**Steve Lubezny** <steve@ricetechlaw.com>                                    Mon, May 18, 2026 at 8:03 PM
To: Marjorie Ouyang <marjorie.ouyang@valleysummitlaw.com>
Cc: Steve Moore <smoore@nilawfirm.com>, Edward Rice <ed@ricetechlaw.com>, Hao Ni <hni@nilawfirm.com>, Neal Massand <nmassand@nilawfirm.com>, Nick Najera <nnajera@nilawfirm.com>, Marta Rocha <marta.rocha@valleysummitlaw.com>, Daisy Yao <daisy.yao@valleysummitlaw.com>, Marina Saito <marina@ricetechlaw.com>

Counsel:

Please find attached Plaintiffs' LPR 4.1 Disclosure of Proposed Claim Terms to Be Construed Along with Proposed Constructions.

Regards,
Steve

## Steve Lubenzy
Partner

---

**Rice Technology Law Group**

  +1 224.331.1695

  steve@ricetechlaw.com

  www.ricetechlaw.com

  555 Skokie Blvd., Suite 500
    Northbrook, Illinois 60062

This e-mail message is intended for the above-named recipient(s) only.  This message may contain confidential and privileged attorney-client communications.  If you received this message in error, please notify us immediately and delete the original message.

---

 **Plaintiffs' LPR 4-1 Proposed Terms for Construction.pdf**
101K

---

**Marta Rocha** <marta.rocha@valleysummitlaw.com>                              Mon, May 18, 2026 at 10:46 PM
To: Steve Lubezny <steve@ricetechlaw.com>
Cc: Marjorie Ouyang <marjorie.ouyang@valleysummitlaw.com>, Steve Moore <smoore@nilawfirm.com>, Edward Rice <ed@ricetechlaw.com>, Hao Ni <hni@nilawfirm.com>, Neal Massand <nmassand@nilawfirm.com>, Nick Najera <nnajera@nilawfirm.com>, Daisy Yao <daisy.yao@valleysummitlaw.com>, Marina Saito <marina@ricetechlaw.com>

Thank you Steve,

Please see Defendants' proposed claim construction terms attached. To comply with LPR, can you please provide your availability to meet and confer regarding these. I am quite booked out Wednesday through Friday, but I do have availability  tomorrow afternoon or entire Monday next week.

Sincerely,
Marta

[Quoted text hidden]

---

 **Mumuwan_Defendants LPR 4.1 Proposed Claim Terms_5.18.26.pdf**
158K

---

**Steve Lubezny** <steve@ricetechlaw.com>                              Tue, May 19, 2026 at 11:58 AM
To: Marta Rocha <marta.rocha@valleysummitlaw.com>
Cc: Marjorie Ouyang <marjorie.ouyang@valleysummitlaw.com>, Edward Rice <ed@ricetechlaw.com>, Marina Saito <marina@ricetechlaw.com>

Marta:

The local patent rules require the parties to meet and confer in order to agree upon no more than ten (10) terms or phrases to submit for construction by the court. Given that the total number of identified terms is already less than 10, it seems that there is no need for us to meet and confer.  If you still see a reason for a call, let us know.  We can be available Monday afternoon.

Thanks,
Steve

[Quoted text hidden]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| XIAOLING CHE AND JINYAN DUAN,<br><br>Plaintiffs,<br>v.<br><br>SHENZHEN XIMEIKEJI YOUXIAN GONGSI;<br>SHENZHEN MUMUWAN MAOYI YOUXIAN<br>GONG SI; QINGYUNXIANGESIWEI-<br>SHANGMAOYOUXIANGONGSI; and<br>SHENZHEN MENGDUDU CHONGWU<br>YONGPIN YOUXIAN GONGSI<br>Defendants. | Civil Action No. 1:25-cv-04946 |

## DEFENDANTS' LPR 4.1 PROPOSED CLAIM TERMS TO BE CONSTRUED ALONG WITH PROPOSED CONSTRUCTIONS

Pursuant to LPR 4.1 and the Court's Scheduling Order, Defendants provide the following proposed claim terms for construction along with their proposed constructions.

These proposed terms and constructions are preliminary. They are based on Defendants' current knowledge and understanding of U.S. Patent No. 12,220,648 ("the '648 Patent") and Defendants' present understanding of Plaintiff's infringement/enforceability and validity contentions. Defendants reserve the right to supplement, amend or otherwise modify these proposed terms if additional information becomes available or should Plaintiffs be granted leave to amend their infringement/enforceability and validity contentions or assert additional defenses against Plaintiffs.

| Disputed Claim Term / Phrase | Asserted Claims | Defendants' Proposed Construction |
|---|---|---|
| "a fixing portion extending from the puzzle plate" | 1–6, 9–15, 17, 19, 23 | A distinct structural extension of the puzzle plate dedicated specifically to attaching the restricting wall. |

- 1 -

| "a rotating assembly" | 10 | Governed by 35 U.S.C. § 112(6): |
|---|---|---|
| | | • *Function:* Rotating the board assembly. |
| | | • *Structure:* A rotatable mechanical mechanism attached to the board assembly, structurally disclosed as either: (1) A multi-ring framework comprising a circular first moving member, a second moving member coaxially engaged therewith, and an intervening bearing unit; or (2) A plurality of swivel-type wheels attached on the board assembly. |
| | | *Intrinsic Evidence Support:* See Col. 12, ll. 46-54 and Col. 13, ll. 17-24 detailing the framework. |
| | | Alternative Construction: Indefinite under 35 U.S.C. § 112(2) for failing to disclose a clear, definite structural boundary or specific configuration within the specification to limit the "assembly" nonce word. |
| "supplement arrangement" | 1–6, 9–15, 17, 19, 23 | Governed by 35 U.S.C. § 112(6): |
| | | • *Function:* Supplementing the puzzle board to structurally house sliding puzzle drawers. |
| | | • *Structure:* An interconnected spatial grid consisting of a first main supporting wall, a parallel second main supporting wall, perpendicular dividing supporting walls, and perpendicular inner supporting walls defining separate lateral and longitudinal hollow cavities, or structural equivalents thereof. |
| | | *Intrinsic Evidence Support:* See Col. 7 ll. 54 – Co.8, ll. 54 10 outlining the exact intersecting wall grid. |
| | | Alternative Construction: Indefinite under 35 U.S.C. § 112(2) because the specification fails to cleanly bound or define the structural intersection of the required structural elements, rendering the scope of the "arrangement" nonce term insolubly ambiguous. |

- 2 -

- 3 -

| "restricting wall" | 1–6, 9–15, 17, 19, 23 | A raised perimeter barrier that physically prevents items from sliding off the puzzle plate. |
|---|---|---|
| "successively stacked" | 1, 10, 17, 23 | Positioned vertically directly on top of one another in sequential physical contact at the same point of location. |
| "actuated to slide in-and-out of the drawer cavity" | 1, 10, 17, 19 | Mechanically guided to slide inward and outward via flat horizontal panels moving through standard physical tracks. |
| "cooperated with the puzzle board for forming at least one drawer cavity" | 1, 10 | Physically joined to the puzzle board structure to create a fully enclosed structural hollow storage space. |

Dated: May 18, 2026

Respectfully Submitted,

By: /s/ _Marjorie Ouyang_____
Marjorie Ouyang
Valley & Summit Law
One Park Plaza, #600
Irvine, CA 92614

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2026, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the Filing Users by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. The undersigned further certifies that a copy of the aforementioned document was served upon all counsel of record via the Court's CM/ECF system.

Dated: August 10, 2026

/s/ Marjorie Ouyang
Marjorie Ouyang

16