# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

\- - - - - - - - - - - - - x

XIAOLING CHE, et al., :

Plaintiffs/Counter- :

Defendants, : Case No.

v. : 1:25-cv-04946

SHENZHEN MUMUWAN MAOYI :

YOUXIAN GONG :

SI, et al., :

Defendants/Counter- :

Plaintiffs. :

\- - - - - - - - - - - - - x

Videotaped 30(b)(6)Deposition of Various Companies

Taken by and through their representative,

WAN ZHANG

Conducted Virtually

Tuesday, August 11, 2026

8:45 a.m. HKT

Pages: 1 - 100

Reported By: Jessica Shines, CSR, RPR

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

EDWARD H. RICE, ESQUIRE
RICE TECHNOLOGY LAW GROUP
555 Skokie Boulevard
Suite 500
Northbrook, Illinois 60062
224-331-0568
ed@ricetechlaw.com

ON BEHALF OF THE DEFENDANTS:

MARJORIE OUYANG, ESQUIRE
VALLEY & SUMMIT LAW
1 Park Plaza
Suite 600
Irvine, California 92614
909-248-4522
marjorie.ouyang@valleysummitlaw.com

ALSO PRESENT:

Kate Hong, Mandarin Chinese Interpreter
Thomas Huang, Valley & Summit Law
Adam Mason, Videographer

C O N T E N T S


| EXAMINATION OF WAN ZHANG | PAGE |
| --- | --- |
| BY MR. RICE | 6 |


E X H I B I T S

ALL EXHIBITS ATTACHED TO THE TRANSCRIPT


| Exhibits | Page Marked |
| --- | --- |
| 1 | 20 |
| 2 | 25 |
| 3 | 52 |
| 4 | 54 |
| 5 | 66 |
| 6 | 74 |
| 7 | 76 |
| 8 | 78 |


(EXHIBITS RETAINED BY COUNSEL)

P R O C E E D I N G S

THE VIDEOGRAPHER: We are now on the record. The time is 8:45.

She can click Okay on the screen.

The time is 8:45 a.m. Hong Kong time on August 11th -- excuse me -- August 11th, 2026. This begins the videoconference deposition of Wan Zhang taken in the matter of Xiaoling Che, et al. versus Shenzhen Mumuwan, et al. filed in the United States District Court for the Northern District of Illinois, the case number of which is 1:25-cv-04946. My name is Adam Mason. I am your remote videographer today. Will everyone present please identify themselves and state whom you represent.

MR. RICE: This is Edward Rice representing the plaintiffs, Xiaoling Che and Jinyan Duan.

Marjorie, are you going to identify yourself for the record?

MS. OUYANG: Yes. Marjorie Mingzi Ouyang representing the defendants and also defending the witness here today for the

deposition.

THE VIDEOGRAPHER: Thank you. Will the court reporter please swear in the interpreter and witness, and counsel may proceed.

THE REPORTER: Ms. Interpreter, can you raise your right hand?

THE INTERPRETER: Sure.

THE REPORTER: Do you promise to translate from English to Mandarin and back again to the best of your ability?

THE INTERPRETER: Yes, I do.

THE REPORTER: Can you have the witness raise her right hand?

Do you swear or affirm that the testimony you are about to give today will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes.

THE REPORTER: Thank you.

MR. RICE: Okay. For the record, I also just want to note that there's an additional individual from defendants' law firm on the video too. Would you mind

introducing yourself?
MS. MAYER: Okay. Hi, Counsel. My name is Thomas Huang. I am a law clerk here in the Valley Summit law firm. That's it.
MR. RICE: Thank you.

EXAMINATION

BY MR. RICE:
Q. Good morning, Ms. Zhang. Would you please state your full name for the record.
A. Wan Zhang.
Q. Where do you live?
THE INTERPRETER: The interpreter didn't catch that. The interpreter will ask for repetition.
THE WITNESS: I live in Longhua, Shenzhen.
THE INTERPRETER: The interpreter will spell it for the court reporter. L-O-N-G-H-U-A. And the city's name is Shenzhen. It is spelled like S-H-E-N-Z-H-E-N.
BY MR. RICE:
Q. Where do you work?
A. Longhua, Shenzhen.

Q. What -- where are you employed? What is the company that employs you?
A. Shenzhen Mumuwan Maoyi Gong Si.
Q. What is your position at Mumuwan?
A. General management.
Q. Ms. Zhang, you look very young. May I ask how old you are?
A. 36.
Q. Where are you located right now?
A. In Hong Kong, China.
Q. Are you in a hotel right now?
A. Yes, correct.
Q. Is anyone else with you in the room?
A. I am all by myself.
Q. Did anyone come with you to the deposition today who is not in the room?
A. Yes.
Q. Who came with you?
A. My salesperson.
Q. What is the name of the salesperson?
A. This is privacy and the person is an employee of our company. Can I not answer this question?
MS. OUYANG: Counsel, objection in

relevancy.
MR. RICE: I'll skip that question for now.
BY MR. RICE:
Q. Since I cannot see who is in the room besides you, will you agree to let me know if someone else comes into the room?
A. Yes.
Q. Do you have any notes or documents open that you intend to consult during the deposition?
A. No, no documents. But I do have a list of submissions I have already submitted.
Q. Is that a list of documents that your lawyers have produced in the litigation?
A. Yes.
Q. Do you have all of the documents that have been produced in the litigation with you now at the hotel?
A. I do not have all the original documents. I only have the list of documents.
Q. Okay. Ms. Zhang, do you understand any spoken English?
A. No.
Q. Can you read English?

A. No.
Q. Have you ever been a witness in a U.S. deposition?
A. Never.
Q. Okay. Do you understand that I will be asking questions in English and the translator will translate all the questions to you in Mandarin?
A. Yes.
Q. And you understand that you can answer in Mandarin and the translator will translate your words back in English. Is that right?
A. Yes.
Q. Okay. If you do not answer a question -- I'm sorry. If you do not understand a question, will you agree to let me know so I can make my question clear to you?
A. Yes.
Q. Okay. And if you do not ask me to clarify a question, I will assume that you understood the question. Do you understand that?
A. Yes.
Q. Do you understand that there is a court reporter on the call who is transcribing all of

the English into a transcript?
A. Yes.
Q. And you also understand that the deposition is being video-recorded so that it can be part of the record, if necessary, in the lawsuit?
A. Yes.
Q. Do you understand that if you need to take a break, you can ask for one?
A. Okay. Yes.
Q. Yeah. And I will respect your request to take a break but not while a question is pending.
A. Okay.
Q. Okay. You understand that your lawyer may object to some of my questions, is that right?
A. Yes.
Q. But unless she specifically instructs you not to answer my question, I will expect an answer. Do you understand that?
A. Yes.
Q. Okay. Did you prepare for this deposition?
A. Yes, I did.

Q. How did you prepare?
A. I prepared by having the list of documents created by the attorney.
Q. Did you do anything else to prepare?
A. No.
Q. Did you review any documents other than the list in order to prepare for the deposition?
A. No.
Q. Did you speak with anyone about today's deposition?
A. With my salesperson, yes.
Q. Did you speak with anyone besides your salesperson?
A. No.
Q. Did you speak with anyone from the other defendant companies to prepare for this deposition?
A. No, no.
Q. Other than the salesperson, did you speak to others from Mumuwan regarding your deposition testimony today?
A. No.
Q. Did you speak with -- the salesperson you mentioned, is that the salesperson who joined

you to Hong Kong?
A. Yes.
Q. What did you discuss with your salesperson to prepare for your deposition today?
A. Regarding the list of documents.
Q. Did you meet with your salesperson to discuss the list of documents?
A. Yes.
Q. How many times did you meet with the salesperson to discuss your deposition today?
A. Twice. Yesterday and today.
Q. Did you ask your salesperson any questions to prepare for today's deposition?
A. Some questions related to the list of documents. I verified with the salesperson.
Q. What did you verify?
A. Some specifics.
Q. Give me an example of these specifics.
A. For example, whether we have already submitted all of this. Things like that.
Q. Who created the list of documents that you're referring to?
A. The attorney, the attorney.
Q. Okay. And you were asking the

salesperson whether all of the documents on the list that the attorney presented to you -- whether those documents had been produced in the litigation?
A. Yes. This list of documents were jointly created by the attorney and the salesperson and I verified this today with the salesperson.
Q. Was -- who was responsible for collecting the documents that were produced in the litigation?
A. The salesperson.
Q. And the salesperson works at Mumuwan; is that correct?
A. Yes.
Q. Does the salesperson speak English, do you know?
A. I don't. The salesperson doesn't.
Q. Does the salesperson read English?
A. Yes, the salesperson can.
Q. Did you have any English documents translated you -- translated to you to prepare for today's deposition?
A. No.

Q. Where is the salesperson now?
A. Outside. Outside having breakfast.
Q. Do you intend to have the salesperson join you in the room at any point during the deposition?
A. No.
Q. Did you meet with your attorneys at any point to prepare for the deposition? And you can answer that yes or no. You don't have to disclose anything more at this point.
A. No.
Q. Did anyone explain to you what to expect at today's deposition?
A. Explain? Explain about what?
Q. What the deposition is.
A. I don't need anyone to explain about that.
Q. Why is that? Are you already familiar with the U.S. deposition procedure?
A. I know there is such a thing as deposition and all I needed to do is just to attend it.
Q. Okay. So other than the salesperson, you spoke to no one regarding today's deposition,

is that right?
A. Correct.
Q. And you didn't speak to anyone other than the Mumuwan salesperson to prepare for today's deposition; is that correct?
A. Correct.
Q. Okay. Have you seen any English documents relating to this lawsuit?
A. No.
Q. Okay. Do you understand that you have been identified by the defendants as a representative to speak on behalf of all four defendants in the lawsuit?
A. I don't understand. I don't understand this question.
THE INTERPRETER: Sorry, the interpreter wants to be accurate.
BY MR. RICE:
Q. In U.S. litigation, parties are entitled to take the deposition of a corporation rather than an individual. Do you understand that?
A. Yes.
Q. And when a party asks to take the

deposition of a corporation, the corporation must identify an individual who can speak on behalf of the company regarding topics that are listed by the party taking the deposition.

A. I understand that.

Q. You understand that the lawyers for defendants have identified you as the individual who can provide testimony on various topics on behalf of each of the four defendant companies?

A. Yes.

Q. Are you prepared today to answer questions on behalf of each of the four defendant companies?

A. Yes.

Q. One of those defendants is Shenzhen Mengdudu; is that correct? It's spelled M-E, N as in Nancy, G, D as in David, U, D as in David, you.

A. Yes, yes, yes.

Q. Okay. So you're prepared to answer questions as a designated representative of Mengdudu; is that correct?

A. I mainly represent Mumuwan.

Q. If I ask you questions regarding the other three defendant companies, will you be able

to answer those questions accurately?
A. As representative of all their companies, all I can do is try my best.
Q. But you didn't speak to any individuals from those three companies to prepare for the deposition today, is that right?
A. Correct.
Q. And you didn't review any documents from the other three defendant companies to prepare for today's deposition; is that correct?
A. No, I didn't.
Q. So how would you know the information -- what is the basis for you answering questions about the other three defendants?
A. I came here as a result of the agreement between your attorneys that I will represent the four defendant companies at this deposition, right, but I mainly represent Mumuwan.
Q. Do you have information regarding the sales and revenue information for the other three companies?
A. I don't know the specifics.
Q. Are you familiar with the financial documents of the other three companies -- the

other three defendant companies?
A. No.
Q. Have you spoken to any individuals from the other three defendant companies about their finances?
A. No.
Q. Do you know the suppliers for the accused product for the other three companies?
A. I don't know the specifics.
Q. Do you know in general?
A. I don't either because we haven't had any communications.
Q. Do you know anything about the Amazon stores that are owned or operated by the other three defendant companies?
A. No, no.
Q. Do you know anything about who manufactures the accused products for the other three defendant companies?
A. No.
Q. Do you know what products the other three companies sell? Are you familiar with their puzzle table product line?
A. I am aware that they sell puzzle

tables, but I'm not familiar with their products.
I can't say I'm familiar with those.
Q. Have you discussed anything about this litigation with any individuals that are associated with the other three defendant companies?
A. No.
Q. Do you know anything more about the other three defendant companies than an individual who would go on Amazon and look for public information?
A. What does that mean? I'm not sure. I don't understand.
Q. Have you been given access to any confidential business information of the other three companies, including financial information and other sensitive business information?
A. No, no, I can't.
Q. Does Mumuwan share any of its confidential information with any of the other three defendant companies?
A. What? I don't understand.
Q. Does -- if I wanted to obtain information regarding the sales and revenues of --

MR. RICE: Is she on a document where there's a page number? Can she see the page number?

THE WITNESS: I'm not seeing any document. Maybe I am not on the right page.

MR. RICE: Okay. Let's -- let's take a short break here and see if we can get the witness on the right page. Let's go off the record.

THE VIDEOGRAPHER: Thank you, Counsel. This marks the end of Media No. 1. The time is 9:34 a.m. We are off the record.

(Whereupon, there was a recess in the proceedings.)

THE VIDEOGRAPHER: This marks the beginning of Media No. 2. The time is 9:38 a.m. We are on the record.

BY MR. RICE:

Q. Ms. Zhang, now can you see the document on your screen that has a box in the lower right-hand corner with a 1 in the middle?

A. Yes, I can.

Q. Okay. You cannot read this document, is that right?

A. Correct.
Q. Do you know whether you've ever seen a translation of this document?
A. Yes, I have.
Q. When -- when have you seen a translation of this document?
A. Recently. Recently when we discussed about this matter.
Q. When you say "when we discussed" this matter, who is "we"?
A. My salesperson.
Q. Who provided you with the translation of this document?
A. When the salesperson gave it to me, it was the translation.
Q. Okay. Do you have the translation with you?
A. No.
Q. Do you recall what this document is about?
A. I don't quite remember the details.
Q. Do you recall that it contains a list of topics in which you are supposed to be testifying?

A. Yes.
Q. Do you recall seeing any topics listed that you are not comfortable testifying about?
A. I don't quite know now because there are many topics.
Q. Did you understand when you reviewed the translation of this document -- which is Exhibit 1 -- that you were being asked to testify on behalf of the other three defendants on these same topics?
A. I don't understand what this question means.
Q. Okay. The topics listed in the exhibit included topics such as sales information. Do you understand that this document was asking defendants to identify a witness who could address the financial information for each of the four defendants?
A. I am a representative for all the different companies here, but I will mainly answer this regarding Mumuwan.
Q. I'm going to try -- I'm going to mark another exhibit now. This -- I'm going to mark this table Exhibit 2. Are you able to read any of

the words in this table?
A. No.
(Whereupon, Exhibit 2 was introduced into the record.)
BY MR. RICE:
Q. Okay. I would like to ask the court reporter -- well, let me ask this. Are you able to see that Column 1 lists ASIN numbers, A-S-I-N?
A. Yes, I can see ASIN.
Q. Are you familiar with what A-S-I-N numbers are?
A. No.
Q. Are you aware that Amazon issues a standard identification number for each of the products sold on Amazon?
A. I am aware. I am not familiar with these A-S-I-N numbers, but I am aware that Amazon gives each product an A-S-I-N number.
Q. Are you familiar with the letters of the English alphabet?
A. Yes.
Q. If you look at row B which is the fourth row down, there is an ASIN and beneath it, it says Mumuwan. Do you see that?

A. Yes.
Q. Do you recognize this ASIN as a product that is sold by Mumuwan?
A. I don't remember -- I don't remember the ASIN number.
Q. Okay. Are you aware that there are two products that were identified in the complaint in this lawsuit that relate to accused products sold by Mumuwan?
A. What -- what two products?
Q. Are you aware of the Mumuwan products that are accused of patent infringement in this lawsuit?
A. Our products did not infringe any patents.
Q. My question was a little bit different. My question was are you aware of the -- of which Mumuwan products are accused of infringing the plaintiffs.
A. Puzzle tables. I'm aware of that.
Q. Are you aware of which puzzle tables are accused of patent infringement in this lawsuit?
A. I don't remember the detailed

information, but I do remember one of the ASIN numbers end with KW -- associated with one product.

Q. Would that be the ASIN number that is in column 1, row D of Exhibit 2?

A. If this information from the table comes from the documents we have submitted, then that is correct.

Q. How many different models of puzzle table does Mumuwan sell?

A. How many? I just know that puzzle tables are sold.

Q. Can you describe the different types of puzzle tables that Mumuwan sells?

A. I am aware of one model where there -- where there are four drawers and four wheels made of wood.

Q. Is that the only Mumuwan puzzle table model that you are familiar with?

A. Yes.

Q. Who -- who would know how many different models of puzzle table Mumuwan sells?

A. For specifics -- for specifics like that, the salesperson is most familiar with. We

only sell one model.
Q. Are you familiar with the models of puzzle table sold by the other three defendants?
A. No.
Q. Has Mumuwan ever owned an Amazon store called Woodever Direct?
A. Yes, there is such a store.
Q. Is this store owned or operated by Mumuwan?
A. Yes.
Q. When did Mumuwan launch this store on Amazon?
THE INTERPRETER: She clarifies whether you mean when this store is opened.
MR. RICE: Yes.
THE WITNESS: Our store started in '23 -- 2023.
BY MR. RICE:
Q. Before Mumuwan opened the Woodever Direct store, did it have other stores on Amazon?
A. No.
Q. Who decided what products to sell on this store?
A. The team in the company.

again, please.

MR. RICE: Yes. F as in frank, B as in boy, A. FBA.

THE WITNESS: Yes.

BY MR. RICE:

Q. Has Mumuwan -- let me start again.

Since Mumuwan began selling puzzle tables, has it changed the design of any of its puzzle table products?

A. Yes.

Q. Which designs did Mumuwan change? Which products did Mumuwan change?

A. The product that was sold in that store that was mentioned earlier.

Q. The product with the ASIN ending in KW?

A. Yes.

Q. How many times did Mumuwan change the design of the product ending in ASIN KW?

A. We have provided a written document regarding these specifics.

Q. Do you know -- well, would you need to look at a document to be able to answer this question?

A. Do you want the particular name of the

document that has this information? I know this information is contained based on the list of documents.

Q. Do you have the list in front of you?

A. Not now.

Q. Did Mumuwan change the product design more than one time?

A. Yes.

Q. Why did Mumuwan change the product design? Well, can you recall the first time that Mumuwan changed the product design?

A. In order to optimize the product structure, to make it more cost-effective and sturdy.

Q. When did Mumuwan make this change?

A. You meant when? I don't remember when exactly.

Q. Was it before this lawsuit was filed?

A. Yes. Roughly, I remember it as in 2024.

Q. Okay. Do you remember specifically what structural changes were made to optimize the cost and make it more sturdy?

A. I don't remember the specifics.

Q. Is there someone else at the company that would know that information?
A. Yes.
Q. Who is that?
A. The salesperson and the designer.
Q. Do you recall the second time that Mumuwan changed the product design?
A. I don't remember the specific time.
Q. Do you remember what -- do you remember why Mumuwan made the second change?
A. To reduce costs. The design change is primarily for cost reduction.
Q. What structural change did Mumuwan make in order to reduce costs?
A. I don't know the specifics.
Q. Is that something that the salesperson and product design person would know?
A. Yes.
Q. I'm going to ask for the names of the salesperson, product design person because they appear to be individuals relevant to some of the topics. Can you provide me with the name of the salesperson and the product design person?
MS. OUYANG: Objection as it related to

the privacy of some other people and I don't see the relevancy to this lawsuit.

MR. RICE: Unless it -- unless it. Okay. Go ahead and translate. I'm sorry.

THE INTERPRETER: Thank you.

MR. RICE: Okay. Unless that -- disclosing that information would violate some privacy law in China, I need the information. So I'm going to ask the witness to answer despite the objection.

MS. OUYANG: Sorry. Sorry, Counsel. She can't answer because the privacy law doesn't really allow disclosing a nonparty's name to the opposing counsel in a lawsuit unless there is a protective order in place.

MR. RICE: We have a protective order.

MS. OUYANG: But it doesn't extend to this situation.

MR. RICE: What do you mean?

MS. OUYANG: It's her name or his name and --

MR. RICE: Okay.

MS. OUYANG: And I also don't see how that's relevant to this lawsuit.

MR. RICE: Okay. Well, I'm not going to take up time arguing relevancy with you because that's not a grounds for instructing a witness not to answer. Let me just ask you are you instructing the witness not to answer the question?

MS. OUYANG: I'm asking her not to disclose the name of the persons you referenced in your question. But if you wanted to ask the content or circumstances regarding -- concerning the design of the products, she can testify as much as she knows.

MR. RICE: Ay. I'm going to ask again. I'm entitled to have the name of employees of the defendant corporation, particularly employees that were relevant in decision-making and other things that she's testified to repeatedly, information that the salesperson would know and the product designer would know. So I think I'm entitled to those names, but I should not have to explain relevance for purposes of a deposition. As you know, it's not a ground

for an instruction not to answer.

So the only issue in front of us now is if you instruct her not to answer and she accepts that instruction, we will move on. If you do not instruct her not to answer, then I will ask for an answer. That's all.

MS. OUYANG: So, Counsel, I just want to clarify. I did not and do not intend to instruct her not to answer because of relevancy issues. If I do instruct her not to answer, I do instruct her not to answer because of a privacy issue and that privacy issue concern is only limited to the names of those people. You may ask other circumstances surrounding the design of the products, accused products, and I will let her answer your questions.

MR. RICE: Can you let me know what the legal basis is for your privacy objection? Is there a privacy law we're talking about or is this --

MS. OUYANG: Yes, China has a really complicated privacy law. I'm not

particularly privy to the extent of the privacy law, but I think on the safe side, it is my duty to instruct her not to tell the names of those employees.

MR. RICE: I -- I have never heard of such a thing, but if -- I think what you need to do then is instruct her not to answer the question because if you don't instruct her not to answer the question, then I will ask her to answer it and she'll be obligated to answer the question. So you can't have it both ways. Either instruct her not to answer and rely on your objection under whatever privacy law you're talking about and then we can debate that later, or you can let her answer the question. But you can't -- you can't like half instruct her not to answer without committing.

MS. OUYANG: Counsel, let me clarify myself furthermore. I would respectfully ask that you rephrase your question and instead of asking for the names, then you could ask the circumstances surrounding the design of the products.

MR. RICE: And let me ask you a question. If I were to -- if the Court were to find that I'm entitled to take a deposition of this individual, how would you propose that I identify the individual on the deposition notice?

MS. OUYANG: Then we'll have to go to the Court to see if that's something the Court would approve.

MR. RICE: No, I'm saying how would I identify the individual if I don't have a name? Are you proposing we use a Social Security number instead? How do I know -- I know, but we are entitled to be able to identify the witness. Look, I'm not going to argue about it. Are you -- if you're not instructing the witness, then I will ask the witness and she will either answer or not and the record will be preserved and we can move on.

MS. OUYANG: I instruct her to not answer the names of the people.

MR. RICE: Okay. That's -- can you -- would the translator -- let the translator

translate at least -- well, please translate.
THE INTERPRETER: Yes.
THE WITNESS: Then how should I be instructed to answer related to this question? All I know is that when the people were hired by the company, they certainly would not want to get involved in any lawsuit, 100 percent. And now before they know anything about this lawsuit, I don't feel I should disclose their names and I don't think they are relevant. As the legal person of the company, I do not feel I can disclose their names, but I -- what I can say is they are the salesperson and the product designer.
BY MR. RICE:
Q. Your attorney has instructed you not to provide me with the names of these individuals. So the only question is are -- are you going to accept your attorney's instruction and comply with it?
A. Yes.
Q. Do you know how many different ASINs Mumuwan has sold puzzle tables under?

A. You meant how many ASIN numbers associated with puzzle tables that have been in sale by the company, right?
Q. Yes.
A. I am only aware that we sell puzzle tables. I am not -- I do not know how many ASIN numbers.
Q. Who would know that information?
A. Our salesperson.
Q. Has Mumuwan ever sold puzzle tables into the United States through any sales channel besides Amazon?
A. No, only via Amazon.
Q. Has Mumuwan sold puzzle tables through any Amazon store other than Woodever Direct?
A. No.
Q. Are you aware of a defendant named X-I-M-E-I?
MR. RICE: No, no. Again, Shenzhen X-I-M-E-I-K-E-J-I, Y-O-U-X-I-A-N, Gong Si.
THE WITNESS: This is one of the companies that I am representing today, right?
BY MR. RICE:

Q. Correct. Are you familiar with this company outside of the lawsuit?
A. No.
Q. Before this lawsuit, had you ever heard of this company?
A. No.
Q. Do you know what Amazon stores this company uses to sell puzzle tables?
A. I don't know.
Q. Do you know when this company started selling puzzle tables?
A. No.
Q. Do you know the names of any employees of this company.
A. I don't.
Q. Have you had any communications of any kind with anyone from this company since the lawsuit began?
A. No.
Q. Do you know whether anyone else from Mumuwan has had any communications of any kind with anyone from this company since the lawsuit began?
A. I don't know anything about that.

Q. Do you know anything about the XM official store on Amazon?

A. No.

Q. Are you familiar with any of Mumuwan's competitors on Amazon that sell puzzle tables?

A. I don't know the specifics, but I know that anyone that sells puzzle tables on Amazon is our competitor.

Q. Is the Shenzhen Ximeikeji Youxian Gong Si a competitor?

A. Yes, if they sell puzzle tables.

Q. Do you not know whether they sell puzzle tables?

A. They do. So we together are in this lawsuit.

Q. Do you have any sort of agreement with this company that would -- in which they authorized you to speak on their behalf at this deposition?

A. This question probably has to go to the attorney. The attorney asked me to come here today.

Q. Well, let me ask if you are personally aware of any agreement with this company in which

this company has authorized you to speak on its behalf at this deposition.

A. I don't personally.

Q. Okay. How do you pronounce the short version of this company's name?

A. What company?

Q. Shenzhen Ximeikeji Youxian Gong Si.

A. I haven't known about the abbreviated form of the company, but I just called them Shenzhen Ximei. Do you mean how Chinese people will address the company?

Q. No. I just want to know a short way that we can discuss the company at the deposition without saying the full name every time.

A. Then Ximei.

Q. Okay. If I say Ximei, would you -- will you know who I'm talking about?

A. Yes.

Q. Okay. Do you know how many different varieties of puzzle Ximei sells?

A. No.

Q. Do you -- are you familiar with the particular Ximei puzzle tables that are accused of patent infringement in this lawsuit?

A. No.
Q. Do you know who manufactures the Ximei puzzle tables?
Do you know who --
MR. RICE: I'm sorry, Ms. Translator. I didn't hear the English translation of her answer.
THE INTERPRETER: I did not hear her either. Can I ask her to answer again, please.
MR. RICE: Sure. Does she need the question? Does she need the question again? Let me redo -- let me do the question so the record is clear.
THE INTERPRETER: Okay.
BY MR. RICE:
Q. Who supplied the accused puzzle table products to Ximei?
A. I don't know about that.
Q. Do you know if the Ximei products are sold on Amazon FBA or FBM?
A. I don't know about that either.
MR. RICE: Let me -- let me bring up a document. Okay. I'm -- I'm going to mark

as well.

Q. Okay. Are you familiar with an Amazon store called Norbase U.S. Direct?

A. No.

Q. Okay. Let me show you another document. I'm going to mark a document Exhibit 4. This is a document that was provided to us by the defendants. Are you able to read any of this document?

A. I can't.

(Whereupon, Exhibit 4 was introduced into the record.)

BY MR. RICE:

Q. Okay. The first column is entitled Business Name and the second column is entitled Account. Do you see that?

A. Yes.

Q. On the last row of Exhibit 4, the business name listed is Shenzhen Nuo, N-U-O, Beishi, B-E-I-S-H-I, Chuang, C-H-U-A-N-G, Yifa, Y-I-F-A, Zhan, Z-H-A-N, Co. Ltd.

Do you see that?

A. Yes, I can see it.

Q. Are you familiar with that company?

A. No.

Q. In the next column on the last line, it says Norbase U.S. Direct and then in parentheses it has a number. I'm sorry. It has a series of letters and numbers. Do you see that?

THE INTERPRETER: I'm sorry. On what column?

MR. RICE: The second column, last row.

THE INTERPRETER: Okay.

THE WITNESS: Yes.

BY MR. RICE:

Q. Do you know where this document, Exhibit 4 -- or how Exhibit 4 was generated?

THE INTERPRETER: How this exhibit was --

MR. RICE: Generated.

THE INTERPRETER: Okay. Got it.

THE WITNESS: I don't know. Where did you get this?

BY MR. RICE:

Q. This was produced by the defendants in the lawsuit.

A. Got it.

Q. Are you -- do you have any idea where

the information in this exhibit, which appears to be a spreadsheet, comes from?

A. I don't know. I can tell that this is a spreadsheet that can be created. It's not a screenshot from Amazon or something like that. I also have the question related to the generation of this document and I also question its authentication.

Q. Do you have any idea who -- do you have any idea whether this document might have been generated by someone at Mumuwan?

A. I don't know. If someone made this, it's probably the salesperson. Maybe it's sales data.

Q. There are columns in this spreadsheet which appear to reflect sales data. Who at Mumuwan would have sales data for the other defendants in the lawsuit?

A. I do not know about that either. I only know about the information from our company.

Q. All right. I will take this down.

MS. OUYANG: So, Counsel, we can speak on the record or we can take off record. I believe that Excel was provided by

defendant's prior counsel and was not verified. There was no verification on the form. Because it was provided before we substituted in. So I don't know if that reflects the accuracy of anything and I don't think -- I don't think that my witness, our witness, can testify to the accuracy or authenticity of that Excel one.

MR. RICE: Okay.

MS. OUYANG: Thank you. Translator -- Ms. Translator, you may translate this.

THE INTERPRETER: All right. Thank you.

THE WITNESS: Got it.

BY MR. RICE:

Q. Do you know if there's any connection of any kind between the XM official store and Norbase?

A. I don't know.

Q. Do you know if there's any connection of any kind between Ximei and Norbase?

A. I don't know.

Q. Do you know whether Ximei sells puzzle boards into the U.S. through any sales channel

besides Amazon?
A. I'm sorry. Please repeat that.
THE INTERPRETER: The interpreter can repeat.
THE WITNESS: I don't know.
BY MR. RICE:
Q. Do you know whether Ximei stopped selling the accused puzzle tables at some point while the lawsuit was pending?
A. I don't know.
Q. I'd like to talk about another one of the defendants. This one is -- I'll spell -- Q-I-N-G-Y-U-N-X-I-A-N G-E-S-I-W-E-I ShangMaoYouXiangGongSi.
MR. RICE: For the court -- yeah, for the court reporter, this is one of the defendant's names on the case caption.
BY MR. RICE:
Q. Okay. Do you recognize this company as one of the defendants in the lawsuit?
A. Is it one of the four defendants that I am representing today?
Q. Yes, it is one of the four defendants in the lawsuit and I believe you've been

designated to speak to all of those four defendants.

MR. RICE: I meant to say to speak for all of these defendants, not speak to the defendants. I don't know how it was translated, but I want to make that clear.

THE WITNESS: I understand. But I am not very familiar with these other companies. This company has a pretty long name.

BY MR. RICE:

Q. Is there a short version of the name that we can use today at the deposition so you will know what I'm talking about without me having to repeat the entire name?

A. QingYun, QingYun.

Q. QingYun?

THE INTERPRETER: QingYun.

MR. RICE: QingYun.

THE INTERPRETER: Uh-huh.

BY MR. RICE:

Q. Before this lawsuit, were you familiar with QingYun?

A. No.

Q. Are you -- do you know whether QingYun

sells puzzle tables on Amazon?
A. Yes.
Q. Do you know the name of the store that QingYun uses to sell puzzle tables?
A. No.
Q. Are you familiar with an Amazon store called G-E-S-I-W-E-I-S-H-A-N-G-M-A-O?
THE INTERPRETER: J-E-S-I-W-E-I --
MR. RICE: G. G-E-S-I.
THE INTERPRETER: G-E-S-I.
MR. RICE: W-E-I-S-H-A-N-G-M-A-O.
THE WITNESS: No.
BY MR. RICE:
Q. Are you familiar with an Amazon store called Pet Magic?
A. No.
Q. Excuse me. Are you familiar with an Amazon store called Woodlucky, W-O-O-D-L-U-C-K-Y?
A. No.
Q. Are you familiar with an Amazon store called K-U-A-I-Y-E-S-H-A-N-G-M-A-O?
THE INTERPRETER: A -- I'm sorry. A-U?
MR. RICE: The name, K as in kite, U-A-I --

THE INTERPRETER: Okay. Got it got it.
THE WITNESS: No.
BY MR. RICE:
Q. Do you know who manufactures the puzzle tables sold by QingYun?
A. No.
Q. Do you know who supplies puzzle tables to QingYun?
A. No.
Q. Do you know how many varieties or versions of puzzle table QingYun sells on Amazon?
A. No.
Q. Do you know whether QingYun sells puzzle tables into the United States through any channel besides Amazon?
A. No.
Q. Do you know anything about when QingYun began selling the accused products?
A. No.
Q. Do you know whether QingYun made any product changes at any time to the accused products?
A. I don't know.
Q. Are you familiar with any puzzle tables

is the last word.

THE WITNESS: No.

BY MR. RICE:

Q. You are not familiar with that company?

A. No, I'm not familiar.

Q. Do you know the names of the other three defendants in the litigation?

A. The defendant's company's name, I am familiar with the -- I know the defendant company's name, but I don't know the long formal word name of the company. I know the companies' names, but I'm not very familiar with them.

Q. Are you aware of a defendant in the lawsuit that may go by the name Shenzhen Mengdudu?

A. Yes.

Q. Okay. Were you familiar with Shenzhen Mengdudu before the litigation?

A. No.

Q. Currently, are you familiar with the puzzle table products sold by Mengdudu?

A. I only know there is puzzle tables.

Q. Okay. Are you aware of any changes that Shenzhen Mengdudu made to its puzzle tables?

A. No.

Q. Are you familiar with the Amazon stores in which Mengdudu sells the accused puzzle tables?
A. No.
Q. Do you know who manufactures the puzzle table products sold by Mengdudu?
A. No.
Q. Do you know Mengdudu's supplier for the accused puzzle table products?
A. No.
Q. Do you know Mengdudu's sales revenues for the accused puzzle tables?
A. No.
Q. Do you know the costs associated with the Mengdudu accused puzzle tables?
A. No.
Q. Have you ever reviewed any Mengdudu documents?
A. No.
Q. Have you ever spoken to any Mengdudu employees or owners?
A. No.
Q. Have you ever had any sort of communication with anyone that works for Mengdudu?
A. No.

Q. Do you know what brands Mengdudu sold the puzzle tables under?

A. No.

Q. Are you able to identify the Amazon ASINs corresponding to versions or variations of puzzle table products sold by Mengdudu?

A. I can't.

Q. Do you know whether Mengdudu has sold puzzle tables into the U.S. through any sales channel besides Amazon?

A. I don't know.

Q. I'm going to put up a document. I'm going to mark this next document Exhibit 5. It has a stamp on the right margin with a number PBH000142.

A. I haven't seen this document yet.

(Whereupon, Exhibit 5 was introduced into the record.)

BY MR. RICE:

Q. Okay. You're not familiar with this document?

A. I couldn't see this document on my computer.

Q. Oh.

THE INTERPRETER: Maybe the interpreter will ask for her to click on chat. Earlier, she can see the new documents shown on the web page, but this time, she's not able to see Exhibit 5 and she's going to reenter this web page and see if that will help.

MR. RICE: Okay.

THE WITNESS: Okay. I can see it now.

BY MR. RICE:

Q. Okay. Good. Have you seen this document before?

A. I haven't seen it before.

Q. Are you familiar with this document? Do you know what it is?

A. I'm not familiar with it.

Q. Can you tell from the document whether this is a document belonging to Mumuwan?

A. I can't because I do not understand this kind of design graph.

Q. Okay. Who at Mumuwan would be able to -- if this is a Mumuwan document, who would be able to recognize it?

A. The salesperson and our product designer.

Q. Okay. Do you see Chinese script in the bottom right corner of the exhibit?
THE INTERPRETER: She didn't hear it. I'm going to repeat.
MR. RICE: Okay.
THE WITNESS: Yes.
BY MR. RICE:
Q. Do any of those characters indicate to you which defendant is the source of this document?
A. I cannot be certain.
Q. Looking at the diagrams, are you able to determine whether they reflect the Mumuwan accused products?
A. I can't determine if it is Mumuwan's puzzle table, but I can see there are words like puzzle table.
Q. So you can't tell which of the defendants may have provided this document, is that right?
A. Correct.
Q. Did you speak with anyone from Mumuwan's finance department to prepare for the deposition today?

A. No.

Q. Did you review any Mumuwan finance documents in preparation for your deposition today?

A. Not a specific document.

Q. What do you mean when you say "not a specific document"?

A. You asked about a specific financial document. I did not. I did not review.

Q. Did you review any sort of financial documents belonging to Mumuwan to prepare for today's deposition?

A. No. Some basic information I know, but I didn't review any documents on paper.

Q. Okay. When Mumuwan calculates its profits for the accused products, what type of costs does it subtract from gross revenue to identify product -- to identify profits?

A. I do not know the specifics, but generally the costs include transportation costs, advertising costs, purchasing prices, and warehouse storage fees.

Q. Do you know how much Mumuwan pays for transportation costs for the accused products?

A. I don't know the detailed information.
Q. Is -- do you have the same answer for the advertising costs, the purchasing costs, and the warehousing costs?
A. Yes, I cannot tell the specific amounts.
Q. Who would be able to address the specific amounts?
A. The salesperson. The finance -- the finance person should know the best.
Q. Are you familiar with the seller central portal on Amazon for the Mumuwan and Woodever Direct store?
A. Seller central portal. What does that mean?
Q. If you want to know how many products, how many accused products Mumuwan sold on Amazon, do you know how to get that information from the Amazon web page?
A. I do not know the detailed web address because I do not have to go to that place to view.
Q. Is there another place where you go to view that information?
A. If I want to view this information, the

Q. Is there any sort of connection between the defendant companies in terms of coordinating any of their sales activities?
A. I don't know about that.
Q. Would someone else at Mumuwan know about that?
A. I don't know whether they know about that or not.
Q. Is that the sort of information you would expect to know about as the general manager of the company?
A. I do general management. I haven't dived deeper into sales.
Q. Okay. Who owns Mumuwan?
A. Mumuwan belongs to our whole team.
Q. Does the whole team own Mumuwan in equal shares?
A. Everyone participates in decision-making. They have their different duties.
Q. Who is the financial owner of Mumuwan?
A. Financial owner? What do you mean by that?
Q. Does somebody own the company?

A. Me. I own shares.
Q. Do you own all the shares of the company?
A. Yes.
Q. Do you know who owns the other defendant companies?
A. I don't know about that. I don't.
Q. Do you know an individual named Baojing Wang spelled B-A-O-J-I-N-G, Wang, W-A-N-G?
A. No.
Q. Do you know an individual named Q-I-N, new word L-I-U?
A. No.
Q. Do you know an individual named Y-U-C-A-I, second name L-I-A-O?
A. No.
Q. Would you be able to describe in detail the changes that Mumuwan made to the accused products since February 11, 2025?
A. The product design division was responsible for that based on the needs that was learned from the sales. I cannot give detailed description.
Q. Okay. I am going to read a list of