# Exhibit S

# *Hunter v. WirelessPCS Chi. LLC*

United States District Court for the Northern District of Illinois, Eastern Division

October 5, 2021, Decided; October 5, 2021, Filed

No. 18 CV 980

**Reporter**
2021 U.S. Dist. LEXIS 195714 *; 2021 WL 4621889

DATISHA HUNTER, et al., Plaintiffs, v. WIRELESSPCS CHICAGO LLC, et al., Defendants.

**Subsequent History:** Motion granted by *Hunter v. Wirelesspcs Chi., LLC, 2022 U.S. Dist. LEXIS 241983, 2022 WL 19766905 (N.D. Ill., Mar. 17, 2022)*

Class certification granted by, in part, Class certification denied by, in part *Hunter v. WirelessPCS Chi. LLC, 2022 U.S. Dist. LEXIS 52011, 2022 WL 864533 (N.D. Ill., Mar. 23, 2022)*

Motion granted by, in part, Motion denied by, in part *Hunter v. Wirelesspcs Chi., LLC, 2022 U.S. Dist. LEXIS 241943 (N.D. Ill., May 2, 2022)*

Costs and fees proceeding at, Motion granted by *Hunter v. Wirelesspcs Chi., LLC, 2022 U.S. Dist. LEXIS 241944 (N.D. Ill., Aug. 5, 2022)*

**Counsel: [*1]** For Datisha Hunter, ast the collective representatives under Fair Labor Standards act in a collective action, and as class representatives for plaintiff's State and Local law claims, Latricia Hunter, ast the collective representatives under Fair Labor Standards act in a collective action, and as class representatives for plaintiff's State and Local law claims, Plaintiffs: Bradley Steven Levison, LEAD ATTORNEY, Choate Herschman Levison, LLC, Chicago, IL; Antoinette Choate, Choate Law, Chicago, IL.

For Wilfredo Rivera, ast the collective representatives under Fair Labor Standards act in a collective action, and as class representatives for plaintiff's State and Local law claims, Plaintiff: Antoinette Choate, Choate Law, Chicago, IL; Bradley Steven Levison, Choate Herschman Levison, LLC, Chicago, IL.

For Wirelesspcs Chicago LLC, Defendant: Aaron Benjamin Maduff, LEAD ATTORNEY, Daniel Gajda, Maduff & Maduff, LLC, Chicago, IL.

For Sky Net Wireless IL LLC, Saed Hasan Khalil, individually, Moeen Hasan Khalil, individually, Defendants: Aaron Benjamin Maduff, Daniel Gajda, LEAD ATTORNEYS, Maduff & Maduff, LLC, Chicago, IL.

For Hamad Brothers, Inc., Mohammed Ghaben, individually, Defendants: Mohammad **[*2]** Aynab Owaynat, LEAD ATTORNEY, Owaynat Law Offices, Chicago, IL.

**Judges:** BETH W. JANTZ, United States Magistrate Judge.

**Opinion by:** BETH W. JANTZ

## Opinion

**ORDER**

For the reasons set out below, (1) Plaintiffs' motion for a protective order as to Datisha Hunter and Wilfredo Rivera's Depositions [239] is granted in part and denied in part, (2) Defendant Moeen Hasan Khalil and Saed Khalil's motion for a protective order as to their depositions [229] is denied, and (3) Plaintiffs' motion to compel and for sanctions directed to Defendants WirelessPCS Chicago LLC and SkyNet Wireless IL LLC [238] is granted in part and denied in part. Further deadlines and details are included throughout and at the end of this order. A status hearing is set for 12/16/21 at 10:45 a.m.

**BACKGROUND**

Before the Court are cross motions for protective orders following the depositions of two of the named plaintiffs, Datisha Hunter and Wilfredo Rivera, and two of the individual defendants, Moeen Hasan Khalil and Saed Hasan Khalil. [Dkt. 239, Pls.' Prot. Order Mot.; dkt. 229, Defs.' Prot. Order Mot.] Also before the Court is Plaintiffs' motion to compel the further *Rule 30(b)(6)* depositions of Defendants WirelessPCS Chicago LLC and SkyNet Wireless IL LLC (the "Wireless **[*3]**

Defendants") and for sanctions. [Dkt. 238, Pls.' Mot. to Compel.] The Khalils' depositions were taken in late May 2021, Ms. Hunter and Mr. Rivera's depositions were taken in late June 2021, and the Wireless Defendants' depositions were taken in June and July 2021. Numerous disagreements between counsel erupted during each of the depositions, resulting in at least one call/email to the Court during Moeen Khalil's deposition, and with both Defendants' counsel and Plaintiffs' counsel suspending questioning multiple times during several of the depositions. Following unsuccessful efforts to meet and confer, Defendants moved for a protective order blocking certain questions asked of the Khalils. [Defs' Prot. Order Mot.] Plaintiffs thereafter withdrew certain of those questions, leaving at issue eight questions to Moeen Khalil and three questions to Saed Khalil. [Dkt. 233, Pls.' Resp. Defs.' Prot. Order Mot.]

Shortly thereafter, Defendants also moved for leave to file a motion to reopen Ms. Hunter and Mr. Rivera's depositions as unopposed, asserting that Plaintiffs had waived any opposition by virtue of delaying Defendants' proposed meeting to confer on the questions that had been suspended **[*4]** during their depositions. [*See* dkt. 231, Defs.' Mot.] This Court denied Defendants' motion for failure to meet and confer in accordance with N.D. Ill. Local Rule 37.2 as well as prior orders in this case, and directed the parties to attempt to resolve their dispute about the questions suspended during Plaintiffs' depositions on their own. [*See* dkt. 234, July 19, 2021 Minute Entry.] The parties were unable to resolve their disagreements as to Ms. Hunter and Mr. Rivera's depositions, and Plaintiffs' motion for a protective order followed. [Pls.' Prot. Order Mot.] Similarly, the parties met and conferred in late July on the Rule 30(b)(6) depositions, but because they were unable to resolve their differences, Plaintiffs' motion to compel and for sanctions followed. [Pls.' Mot. to Compel at 2.] The Court addresses each motion in turn.

**DISCUSSION**

***Protective Order Motions - General Principles***

"Most depositions are taken without judicial supervision." *Redwood v. Dobson, 476 F.3d 462, 467 (7th Cir. 2007)*. "Witnesses often want to avoid giving answers, and questioning may probe sensitive or emotionally fraught subjects, so unless counsel maintain professional detachment decorum can break down." *Id.* "It is precisely when animosity runs high that playing by the rules is vital. Rules of **[*5]** legal procedure are designed to defuse, or at least channel into set forms, the heated feelings that accompany much litigation." *Id. at 469*. "In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." Advisory Co. Notes to 1993 Amendments to *Rule 30(d)(3)*.

Under *Federal Rule of Civil Procedure 30*, objections to deposition questions are to be stated "concisely in a nonargumentative manner and nonsuggestive manner," and questioning is nevertheless to proceed unless the deponent is instructed not to answer as necessary "to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under *Rule 30(d)(3)*." *Fed. R. Civ. P. 30(c)(2)*, *(3)*; *see Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 902 (7th Cir. 1981)* ("[A]bsent a claim of privilege, it is improper for counsel at a deposition to instruct a client not to answer." (Internal quotation omitted.)). *Rule 30(d)(3)* provides that at any time during a deposition, a party may move to terminate or limit it "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Fed. R. Civ. P. 30(d)(3)(A)*. On such a motion, "The court may order that the deposition be terminated or may limit its scope and manner as provided in *Rule 26(c)*." *Fed. R. Civ. P. 30(d)(3)(B)*. The party seeking a protective order **[*6]** has the burden of showing good cause for an order to issue. *See Fed. R. Civ. P. 26(b)(2)(C)*; *Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981)* (party seeking the protective order has the burden of showing good cause for the entry of an order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.").

***Defendants' Protective Order Motion - Moeen Hasan Khalil and Saed Khalil***

According to Defendants, a protective order should issue shielding Moeen Hasan Khalil and Saed Khalil from certain deposition questions Defendants say were oppressive.[1] [Defs.' Prot. Order Mot. at 2-4.]

[1] The Court declines the parties' invitation to rule on questions or objections that have been withdrawn (such as the question

Specifically, Defendants argue that Plaintiffs asked numerous irrelevant questions about the Khalils' current and historic businesses and sources of income which are not relevant to any legitimate purpose and are invasive of the Khalils' privacy. As Defendants see things, both Khalils are named defendants in this action solely because of their purported ownership interest in WirelessPCS Chicago LLC and/or SkyNet Wireless IL LLC, and because Plaintiffs have failed to articulate any relevance of the suspended questions, they are oppressive to the Khalils. [*Id.* at 7.] Plaintiffs argue in opposition that each question properly sought **[*7]** to explore the Khalils' investments and income because such topics may lead to the discovery of additional theories of personal liability such as piercing the corporate veil. [Dkt. 233, Pls.' Resp. Defs.' Prot. Order Mot. at 2.] Plaintiffs support their position with citations both to written discovery responses and deposition testimony they say put comingling of assets and the corporate veil theory squarely at issue. [*Id.*]

Given the circumstances presented, Defendants have not demonstrated good cause for a protective order to issue. First, to show good cause, Defendants must submit "a particular and specific demonstration of fact." *Flores v. Bd. of Trustees of Comm. College Dist. No. 508, No. 14 C 7905, 2015 U.S. Dist. LEXIS 156371, 2015 WL 7293510, at *3 (N.D. Ill. Nov. 19, 2015)* (quoting *Gulf Oil, 452 U.S. at 102 n.16*); *In re Watts Coordinated Pretrial Proc., No. 19 C 1717, 2020 U.S. Dist. LEXIS 237436, 2020 WL 7398789, at *3 (N.D. Ill. Dec. 17, 2020)* (same). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning are insufficient." *Flores, 2015 U.S. Dist. LEXIS 156371, 2015 WL 7293510 at *3*. Here, Defendants argue generally that questions about the Khalils' finances and assets are irrelevant, upsetting, and therefore oppressive.

Even if Defendants were correct that questions regarding the Khalils' businesses and investments were *irrelevant*, that alone would not render the questions *oppressive* or otherwise provide a proper basis for Defendants to have suspended questioning. *See Fed. R. Civ. P. 30 (c)(2)*, *(d)(3)*. This case is not like Defendants' **[*8]** cited authorities, *Dent v. U.S. Tennis Assn., No. CV-08-1533, 2010 U.S. Dist. LEXIS 31052, 2010 WL 1286391, *1 (E.D.N.Y. March 30, 2010)* and *Finch v. City of Indianapolis, No. 08-CV-0432, 2011 U.S. Dist. LEXIS 67577, 2011 WL 2516242 (S.D. Ind. June 23, 2011)*, in which the courts barred premature deposition questions about a defendant's net worth. In *Finch*, the court determined that the individual defendant's personal net worth was relevant to the claim for punitive damages, but that the potentially dispositive issue of qualified immunity should be resolved first, *2011 U.S. Dist. LEXIS 67577, 2011 WL 2516242, at *3-4*, whereas in *Dent*, the court explained that the defendant's net worth would only become relevant upon a finding that punitive damages should be awarded. *Dent, 2010 U.S. Dist. LEXIS 31052, 2010 WL 1286391, at *1*.

To the contrary here, it is not the case that the suspended questions are only potentially relevant upon a determination of liability or some other threshold determination. Plaintiffs were not only prevented from questioning the Khalils as to their personal wealth, but also as to issues relevant to the theory of piercing the corporate veil [Defs' Prot. Order Mot. at 3-4, No. 10, 14, 17.] Exploration of the relationship and payment arrangements between the Khalils, WirelessPCS Chicago LLC, and SkyNet Wireless IL LLC, and ACO Wireless LLC, the management company through which Saed Khalil testified he, Moen Khalil, and certain other executives were paid, is relevant or may lead to relevant information regarding whether **[*9]** those entities maintained their separate corporate identities, or whether Plaintiffs may pierce the corporate veil. Although such issues may be addressed in post-judgment collection proceedings as Defendants observe, they also may be addressed as a means of imposing personal liability for Plaintiffs' claims. *See, e.g.*, *Mobimeds, Inc. v. E-MedRx Sols., Inc., No. 19-CV-3224, 2021 U.S. Dist. LEXIS 142569, 2021 WL 3264408, at *3-4 (C.D. Ill. July 30, 2021)* (rejecting argument that discovery related to piercing the corporate veil is only a post-judgment matter); *Fontana v. TLD Builders, Inc., 362 Ill. App. 3d 491, 840 N.E.2d 767, 776, 298 Ill. Dec. 654 (Ill. App. Ct. 2005)* ("The doctrine of piercing the corporate veil is an equitable remedy; it is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract." (Internal quotations omitted)).

---

of whether Moeen Hasan Khalil also goes by the name Mike and certain questions regarding his wife) and focuses herein only on the questions that remain in dispute following the parties' briefing. Specifically, although the parties argue about other things, the Court only addresses those questions quoted on pages 2-4 of Defendants' motion that are not subsequently mooted by Plaintiffs' withdrawals. [*See* Defs.' Prot. Order Mot. at 2-4, Pls.' Resp. Defs.' Prot. Order Mot. at 3-4.]

As the Court observed in *Dent*, "[t]ypically, relevance concerns are not a basis for limiting questioning at a deposition," *2010 U.S. Dist. LEXIS 31052, 2010 WL 1286391, at *1*, and Defendants have not demonstrated that it is a basis for doing so here. Accordingly, the motion is denied.

***Plaintiffs' Protective Order Motion - Hunter and Rivera* [239]**

According to Plaintiffs, a protective order should issue shielding Ms. Hunter and Mr. Rivera from deposition questions they assert were (1) improper impeachment, (2) argumentative, harassing, or badgering, (3) based on unmarked **[*10]** documents possibly not produced in discovery, and (4) designed to elicit information that is protected by the attorney-client privilege. [Pls.' Prot. Order Mot. at 2.] Defendants argue in opposition that Plaintiffs waited too long to bring their motion, and that they failed to meet and confer prior to its filing. [Dkt. 243, Defs.' Resp. Pls.' Prot. Order Mot.] The record recited by Defendants, however, satisfies the Court that the parties engaged in numerous and sufficient conversations concerning the disputed deposition questioning. [*See id.* at 4-5.]

Plaintiffs first assert that Defendants have waived their right to seek to reopen the depositions by having previously failed to comply with Local Rule 37.2. [Pls.' Prot. Order Mot. at 1.] That assertion is a nonstarter. Plaintiffs present no authority to suggest that Defendants' previous failure to meet and confer waives their substantive position, and such an assertion misunderstands the nature of the obligation to meet and confer. The very point of the requirement is "to curtail undue delay and expense in the administration of justice" by encouraging parties to resolve disputes on their own. *N.D. ILL. LOC. R. 37.2*. This Court's denial of Defendants' earlier motion for **[*11]** a failure to meet and confer [July 19, 2021 Minute Entry] simply allowed for that possibility.

Defendants also complain about Plaintiffs' compliance with procedure. Specifically, Defendants argue that Plaintiffs waived their objections to the deposition questions by waiting too long to bring their motion. Notably, although Plaintiffs' motion was brought several weeks after Ms. Hunter and Mr. Rivera's depositions, the record reflects extensive back and forth between counsel for the parties during that time, and the Court is therefore unpersuaded given the circumstances that Plaintiffs' delay results in waiver. To be clear, the Court agrees with Defendants that once Plaintiffs' counsel suspended the questions, it was incumbent upon Plaintiffs to promptly move for a protective order. [*See* Defs.' Resp. Pls.' Prot. Order Mot. at 3.] Unlike in Defendants' authorities, however, the record here demonstrates that it was unclear for several weeks whether the parties were going to resolve the matter without court intervention. Indeed, as of July 9, 2021, Defendants reported that they were unsure whether they even wanted to reopen the depositions [*see* dkt. 228 at 8], and on July 19, 2021, good **[*12]** faith efforts to meet and confer on the issue had not yet concluded [*see* July 19, 2021 Minute Entry]. Accordingly, the Court does not find Plaintiffs' July 30, 2021 motion untimely, and instead turns to its substance.

*Impeachment*

First, Plaintiffs assert that deposition questions were suspended to prevent Defendants' counsel from asking "improper impeachment questions." [Pls.' Prot. Order Mot. at 2.] Specifically, Plaintiffs assert that questions regarding Ms. Hunter's arrest history or Mr. Rivera's expunged conviction are off limits, citing *FED. R. EVID. 403* and *609*, and *Barber v. City of Chicago, 725 F.3d 702, 709 (7th Cir. 2013)*. [*Id.*] As Defendants correctly note, however, these authorities address admissibility of evidence at trial, not the scope of questioning during a deposition. [Defs.' Resp. Pls.' Prot. Order Mot. at 8-10.] Further, *Federal Rule of Civil Procedure 26(b)* explicitly provides that information within the scope of discovery "need not be admissible in evidence to be discoverable." Whether such information is ultimately admissible at trial is a matter for another day. For now, Defendants may obtain answers to their questions. *See Fed. R. Civ. P. 26(b)(1)* (scope of discovery); *Fed. R. Civ. P 30(c)(2)* (objections are to be "noted on the record, but the examination still proceeds"). Accordingly, Plaintiffs' protective order motion **[*13]** as to questions of this category is denied.[2]

[2] The motion is denied as moot as to the question regarding whether Ms. Hunter has ever been arrested. Ms. Hunter answered the question before her attorney objected [D. Hunter Dep. 7:22- 8:20], and Defendants assert in their response that they intended to withdraw the question anyway. [*See* Defs.' Resp. Pls.' Prot. Order Mot. at 9.]

*Argumentative, Harassing, and Badgering Questions*

Plaintiffs next assert that counsel for Defendants was argumentative and asked harassing or otherwise badgering questions during the depositions. [Pls.' Prot. Order Mot. at 3-6.] The cited deposition portions, however, do not support Plaintiffs' claims. [*Id.* and Exs.] Defendants' counsel's attempt to ask clarifying follow-up questions (*e.g.*, Pls.' Prot. Order Mot., Ex. 1, Rivera Dep. at 59:06-62:13, 114:08-118:16; *id.* at Ex. 2, D. Hunter Dep. 35:15-38:24), for example, or to ask questions regarding a topic that the deponent would prefer not to address (*e.g.*, D. Hunter Dep. 15:22-16:19) does not equate to harassment or badgering. *See, e.g., Redwood, 476 F.3d at 467*. Although the transcripts obviously do not convey such factors as counsel's tone or volume, (and Plaintiffs have not complained of those things in their motion), the cited portions largely reflect Defendants' proper attempts to question Ms. Hunter and Mr. Rivera about legitimate areas of inquiry, and either *Plaintiffs'* counsel's inappropriate speaking objections and interference with fairly routine questions, or the witness' failures to answer. [*See, e.g..* ***[*14]*** , Rivera Dep. at 268:06-270:19; D. Hunter Dep. at 51:12-53:01, 106:15-109:23.] Because Plaintiffs have not shown good cause for a protective order to issue as to this category of questions, Plaintiffs' protective order motion as to this category is denied.

*Documents Possibly Not Produced in Discovery*

Plaintiffs further assert that a protective order is necessary as to questions suspended during Ms. Hunter's deposition because they concerned documents that were not Bates-labeled to show they had previously been produced in discovery. [Pls.' Prot. Order Mot. at 7.] Defendants argue in opposition that labeled documents were "simply unavailable at that moment," and they identify in their submission when those documents were purportedly produced in discovery. [Defs.' Resp. Pls.' Prot. Order Mot. at 13.] Given the contentious nature of discovery in this case, labeled documents reflecting a prior production surely would have been preferable. Plaintiff presents no authority, however, for the notion that the use of unlabeled documents during a deposition is so egregious that a protective order should issue. *Rule 30* provides that a deposition may be terminated or limited to seek a protective order "on **[*15]** the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Fed. R. Civ. P. 30(d)(3)*. Plaintiffs' arguments do not meet that standard. Accordingly, Plaintiffs' motion is denied as to this category of questioning.

*Attorney-Client Privilege*

Finally, Plaintiffs assert that a protective order should issue protecting them from being made to answer certain questions that they assert were designed to invade matters protected by the attorney-client privilege. [Pls.' Prot. Order Mot. at 7.] Defendants assert in opposition that their questions were proper because although they may have referenced communications with counsel, they did not seek the substance of any privileged information. The complained of questions fall into three categories: (1) questions about when Plaintiffs' counsel were retained, (2) questions regarding the substance of conversations with counsel during deposition breaks, and (3) questions about the decision to dismiss another defendant in this case, Mohammed Ghaben.

As Defendants correctly observe, not every fact related to communications with an attorney is privileged. Instead, "[t]he attorney-client privilege protects **[*16]** communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100, 600 F.3d 612, 618 (7th Cir. 2010)*. Plaintiffs present no sufficient argument as to how the attorney-client privilege shields the date on which they retained counsel. Similarly, Plaintiffs do not explain why they think communications they had with counsel during deposition breaks would necessarily be privileged. "The fact-finding purpose of a deposition requires testimony from the witness, not from counsel, and without suggestions from counsel. Coaching and private conferences (on issues other than privilege) that would be inappropriate during trial testimony are not excused during a deposition merely because the judge is not in the room." *Hunt v. DaVita, Inc., 680 F.3d 775, 780 (7th Cir. 2012)*; *see also Fed. R. Civ. P. 30(c)(1)*. "During a civil trial, a witness and his lawyer are not permitted to confer at their pleasure during the witness's testimony. The same is true at a deposition." *Plaisted v. Geisinger Med. Ctr., 210 F.R.D. 527, 535 (M.D. Pa. 2002)* (internal quotations omitted). Accordingly, "any such conference is not covered by the attorney-client privilege and the deposing attorney is therefore entitled to inquire about the content thereof." *Id.* Because Plaintiffs have made no argument that their

conversations **[*17]** with counsel during deposition breaks addressed whether to assert a privilege, Plaintiffs must answer Defendants' questions about them.

Finally, Plaintiffs assert that questions about their decision to dismiss Mr. Ghaben from the case seek to discover Plaintiffs' legal strategy. [Pls.' Prot. Order Mot. at 7; D. Hunter Dep. at 171:06-174:03; Rivera Dep. at 234:19-237:07.] According to Defendants, however, they do not seek privileged information because they do not seek to explore why Plaintiffs' counsel chose to dismiss Mr. Ghaben, but only whether Plaintiffs themselves agreed with the determination. [Defs.' Resp. at 14-15.] Questions regarding Plaintiffs' decisions in this case, however, are inextricably linked with their counsel's legal opinions and strategy, and as such are properly shielded from discovery, *see* *Sandra T.E., 600 F.3d at 618*. Accordingly, the motion is granted as to questions about Mr. Ghaben's dismissal from the case.

***Plaintiffs' Motion to Compel & for Sanctions [238]***

Finally, Plaintiffs move to compel the Wireless Defendants to appear for further *Rule 30(b)(6)* depositions and for sanctions including barring certain evidence and assessing fees and costs against the Wireless Defendants for their failure to produce **[*18]** knowledgeable corporate deponents. [Pls.' Mot. to Compel.] According to Plaintiffs, the deponents presented by the Wireless Defendants were not prepared to address the topics for which they were designated, and as a result, Plaintiffs have been prevented from obtaining discovery on core issues. [*Id.* at 4-15.] The Wireless Defendants argue in opposition that the motion should be denied both for failure to meet and confer and because their corporate designees provided adequate *Rule 30(b)(6)* testimony on the topics about which Plaintiffs complain. [Dkt. 250, Defs.' Resp. Pls' Mot. to Compel.] According to the Wireless Defendants, their designees were unable to provide testimony when Plaintiffs' questioning strayed to matters beyond their designations. [*Id.* at 5-14.] A review of the record makes clear, however, that Plaintiffs have the prevailing arguments on these issues.

First, notwithstanding Plaintiffs' cursory description of the parties' efforts, the record reflects that the parties adequately met and conferred in efforts to reach an accord as to the adequacy of the Wireless Defendants' testimony. [*See* Pls.' Mot. to Compel at 2 and n.1; Defs.' Resp. Pls.' Mot. to Compel, Grp. Ex. E.] Although Defendants **[*19]** assert that Plaintiffs' complaints regarding the depositions were too general to be meaningful, they were necessarily so given the deficiencies that Plaintiffs had identified. [*See id.*] Specifically, Plaintiffs complained that the Wireless Defendants were unprepared to provide corporate testimony on entire *Rule 30(b)(6)* topics, not just certain specific questions. [*See id.*] Nevertheless, and upon the Wireless Defendants' insistence, Plaintiffs additionally provided the Wireless Defendants with specific page and line citations of asserted examples of instances where the corporate designees lacked the knowledge to testify. [*See* Defs.' Resp. Pls.' Mot. to Compel, Grp. Ex. E.] Nothing further was required to enable them to evaluate and respond to Plaintiffs' position. Accordingly, Plaintiffs sufficiently complied with their pre-filing obligations under Local Rule 37.2, and the Court evaluates the motion for its substance.

*Rule 30(b)(6) Depositions - General Principles*

*Federal Rule of Civil Procedure 30(b)(6)* provides a mechanism for obtaining deposition testimony from corporate entities. Specifically, the rule provides that in response to a deposition notice that describes "with reasonable particularity the matters for examination[,]" an organization must "designate **[*20]** one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *FED R. CIV. P. 30(b)(6)*. The responding organization must prepare the designated person to "testify about information known or reasonably available to the organization." *Id.*

The effect of *Rule 30(b)(6)* is "to place upon the business entity the burden of identifying witnesses who have knowledge responsive to subjects requested in the *Rule 30(b)(6)* requests[.]" *Smithkline Beecham Corp. v. Apotex Corp., No. 98 C 3952, 2000 U.S. Dist. LEXIS 667, 2000 WL 116082, at *8 (N.D. Ill. Jan. 24, 2000)*. *Rule 30(b)(6)* is also designed to prevent business entities from "bandying," the practice of presenting employees for their deposition who disclaim knowledge of facts known by other individuals within the entity. *See id.*; *Fed. Deposit Ins., Corp. v. Giancola, No. 13 C 3230, 2015 U.S. Dist. LEXIS 125229, 2015 WL 5559804, at *2 (N.D. Ill. Sept. 18, 2015)* (same). "By its very nature, a *Rule 30(b)(6)* deposition notice requires the responding party to prepare a designated representative so that he

or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." Alliance for Global Justice v. District of Columbia, 437 F. Supp. 2d 32, 37 (D.D.C. 2006).

*Deposition Topics*

Plaintiffs identify seven topics as to which they assert the Wireless Deponents' designees were unprepared to testify: Topic No. 8, regarding Defendants' policies, procedures, and/or practices **[*21]** regarding deductions from wages for franchise location employees; No. 23, regarding Defendants' WhatsApp group; Nos. 26-28 regarding Defendants' relationships with ACO Wireless LLC, Sky Net Wireless LLC, and Hamad Brothers, Inc., respectively; No. 29, regarding the Wireless Defendants' relationship with MetroPCS, Michigan, LLC; and No. 30, regarding the Wireless Defendants' relationship with each other.[3] [Pls.' Mot. to Compel at 8-15.]

Despite Plaintiffs' repeated requests, the Wireless Defendants did not identify their designees until the day before the corporate depositions began, and even then, expressed some indecision about the designations, which indeed were later changed. [*See* Pls.' Mot. to Compel at Ex. 7, and *infra*.] The Wireless Defendants designated Bassam Kattoura to address their relationships with ACO Wireless, LLC, Sky Net Wireless, LLC, and Hamad Brothers, LLC (Nos. 26-28), as well as their relationship with each other (No. 30). [Defs.' Resp. at 1, 12-14.[4] ] Mr. Kattoura was unprepared for the deposition, however. He testified that he had not reviewed any document or otherwise taken any action to prepare for the deposition, and indeed that he had only been **[*22]** informed of the deposition the day before it took place. [Pls.' Mot. to Compel, Ex. 1, Kattoura Rule 30(b)(6) Dep. at 25:05-26:20, 44:13-45:07.] Moreover, Mr. Kattoura did not even know the topics for which he had been designated. [*Id.* at 18-20.] He testified that he was the external accountant for Moeen Khalil and Saed Khalil and certain of their businesses and that his knowledge was limited to that which he obtained in the course of his work. [*See, e.g., id.* at 27:02-29:16, 32:04-10, 59:17-60:19, 85:23-87:06.] Specifically, he testified that his understanding of the relationship between the various entities was limited to the information necessary to prepare their tax returns, and that he had no information regarding the respective entities' business operations. [*Id.* at 51:01-06, 54:07-13, 57-16-19, 59:17-60:19, 62:01-07, 67:10-17, 85:23-87:06.] Further exacerbating the situation, when Mr. Kattoura offered to review documents to which he had access in efforts to try to provide substantive responses, counsel for the Wireless Defendants discouraged him from doing so. [*Id.* at 26:08-13, 29:25-30:20.]

Nevertheless, Defendants assert that his testimony was sufficient, and the limits of his **[*23]** knowledge were non-problematic because there is "no relationship between the companies other than the fact that they have the same ownership." [Defs.' Resp. Pls.' Mot. to Compel at 2, 9-11.] The assertion of counsel, however, does not make it so, and contrary to the Wireless Defendants' argument, the fact that Mr. Kattoura was unable to answer Plaintiffs' questions does not make them unanswerable. At the outset, it is highly suspect that a corporate witness notified the day before a deposition on numerous topics could have been properly prepared to testify. *See, e.g.,* Bierk v. Tango Mobile, LLC, No. 19 C 5167, 2021 U.S. Dist. LEXIS 33440, 2021 WL 698479, at *2 (N.D. Ill. Feb. 23, 2021) ("A witness could not be selected and then properly prepared to testify on a number of topics in just a couple of days"); Medline Indus., Inc. v. Wypetech, LLC, No. 20 CV 4424, 2020 U.S. Dist. LEXIS 201694, 2020 WL 6343089, at *4-5 (N.D. Ill. Oct. 29, 2020) ("An attorney's duty to prepare corporate representatives for a Rule

[3] Plaintiffs attach the operative Rule 30(b)(6) Deposition Notices to SkyNet Wireless IL, LLC and WirelessPCS Chicago LLC, to their motion. [*See* Pls.' Mot. to Compel; *Id.* at Exs. 8, 9.] The topics at issue are substantively the same in each notice but their numbering is not, and neither Plaintiffs nor Defendants specified to which notice they referred in their briefs. For clarity and simplicity, this Court utilizes the numbering identified in the Notice to SkyNet Wireless IL LLC. [*See id.* at Ex. 8.]

[4] Notably, the Wireless Defendants state in their brief that they designated Juan Monroy to testify on this issue, but this appears to be in error since it conflicts with their counsel's initial designation [*see* Pls.' Mot. to Compel at Ex. 7], was not among the topics their counsel identified he would address during his deposition [*see* Pls.' Mot. to Compel at Ex. 4, J. Monroy Rule 30(b)(6) Dep. at 5:21-6:12], and was among the topics their counsel identified Mr. Kattoura would address [*see* Kattoura Rule 30(b)(6) Dep. at 5:07-14]. Additionally, the Wireless Defendants make no argument that Mr. Monroy provided sufficient testimony on the issue, but rather only that Mr. Kattoura did. [*See* Defs.' Resp. Pls.' Mot. to Compel at 12-13.]

30(b)(6) deposition (or to prepare any witness for a deposition for that matter) takes place before the deposition begins."); *Aldridge v. Lake Cty. Sheriff's Office, No. 11 C 3041, 2012 U.S. Dist. LEXIS 102514, 2012 WL 3023340, at *4 (N.D. Ill. July 24, 2012)* (noting corporation is obligated under *Rule 30(b)(6)* to prepare designees so they can answer deposition questions fully, completely, and unevasively). And here, it is more than suspicion, since Mr. Kattoura expressly testified that he had done nothing to prepare to give corporate testimony. [*See* Kattoura *Rule 30(b)(6)* Dep. at 25:05-26:20, 44:13-45:07.] **[*24]**

Moreover, contrary to the Wireless Defendants' assertion, testimony on these topics of individual witnesses in their personal capacity does not eliminate the Wireless Defendants' obligation to provide corporate testimony. "[C]ourts have rejected the argument that a *Rule 30(b)(6)* deposition is unnecessary or cumulative simply because individual deponents—usually former or current employees of the entity whose *Rule 30(b)(6)* deposition is sought—have already testified about the topics noticed in the *Rule 30(b)(6)* deposition notice." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer, 285 F.R.D. 481, 487 (N.D. Cal. 2012)*; *see also* *Sabre v. First Dominion Capital, LLC, No. 01-0214, 2001 U.S. Dist. LEXIS 20637, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001)* ("A deposition pursuant to *Rule 30(b)(6)* is substantially different from a witness's deposition as an individual. A *30(b)(6)* witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity."). Plaintiffs are entitled to explore the Wireless Defendants' relationships, if any, with each other (No. 30), as well as with Aco Wireless, LLC (No. 26), Sky Net Wireless, LLC (No. 27), and Hamad Brothers, Inc. (No. 28), by deposing a corporate representative. Mr. Kattoura repeatedly testified that he was not privy to any information regarding the entities' operational relationships (if any). **[*25]** [Kattoura *Rule 30(b)(6)* Dep. at 60:04-19.] To the contrary, his knowledge was limited to that which he recalled in the course of preparing separate tax returns for certain entities. [*Id.* at 49:18-51:24, 54:07-13, 57:16-19.] Accordingly, the Wireless Defendants failed to sufficiently respond to the *Rule 30(b)(6)* Notice on these issues and Plaintiffs may re-depose a properly educated designee for the Wireless Defendants as to Topic Nos. 26-28, and 30.

Similarly, the Wireless Defendants' designee to address Topic No. 23, their "'Whatsapp' group, including its creation, purpose, use, cessation, deletion, members, and content of communications," was also unprepared to provide corporate testimony. Although the Wireless Defendants designated Fatin Ittayem to respond to this topic as well as several others, Ms. Ittayem testified that she did not review any records nor speak with anyone in preparation for the deposition. [Pls.' Mot. to Compel at Ex. 2, Ittayem June17, 2021 *Rule 30(b)(6)* Dep. at 31:17-22, 51:25-52:02.] She was unable to answer basic questions about the Whatsapp group, including who created it or when, who was its administrator, who were its members, when was it closed, and whether there was a way to preserve and/or **[*26]** retrieve the Whatsapp messages thereafter. [*See id.* at 52:13-52:18, 58:05-59:20.] The Wireless Defendants do not contest the limits of Ms. Ittayem's testimony but instead assert that it was sufficient because she explained that the chat group was simply used as a motivational tool and salesperson communication device. [*See* Defs.' Resp. Pls.' Mot. to Compel. at 3-4, 8-9.] As the Wireless Defendants see things, therefore, who managed the chat group, closed it, and deleted it is irrelevant because Plaintiffs' "only point is that at one time there were complaints about Hamad Brothers not paying their wages." [*Id.* at 9.] Moreover, the Wireless Defendants say, Plaintiffs' focus on the Whatsapp group is a red herring since Ms. Ittayem testified that when the chat group was closed, its content simply disappeared. [*Id.* at 3.]

Here too, Defendants' arguments are mistaken. A *Rule 30(b)(6)* deponent is obliged to present "the knowledge, opinions or positions of the corporation, not the deponent." *Schyvincht v. Menard, Inc., No. 18 CV 50286, 2019 U.S. Dist. LEXIS 114277, 2019 WL 3002961, at *3 (N.D. Ill. July 10, 2019)*; *see also* *United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996)* ("[I]t is not uncommon to have a situation . . . where a corporation indicates that it no longer employs individuals who have memory of a distant event or that such individuals are deceased. . . . These **[*27]** problems do not relieve a corporation from preparing its *Rule 30(b)(6)* designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."). Accordingly, corporations have a duty to "make a conscientious good faith effort to designate the persons having knowledge of the matters sought by the [discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Mintel Int'l Grp., Ltd. v. Neerghen, No. 08 CV*

*3939, 2008 U.S. Dist. LEXIS 93694, 2008 WL 4936745, at *4 (N.D. Ill. Nov. 17, 2008)*, *aff'd sub nom.* *Mintel Int'l Grp., Ltd. v. Neerghen, No. 98 C 3939, 2008 U.S. Dist. LEXIS 101748, 2008 WL 5246682 (N.D. Ill. Dec. 16, 2008)* (quoting *Buycks-Roberson v. Citibank Federal Savings Bank, 162 F.R.D. 338, 342 (N.D. Ill.1995)*).

Ms. Ittayem acknowledged that she neither reviewed any records nor talked with anyone in preparation to give corporate testimony, and she was unable to answer many of Plaintiffs' questions. [*See* Ittayem June 17, 2025 *Rule 30(b)(6)* Dep. at 31:17-22, 51:25-52:02.] The Plaintiffs allege that there was relevant information to be discovered about the Whatsapp chat including certain complaints about failure to pay employees [*see* Defs.' Resp. Pls.' Mot. to Compel at 9], and Plaintiffs are thus entitled to discover not only what Ms. Ittayem knows about it, but what the Wireless Defendants as corporate entities know. *See* *Fed. R. Civ. P. 26(b)(1)*. Plaintiffs have been prevented from reaching **[*28]** their own conclusion as to the use and content of the Whatsapp group, the implication of the loss of its chat history (if it is indeed lost), and the closure of the Whatsapp discussion. Accordingly, Plaintiffs may re-depose a properly educated designee for the Wireless Defendants as to Topic No. 23.

Ms. Ittayem was also designated to testify as to Topic No. 29, Defendants' relationship with MetroPCS Michigan LLC.[5] Nevertheless, Ms. Ittayem testified that she reviewed no materials regarding the Defendants' relationship with MetroPCS Michigan LLC, in order to provide corporate testimony on the issue. [Ittayem *Rule 30(b)(6)* June 25, 2021 Dep. at 10:08-11.] As a result, Ms. Ittayem was unable to answer Plaintiffs' questions about dealer agreements between MetroPCS Michigan and Wireless PCS Chicago or SkyNet Wireless IL LLC, as well as unable to identify with specificity who could provide such testimony. [*See id.* at 15:09-17:17.] "If the deponent lacks personal knowledge, the corporation must educate the deponent so that he/she can testify knowledgeably about matters within the organization's corporate knowledge. Preparing the deponent includes providing him/her with documents, present or past employees, **[*29]** or other sources of information to review." *Schyvincht, 2019 U.S. Dist. LEXIS 114277, 2019 WL 3002961, at *3*. From the record, it is clear that the Wireless Defendants did not adequately prepare Ms. Ittayem to address this issue. Accordingly, Plaintiffs may re-depose a properly educated designee as to Topic No. 29.

Finally, the Wireless Defendants designated Jennifer Bij-Kebbe to testify as to Defendants' policies, procedures, and/or practices regarding deductions from wages for franchise location employees (Topic No. 8). [Defs.' Resp. Pls.' Mot. to Compel at 1.] According to Plaintiffs, like the other *Rule 30(b)(6)* designees, Ms. Bij-Kebbe testified that she neither reviewed any materials other than the deposition notice nor spoke to anyone in preparation for the deposition. [Pls.' Mot. to Compel at 8 and Grp. Ex. 5.] Making matters worse, Plaintiffs say, because Ms. Bij-Kebbe was in Florida at all relevant times, she had no personal knowledge of the Wireless Defendants' Illinois operations, and thus could not, for example, speak to whether Illinois employees knew they could refuse to sign wage deduction authorization forms. [*Id.*] The Wireless Defendants do not contest the limits of Ms. Bij-Kebbe's knowledge. [*See* Defs.' Resp. Pls.' Mot. to **[*30]** Compel at 7-8.] Instead, they argue that she provided sufficient corporate testimony as to *relevant* policies and procedures regarding deductions for employees and was only unable to respond to Plaintiffs' queries regarding how drawer shortages were rectified, which Defendants say was beyond the scope of her designated testimony. [*Id.*]

The Court is unpersuaded by the Wireless Defendants' rationale. First, they do not explain why correction of drawer shortages would not be within the scope of the *Rule 30(b)(6)* deposition notices served on them. Nothing in the *Rule 30(b)(6)* notices limited the topic to certain specific wage deduction policies, and questions regarding wage deduction authorizations or how drawer shortages were handled is within the scope of relevance in this case. *See* *Fed. R. Civ. P. 26(b)(1)*. Second, even if the issue of drawer shortages were removed, this Court would be hard pressed to find that the Wireless

---

[5] Here too the submissions are less than clear. The Wireless Defendants alternatively assert in their brief that they designated Juan Monroy and Fatin Ittayem to testify in response to Topic No. 29. [*Compare* Defs' Resp. Pls.' Mot. to Compel at 1 (identifying Juan Monroy as the designee) *with id.* at 11-12 (identifying Ms. Ittayem as the designee).] Because Ms. Ittayem testified without objection from the Wireless Defendants' counsel that she was the designee as to this topic, and the Wireless Defendants do not argue that Mr. Monroy provided corporate testimony as to Topic No. 29, the Court understands the reference to Mr. Monroy as another error, and that this was one of the topics for which the Wireless Defendants changed their designations. [*See* Pls.' Mot. to Compel at Ex. 3, Ittayem June 25, 2021 *Rule 30(b)(6)* Dep. at 10:08-11.]

Defendants adequately prepared Ms. Bij-Kebbe in light of her undisputed lack of investigation or other preparation and her lack of personal experience. [*See* Defs.' Resp. Pls.' Mot. to Compel at 7-8.] To the extent that Ms. Bij-Kebbe was uninformed about the topics, Defendants were obligated to educate her. *See* Schyvincht, 2019 U.S. Dist. LEXIS 114277, 2019 WL 3002961, at *3. Because **[*31]** they did not, Plaintiffs may re-depose a properly educated designee as to Topic No. 8.

For all of the reasons discussed above, the Wireless Defendants did not adequately prepare their designees to provide complete answers to the questions posed in their Rule 30(b)(6) depositions. The record in this case is unlike those in the Wireless Defendants' cited authorities where, despite being prepared in good faith, the deponents were nevertheless unable to answer certain limited questions. To the contrary here, the Wireless Defendants' designees testified as to their lack of preparation [*see* Kattoura Rule 30(b)(6) Dep. at 25:05-26:20, 44:13-45:07; Ittayem June 17, 2021 Rule 30(b)(6) Dep. at 31:17-22, 51:25-52:02; Pls.' Mot. to Compel at 8 and Grp. Ex. 5], and each were unable to answer apparently basic questions squarely within the Rule 30(b)(6) notices. Plaintiffs' motion to compel is accordingly granted.

*Sanctions*

Plaintiffs' additional request for sanctions is granted in part and denied in part. The failure to produce an educated Rule 30(b)(6) designee is tantamount to a failure to appear and warrants the imposition of sanctions under Rule 37(d), and the Wireless Defendants have presented no compelling reason to explain their failure. *See* Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000) ("when a witness is designated **[*32]** by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)") (internal quotation and citation omitted); *accord* Lincoln Diagnostics, Inc. v. Panatrex, Inc., No. 07-CV-2077, 2009 U.S. Dist. LEXIS 11984, 2009 WL 395793, at *8 (C.D. Ill. Feb.18, 2009) ("[C]ourts have determined that sanctions under Rule 37(d) may be appropriately granted where a corporation designates a corporate representative for deposition under Rule 30(b)(6) who is not knowledgeable about relevant facts.") Because the Court orders the production of testimony that was wrongfully denied Plaintiffs, however, no exclusion of evidence is warranted.

The Court finds that Plaintiffs are entitled to the reasonable expenses incurred in attending and taking the Wireless Defendants' further Rule 30(b)(6) deposition(s) on Topic Nos. 8, 23, and 26-30, including attorneys' fees and the costs of transcription. *See, e.g.,* Black Horse Lane Assoc., 228 F.3d at 301-304; Jokich v. Rush Univ. Med. Ctr., No. 18 C 7885, 2020 U.S. Dist. LEXIS 76916, 2020 WL 2098060, at *3 (N.D. Ill. May 1, 2020) (awarding fees under Rule 30(d)(2) for a second deposition); Medline Indus. v. Lizzo, No. 08 C 5867, 2009 U.S. Dist. LEXIS 93970, 2009 WL 3242299, at *4 (N.D. Ill. Oct. 6, 2009) (same).

Additionally, pursuant to Rule 37(a)(5), the Wireless Defendants are directed to pay Plaintiffs' expenses in bringing their motion to compel. None of the exceptions itemized in the rule apply, and there are no circumstances that would make an award unjust. *See* Fed. R. Civ. P. 37(a)(5).

The parties are directed to meet and confer on the amount of expenses to be awarded **[*33]** under this order within 30 days of the conclusion of further Rule 30(b)(6) deposition(s), and counsel are strongly encouraged to work together in good faith to resolve this ancillary issue without the Court's involvement. If the parties are unable to do so, Plaintiffs may file an affidavit itemizing such expenses with sufficient particularity to enable review (and lack of particularly risks forfeiture of certain expenses), and the Wireless Defendants may file a response (limited to five pages) to Plaintiffs' affidavit within seven days thereafter.

***Next Steps***

In resolving the slew of the parties' discovery motions, it has become apparent that Plaintiffs' counsel and Defendants' counsel have let their personal animosity distract from the parties' dispute. Such conduct is not what the civil or professional rules envision, and this Court expects counsel to better adhere to their professional obligations going forward. Consistent with this order, the parties are given 45 days to complete the depositions of the Wireless Defendants (30(b)(6)), the Khalils, Ms. Hunter, and Mr. Rivera at mutually agreeable dates and times. Because the parties have had disputes in the past over even the scheduling of depositions, **[*34]** dates for all of these depositions

must be confirmed within 10 days of this order, and may not be changed once confirmed without leave of court. The depositions shall be conducted according to the following guidelines in addition to the applicable Federal Rules of Civil Procedure and the Illinois Rules of Professional Conduct:

1. Plaintiffs are to conduct any continued depositions of Moeen Hasan Khalil and Saed Khalil respectfully, addressing only those matters that were previously suspended or reasonably related thereto, and concluding each within one hour. Likewise, Defendants are to conduct the continued depositions of Ms. Hunter and Mr. Rivera respectfully, addressing only those matters that were previously suspended or reasonably related thereto, and as to which Plaintiffs' motion for a protective order is denied, and concluding each within two hours.

2. In the event that counsel defending a deposition objects to a question on any basis other than privilege, counsel is to state the objection plainly, concisely, and without argument, and then allow the testimony to be taken subject to the objection. Further improper suspension of deposition questioning will be subject to sanctions. **[*35]** [*See* *Fed. R. Civ. P. 30(d)(2)*.]

3. The Wireless Defendants shall appear through duly educated designees for up to four hours of deposition time total as to Topic Nos. Nos. 8, 23, and 26-30. The Wireless Defendants shall disclose the name(s) of their corporate designees and the topics on which each will testify no later than seven days in advance of the confirmed deposition(s), and those designees must be prepared to provide testimony that binds each corporate entity.

Plaintiffs are given seven days from the conclusion of the last of these depositions to supplement their renewed motion for conditional class certification [*see* dkt. 194] with specific reference(s) to testimony obtained, if they believe such supplementation is appropriate and consistent with their *Rule 11* obligations (and limited to five pages). Likewise, Defendants are given 14 days from the conclusion of the last of these depositions to supplement their opposition to Plaintiffs' renewed motion for conditional class certification [*see* dkt. 251] with specific reference(s) to testimony obtained, if they believe such supplementation is appropriate and consistent with their *Rule 11* obligations (and limited to five pages).

**CONCLUSION**

For all of the aforementioned **[*36]** reasons, (1) Plaintiffs' motion for a protective order as to Datisha Hunter and Wilfredo Rivera's Depositions [239] is granted in part and denied in part, (2) Defendant Moeen Hasan Khalil and Saed Khalil's motion for a protective order as to their depositions [229] is denied, and (3) Plaintiffs' motion to compel and for sanctions directed to Defendants WirelessPCS Chicago LLC and SkyNet Wireless IL LLC [238] is granted in part and denied in part. **Dated: 10/5/21**

**Dated: 10/5/21**

/s/ Beth W. Jantz

BETH W. JANTZ

United States Magistrate Judge

End of Document