# Exhibit C

# Pable v. Chi. Transit Auth.

United States District Court for the Northern District of Illinois

August 7, 2024, Decided; August 7, 2024, Filed

No. 19 CV 7868

**Reporter**
2024 U.S. Dist. LEXIS 140218 *; 2024 LX 123747; 2024 WL 3688708

CHRISTOPHER PABLE, Plaintiff, v. CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES, LTD., Defendants.

**Subsequent History:** Affirmed by *Pable v. Chi. Transit Auth., 2025 U.S. App. LEXIS 18688 (7th Cir. Ill., July 28, 2025)*

**Prior History:** *Pable v. Chicago Transit Auth., 2023 U.S. Dist. LEXIS 34833, 2023 WL 2333414 (N.D. Ill., Mar. 2, 2023)*
*Pable v. Chi. Transit Auth., 2023 U.S. Dist. LEXIS 165846, 2023 WL 5955832 (N.D. Ill., Aug. 16, 2023)*

**Counsel: [*1]** For Christopher George Pable, Plaintiff: Timothy Alan Duffy, LEAD ATTORNEY, Law Office of Timothy A. Duffy, P.C., Lake Forest, IL.

For Chicago Transit Authority, Defendant: Elizabeth Erin Babbitt, John Francis Kennedy, LEAD ATTORNEYS, Elizabeth Ann Winkowski, Kim Renee Walberg, Nicollette Liv Khuans, Taft Stettinius & Hollister LLP, Chicago, IL.

For Clever Devices, Ltd., Defendant: Michael F Hughes, LEAD ATTORNEY, Amundsen Davis, LLC, St. Charles, IL.

For Chicago Transit Authority, Counter Claimant: Elizabeth Erin Babbitt, John Francis Kennedy, LEAD ATTORNEYS, Nicollette Liv Khuans, Taft Stettinius & Hollister LLP, Chicago, IL.

For Christopher George Pable, Counter Defendant: Timothy Alan Duffy, LEAD ATTORNEY, Law Office of Timothy A. Duffy, P.C., Lake Forest, IL.

**Judges:** Robert W. Gettleman, United States District Judge.

**Opinion by:** Robert W. Gettleman

## Opinion

**MEMORANDUM OPINION & ORDER**

Plaintiff Christopher Pable brings his one-count complaint against defendants Chicago Transit Authority ("CTA") and Clever Devices, Ltd. ("Clever Devices") (collectively, "defendants"), alleging that defendants violated the *Public Transportation Employee Protection Provision of the National Transit Systems Security Act ("NTSSA"), 6 U.S.C. § 1142(b)*.[1] The parties have engaged in voluminous discovery and motion practice.

Magistrate Judge McShain has issued two Report **[*2]** and Recommendations ("R&Rs") in the instant matter. The first R&R (Doc. 158), issued on March 2, 2023, relates to the CTA's first amended motion (Doc. 129) for sanctions and attorney's fees and costs.[2] In the first R&R, Judge McShain concluded that plaintiff and plaintiff's counsel, Duffy, intentionally spoliated evidence and engaged in discovery misconduct. She determined that the appropriate sanction was dismissal of plaintiff's complaint with the imposition of attorney's fees and costs. The second R&R (Doc. 177), which Judge McShain issued on August 16, 2023, addresses CTA's petition for attorney's fees and costs (Doc. 163), which Judge McShain concluded should be granted in part. Plaintiff objects to both R&Rs.

For the reasons discussed below, this court concludes that plaintiff intentionally spoliated evidence, and dismissal is the appropriate sanction. The court also concludes that sanctions against Duffy are appropriate. The court adopts Judge McShain's recommendations

[1] Defendant CTA filed a counterclaim (Doc. 32), against plaintiff pursuant to the *Computer Fraud and Abuse Act, 18 U.S.C. § 1030*, but Judge Bucklo granted plaintiff's motion for judgment on the pleadings on the counterclaim (Doc. 135).

[2] Judge McShain also addressed CTA's motion (Doc. 143) to take additional discovery respecting plaintiff's affidavit and to strike Duffy's "certified statement," which Judge McShain denied on March 2, 2023 (Doc. 157).

regarding the appropriate award of attorney's fees and costs related to defendant's motion to compel.

## BACKGROUND

Plaintiff initiated the instant action against the CTA, alleging that the CTA wrongfully forced him **[*3]** to resign after he filed a report about a security vulnerability in the transit system's BusTime software system. On August 17, 2018, Pable informed his supervisor, Todd Haynes ("Haynes"), that he had discovered a "Skeleton Key" to the application programming interface of the BusTime system. BusTime is an application developed by defendant Clever Devices and used by defendant CTA. Haynes asked plaintiff to modify a file in the Skeleton Key to allow Haynes to test whether it could be used to post a service alert on another BusTime system. Haynes, contrary to a warning from plaintiff, tested the modified Skeleton Key on the BusTime system used by the Regional Transit Authority ("RTA") of Dayton, Ohio ("the Dayton test"), causing an erroneous service alert to be posted to the RTA's BusTime system and Twitter account.

The following Monday (August 20, 2018), Haynes emailed a Dayton RTA employee, with plaintiff copied, stating that they had performed a "small penetration test" and were responsible for the BusTime alert and Tweet. That same day, Haynes emailed Clever Devices about the Skeleton Key and the Dayton test, with plaintiff copied. On August 31, 2018, Haynes sent his supervisor an **[*4]** email (initially drafted by plaintiff and with plaintiff copied), notifying him of the Skeleton Key.

Two months later, on October 22, 2018, Clever Devices sent CTA a letter, informing CTA that Clever Devices believed that plaintiff and Haynes breached Clever Device's agreement with CTA and potentially violated state and federal laws. The same day, CTA placed plaintiff and Haynes on administrative leave and initiated an internal investigation. On October 29, 2018, plaintiff reached out to two different lawyers to inquire about a possible Family and Medical Leave Act ("FMLA") claim against CTA, stating that he believed he had been placed on leave because CTA was aware of an upcoming FMLA filing.[3] On November 2, 2018, Haynes and plaintiff were interviewed at CTA headquarters. Haynes resigned in lieu of termination. Plaintiff was called in for another interview on November 8, 2018, during which he also resigned in lieu of termination.

Plaintiff initiated the instant federal case against the CTA and Clever Devices on December 2, 2019. The case was referred to Magistrate Judge McShain for supervision when the parties began engaging in discovery. After several disputes, CTA moved for sanctions **[*5]** against plaintiff and his counsel, Duffy, pursuant to *Federal Rule 37(e)*, *28 U.S.C. § 1927*, and the court's inherent authority, on June 27, 2022. In the motion, CTA claims that Pable intentionally spoliated three categories of electronically stored information ("ESI") that he failed to produce in discovery: (1) Signal messages between plaintiff and Haynes that were exchanged prior to November 2, 2018; (2) Signal messages between plaintiff and Haynes that were exchanged after October 29, 2019; and (3) plaintiff's personal cell phone.

Regarding the pre-November 2, 2018, messages, CTA claims that plaintiff intentionally deleted all messages that he exchanged with Haynes prior to November 2 via his Signal mobile application. Plaintiff and Haynes almost exclusively communicated with each other via Signal, an independent messaging application. According to deposition testimony, plaintiff and Haynes met at a Starbucks on November 2 before their interviews. At Starbucks, Haynes deleted his entire conversation thread with plaintiff from his Signal application because Haynes "felt those conversations were personal" and CTA had not asked him to preserve them.

Plaintiff testified that he saw Haynes delete messages off his phone, **[*6]** but denies asking Haynes to delete them. Plaintiff further testified that when Haynes deleted his Signal thread with plaintiff, plaintiff's own messages with Haynes disappeared. Plaintiff stated that he did not delete those messages himself. During his second deposition, plaintiff stated that he believed that Signal had a feature that prompted a Signal user to delete messages for all users in the same conversation thread, although he was not sure whether such feature existed in 2018.

Following plaintiff's testimony, CTA obtained an affidavit from the Chief Operating Officer of Signal, Aruna Harder ("Harder"). In her affidavit, Harder stated that "[i]n approximately May 2020, Signal first provided the ability

[3] Plaintiff's theory was that CTA was using the Dayton test as a pretext for forcing plaintiff to resign, and the real reason for forcing plaintiff's resignation was his upcoming surgery.

for users to unilaterally and permanently delete specific messages they sent in a Signal message thread from the electronic devices of all Signal users in the same message thread." Harder stated that "Signal has never had a feature allowing a Signal user to unilaterally, manually, and permanently delete messages they received in a Signal message thread from the electronic devices of any or all other Signal users in the same message thread."

In response to Harder's affidavit, plaintiff **[*7]** provided his own affidavit, offering another explanation for the deletion of the pre-November 2 messages: "Haynes' deletion of [their] Signal conversation thread triggered a change in what Signal calls a 'Safety Number.'" Plaintiff explained that "[a] safety number is a unique code that securely identifies each conversation thread." He further explained that "Signal can be configured to take any number of actions when the Safety Number changes," and his Signal application was "coded to delete any such potentially comprised conversations." According to plaintiff, when Haynes deleted their conversation thread, plaintiff's application changed the Safety Number of their thread, which triggered the deletion of plaintiff's own messages.

Plaintiff further declared that during his final months of working at CTA, his Signal application was set to retain no more than 50 messages with any person. He stated that he exchanged several messages via Signal with Haynes in the weeks leading up to November 2, but on that date, his phone did not contain any Signal messages from August 2018 due to the message cap.

The second category of evidence that plaintiff allegedly spoliated is the Signal messages between **[*8]** Haynes and plaintiff exchanged after October 29, 2019. It is undisputed that following their resignations, Haynes and plaintiff continued communicating over Signal until April 2021, discussing, among other things, the Dayton test and plaintiff's lawsuit against CTA. Haynes stated that he and plaintiff discussed the parties being deposed and CTA's inquiry into plaintiff's blockchain activities and the password files on his work computer.[4]

Yet, no Signal messages for the period after October 29, 2019, were produced in discovery. Haynes testified that plaintiff enabled the "disappearing messages" function on his Signal application. Plaintiff explained in his affidavit that this function allowed him to set his Signal application to retain messages with Haynes only within 24 hours after being read, "as a matter of general practice for automated data hygiene, privacy, and security purposes." Harder confirmed that the disappearing messages function automatically and permanently deletes "all messages sent and/or received in a Signal message thread" after a designated time period. Harder further stated that "Signal does not possess or control backups or copies of Signal messages sent and received **[*9]** by Signal users (whether on its servers or otherwise)."

The third category of allegedly spoliated evidence is plaintiff's personal cell phone. On March 18, 2020, CTA sent Duffy a letter requesting that plaintiff's cell phone from 2018 be imaged in its entirety. CTA sought imaging due to deficiencies in plaintiff's disclosures, including missing communications between plaintiff and Haynes. Previously, plaintiff asserted that "when [plaintiff] had resigned from the CTA, the CTA 'wiped' his cell phone, and in the process deleted the decryption key."

In response, Duffy agreed that plaintiff would preserve all personal devices and the "work profile" of plaintiff's phone would be imaged, but Duffy contested CTA's request to image plaintiff's entire phone. The parties did not resolve the scope of imaging dispute until June 2020, when Duffy informed CTA that "[w]e have imaged [plaintiff's] cell phone and are in the process of running the search terms without regard to any distinction between his personal and work profiles." On October 13, 2020, CTA noted that plaintiff had not produced the image of his cell phone and requested "a complete image of [plaintiff's] cell phone to fully account for **[*10]** the relevant information that is clearly missing from [plaintiff's] productions to date and to ensure that all responsive information on the device is discovered and produced."

On October 22, 2020, counsel for CTA asked Duffy to confirm that plaintiff would produce "a complete and searchable forensic image file of his personal cell phone as it was previously imaged by [plaintiff]'s third-party expert during the course of written discovery." Duffy confirmed that "[t]he image is a complete forensic image." Counsel for CTA reiterated its concern, and Duffy reiterated that "[t]he image is a complete image of the data on the phone when the phone was imaged" and "nothing about the imaging process affected the 'completeness' of the image."

[4] Haynes further stated that plaintiff shared court documents with him, although these documents later were publicly available via PACER.

On October 31, 2020, plaintiff produced the first image of his cell phone. According to CTA's expert, Nathan Binder ("Binder"), the first image produced only .2 GB of user-generated data. Binder stated that the image had only five SMS text messages, which were exchanged in May 2020. Moreover, Binder declared that the image lacked: communications exchanged on third-party applications; internet browsing and/or search histories; audio or visual files, including **[*11]** photos; information or data associated with the majority of third-party applications contained on the cell phone; and information or data associated with the cell phone's "SD card." Duffy claimed that the small amount of information was due, in part, to the CTA's initial wipe of plaintiff's phone. However, Binder stated that his review demonstrated that: (1) very little data resided on the device at the time of the image; (2) there were inconsistencies with the data in the image; and (3) that the image was not complete.

CTA then moved to compel a second imaging of plaintiff's cell phone and to produce archived copies of personal websites that he owned or operated. Judge McShain granted the motion but took CTA's request for costs and fees under advisement. Following Judge McShain's order, CTA's retained vendor produced a second image of plaintiff's phone, which contained 25 GB of unique data. CTA asserted that "[t]he data collected from the Second Image included data that pre-dated the First Image of the phone completed in June 2020." For example, the vendor retrieved 42 Signal messages between plaintiff and Haynes from May 2019 to October 2019 that were not produced to CTA or included **[*12]** in the first image.

On April 29, 2021, Duffy stated in a hearing before Judge McShain that he did not remove anything from the first image and believed the image was complete. Duffy suggested that the vendor might have been selective when imaging plaintiff's phone and imaged only portions that the vendor believed were relevant. Duffy clarified by stating, "So I just want to be clear that when we say complete, it was complete for our purposes, we think, to pick up all the communications that it takes. Were there things on the phone that were not included in that image? That's probably likely. I think that's almost true for almost any image."

On July 26, 2021, the CTA deposed plaintiff a second time. Plaintiff testified that he had no insight into the imaging process but believed that the forensic expert "provided the contents of what was relevant." CTA then sought to extend fact discovery to serve Quest, the vendor that Duffy used to produce the first image. CTA also requested an order requiring plaintiff to turn off the disappearing messages function from his Signal application.

On August 13, 2021, Judge McShain held a hearing on the CTA's motion, which she granted in part and denied **[*13]** in part. At the hearing, CTA expressed its concern that the first image was missing data, potentially due to "judgment calls on relevance, search terms, et cetera" by Duffy or Quest. In response, Duffy stated that, during plaintiff's second deposition, plaintiff referred to the use of agreed search terms on his phone's data. Duffy clarified that "[r]esponsive things were produced. Non-responsive, irrelevant things were not . . . . if there w[ere] messages that had nothing to do with the case and weren't responsive to the search terms, those would not have been produced." Counsel for CTA stated that "at no point was it represented to the CTA that both sets of search terms was going to be applied in a way to limit the output of the image that would be provided to the CTA." Judge McShain allowed CTA to serve discovery on Quest but declined to order plaintiff to disable the disappearing messages function.[5]

CTA then subpoenaed Quest and deposed Dan Jerger ("Jerger"), the consultant who imaged plaintiff's cell phone.[6] Jerger testified that he acted pursuant to Duffy's instructions and was "not asked specifically to obtain a logical or physical image of the phone" or "preserve a copy of all **[*14]** the data on the phone." Rather, Jerger testified that the "underlying mission was to collect and document within a particular date range and within and/or with certain key words." According to Jerger, he

---

[5] Judge McShain reasoned that there was a lack of cited authority to support the request, and relied on Duffy's word that plaintiff was advised about his duty to preserve relevant evidence.

[6] During Jerger's first deposition, it came out that Quest had not produced certain emails that were responsive to the subpoena. Quest continued to fail to produce the emails after Jerger's second deposition and instead agreed to produce a limited number of communications between Duffy and Jerger, asserting that producing any communications beyond October 2020 would be burdensome and raise privilege issues. CTA moved to enforce their subpoena and for sanctions against Quest and Duffy, which Judge McShain granted in part and denied in part. Judge McShain ordered Quest to produce the responsive documents, and Quest did so on February 14, 2022.

created an encrypted backup of the messages that he transferred to a temporary SD card. Duffy produced the backup file after Jerger was deposed.

The parties continued to file discovery-related motions, resulting in two R&Rs. The first R&R ruled upon: (1) CTA's *Rule 37(e)* motion for sanctions; (2) CTA's motion for sanctions against Duffy under *28 U.S.C. § 1927* or the court's inherent authority; (3) CTA's request for fees and costs related to its motion to compel; (4) CTA's request for fees and costs related to its *Rule 37(e)* motion; and (5) CTA's motion to serve additional discovery on plaintiff and to strike Duffy's certified statement.

Judge McShain recommended that this court: grant CTA's *Rule 37(e)* motion; dismiss plaintiff's complaint with prejudice as a sanction for his intentional spoliation of the pre-November 2, 2018, Signal messages and his cell phone; and reject plaintiff's request for an evidentiary hearing. Judge McShain further recommended that this court sanction Duffy, but not Quest, under *§ 1927*, and impose sanctions on **[*15]** Duffy in the amount of $53,388.00. Judge McShain also recommended granting CTA's request for its attorneys' fees and costs in connection to its *Rule 37(e)* motion, and granted CTA's request regarding its motion to compel a second imaging of plaintiff's cell phone. Judge McShain ordered CTA to submit a petition for fees and costs for its *Rule 37(e)* motion and motion to compel, and denied CTA's motion for additional discovery on plaintiff and to strike Duffy's certified statement. Plaintiff objects to the first R&R.

In her second R&R, Judge McShain recommended that this court find the CTA's hourly rates are reasonable, and award CTA a total of $21,367.00 in fees and costs for its motion to compel, which Duffy should pay. Judge McShain further recommended that the court award CTA a total of $75,175.42 in attorney's fees and costs for its *Rule 37(e)* motion, and ordered plaintiff and Duffy to each pay one-half ($37,587.71). Plaintiff objects to the second R&R.

## LEGAL STANDARD

The *Federal Magistrates Act, 28 U.S.C. § 636*, describes the various powers and authority afforded to federal magistrate judges and, together with *Federal Rule of Civil Procedure 72*, establishes the types of motions or issues that a district court judge can refer to a magistrate judge for resolution. *Section 636* and *Rule 72* distinguish between **[*16]** "non-dispositive" pretrial matters that may be referred to a magistrate judge for a decision and matters that are dispositive of a claim or defense, which may be referred to a magistrate judge only for a recommended decision to the district judge (absent the parties' consent). See *Fed. R. Civ. P. 72(a)*, *(b)*; *28 U.S.C. § 636(b)(1)*. When a magistrate judge rules on a non-dispositive pretrial matter, a district judge may reject that ruling only if it is "clearly erroneous or is contrary to law." See *Fed. R. Civ. P. 72(a)*; *28 U.S.C. § 636(b)(1)(A)*. Conversely, when a magistrate judge issues a report and recommendation to a district judge on a dispositive matter, the district judge reviews de novo any portions of the recommendation to which a party has objected. *Fed. R. Civ. P. 72(b)(3)*; *28 U.S.C. 636(b)(1)(C)*.

## DISCUSSION

First, plaintiff objects to all Judge McShain's findings and recommendations in the first R&R. Specifically, plaintiff argues that Judge McShain erred by: (1) finding that plaintiff spoliated ESI with the intent to deprive CTA of discovery material, warranting dismissal as a sanction; (2) not granting plaintiff an evidentiary hearing on the *Rule 37(e)* motion; (3) granting CTA attorney's fees and costs for the *Rule 37(e)* motion; (4) finding that Duffy vexatiously and needlessly multiplied litigation, warranting a personal sanction; **[*17]** and (5) granting CTA attorney's fees and costs for its motion to compel. This court conducts a de novo review of the record.[7]

In its *Rule 37(e)* motion, CTA claims that plaintiff and Duffy spoliated three categories of ESI evidence: (1) the pre-November 2, 2018, messages; (2) the post-October 29, 2019, messages[8]; and (3) plaintiff's personal cell phone. *Rule 37(e)* provides that a party may be subject to sanctions in certain circumstances for failing to preserve ESI. See *Fed. R. Civ. P. 37(e)*. There are five threshold requirements to a *Rule 37(e)* spoliation motion:

> (1) the information must be ESI; (2) there must

[7] Because CTA requested dismissal as a sanction, the court treats CTA's *Rule 37(e)* motion as a dispositive motion.

[8] Haynes produced the Signal messages between himself and plaintiff from November 2, 2018, through October 29, 2019, in response to a subpoena issued by CTA.

> have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery.

*Hollis v. CEVA Logistics U.S., Inc., 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022)* (citing *Fed. R. Civ. P. 37(e)*).

The court agrees with Judge McShain's determination that plaintiff's duty to preserve evidence under *Rule 37(e)* was triggered on October 29, 2018.[9] A duty to preserve is triggered "when litigation is commenced or reasonably anticipated." *Id. at 619*. The record demonstrates that litigation **[*18]** was reasonably foreseeable as of October 29, 2018, when plaintiff reached out to lawyers about a potential claim against CTA after he was placed on administrative leave. The nature of his potential claim (whether an FMLA or NTSSA claim) does not change CTA's likely defense (i.e., that it placed plaintiff on administrative leave because of his participation in the Dayton test), or the relevant materials to support that defense.

Having determined that plaintiff's duty to preserve evidence arose on October 29, 2018, the court concludes that all three categories of ESI are relevant and "should have been preserved," and that plaintiff failed to take reasonable steps to preserve them. *Fed. R. Civ. P. 37(e)*). For the purposes of discovery, relevant ESI encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in that case." *Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)*.

First, the court concludes that the pre-November 2, 2018, messages are relevant ESI and should have been preserved. The extent of plaintiff's involvement in the Dayton test, and his potential motive to conduct it, are key issues, making relevant all plaintiff's communications with Haynes about the test conducted on **[*19]** August 17, 2018. Haynes testified that he and plaintiff exchanged Signal messages after the test, after being placed on administrative leave, and after their interviews with CTA on November 2. Like Judge McShain, this court rejects plaintiff's argument that the pre-November 2 messages are not relevant because he did not have messages dating back to the date of the test due to his fifty-message storage limit. The first R&R rejected this argument on the grounds that even if plaintiff's testimony were credible, the messages would be relevant; the cache of messages would simply be smaller. Even assuming a fifty-message limit, this court concludes that the message cap does not undercut the relevance of those messages. The court does not need to address plaintiff's credibility, or lack thereof, to reach this conclusion.

The court also concludes, by a preponderance of the evidence, that not only did plaintiff fail to take reasonable steps to preserve the pre-November 2 messages, but he intentionally destroyed them. The court independently determines that plaintiff's explanations for the deletion of these messages are not credible. Significantly, as Judge McShain noted, plaintiff changed his **[*20]** story to explain why the messages were deleted. Plaintiff offered the second explanation ("Safety Number") only after Harder's affidavit refuted the initial explanation. Plaintiff also failed to take the reasonable message of turning off the fifty-message cap on his Signal messages following his duty to preserve. See *DR Distributors, LLC v. 21 Century Smoking, Inc., 513 F. Supp. 3d 839, 979 (N.D. Ill. 2021)* (noting that "disabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI").

Plaintiff objects to Judge McShain's conclusion on this issue. Plaintiff first counters that Judge McShain misinterpreted Harder's affidavit, which plaintiff argues did not address what occurs when a Signal user deletes an entire conversation thread as opposed to individual messages. He next claims that Judge McShain improperly assessed plaintiff's credibility solely based on a paper record. This court determines that neither objection is persuasive. Harder plainly referred to all received messages, and plaintiff's argument otherwise is not convincing. Regarding any credibility determinations, Judge McShain's determinations are not quintessential credibility determinations that consist of weighing one witness's testimony **[*21]** against another's. Rather, Judge McShain determined that plaintiff's claims are not credible because they are internally inconsistent.

Similarly, the court concludes that plaintiff and Haynes' post-October 2019 messages are relevant ESI that

---

[9] The parties do not dispute that the information in the instant matter is ESI.

should have been preserved. Haynes testified that he and plaintiff discussed the ongoing litigation, including the documents produced and received during the discovery process. As Judge McShain concluded, these messages are relevant as potential impeachment evidence against Haynes. Moreover, Haynes testified that he and plaintiff discussed via Signal information relevant to CTA's affirmative defense of unclean hands.[10]

The fact that Judge McShain previously denied CTA's motion to compel plaintiff to turn off the disappearing-messages function does not mean that the post-October 2019 messages are not relevant. Judge McShain did not address the relevance of these messages in her order. Rather, she denied the motion for lack of cited authority and relied on Duffy's assurances that plaintiff was informed of his duty to preserve relevant ESI. Yet, plaintiff failed to take reasonable steps to preserve these messages. Sometime prior to October 29, 2019, plaintiff **[*22]** turned on the disappearing messages feature, and his decision to do so resulted in the irrevocable loss of Signal messages between him and Haynes.

Last, the court concludes that the contents of plaintiff's cell phone are relevant ESI that should have been preserved. Plaintiff used his phone to communicate with Haynes about the underlying events of the instant litigation for (at least) the time period following the Dayton test, through their administrative leave, and up to their resignations. The phone is even more relevant due to the heavily contested missing discovery in the instant case. For example, CTA initially sought the imaging in part to follow-up on plaintiff's claim that CTA remotely wiped his phone and deleted the decryption key saved on it. Moreover, plaintiff's testimony about the pre-November 2, 2018, messages raised questions about the settings and configuration of plaintiff's Signal application.

Plaintiff failed to take reasonable steps to preserve his cell phone beyond a limited image. CTA requested a complete image of the phone, and Duffy agreed that plaintiff would preserve his personal devices. Plaintiff was on notice that the entire cell phone, including its hard **[*23]** drive and settings, was relevant. Yet, Duffy had Quest image plaintiff's phone without input or oversight by opposing counsel, and based on Jerger's testimony, Duffy did not direct Quest to obtain a complete image of the phone or preserve all user-generated data. Rather, Jerger was asked to "collect and document within a particular date range and within and/or with certain key words."

The court determines that all three categories of ESI (both sets of messages and the cell phone) cannot be restored or replaced. Harder attested in her affidavit that Signal does not keep back-ups or copies of Signal messages, and all messages subject to the disappearing messages function are automatically and permanently deleted. The court concludes that the lost ESI cannot be replaced by other forms of discovery, such as work emails or deposition testimony. Moreover, plaintiff testified that his new employer partially wiped his cell phone. The second imaging of plaintiff's phone nearly a year after the first image cannot prove which settings or user-generated data existed on the phone at the time of CTA's initial request.

Thus, because CTA has proven the threshold elements requirements to its *Rule 37(e)* spoliation **[*24]** motion, the court analyzes the appropriate sanction. See *Hollis v. CEVA Logistics U.S., Inc., 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022)*. If the court determines that plaintiff intentionally sought to deprive CTA of the ESI, the court may impose harsher sanctions, including a presumption that the information was unfavorable, an adverse-inference instruction to the jury, default, or dismissal under Federal *Rule 37(e)(2)*. See *id. at 618*. To find that a party acted with the intent to deprive the other party of ESI, the court must find that the destroying party acted with "bad faith" or "for the purpose of hiding adverse information" by a preponderance of the evidence. See *Sonrai Sys., LLC v. Romano, No. 16 C 3371, 2021 U.S. Dist. LEXIS 72444, 2021 WL 1418405, at *13 (N.D. Ill. Jan. 20, 2021)*, report and recommendation adopted, *No. 1:16-CV-03371, 2021 U.S. Dist. LEXIS 75392, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021)*. Intent to deprive is often established using circumstantial evidence. See *Hollis, 603 F. Supp. 3d at 623*. If intent is established, then prejudice is presumed. See *id. at 622*.

The court concludes that CTA has sufficiently established that plaintiff destroyed the first set of Signal messages in bad faith. Plaintiff's shifting narrative (which shifted only in response to unfavorable testimony from Harder) leads to the reasonable conclusion that

[10] Plaintiff argues that certain affirmative defenses asserted by CTA are unsupported by law and the first R&R should not have relied on them. The court does not need to determine which party would prevail on the merits to impose sanctions under *Federal Rule 37(e)*.

plaintiff deleted his messages with Haynes with the intent to hide adverse information or deprive CTA of relevant ESI. The timing of and circumstances surrounding the deletion support **[*25]** the court's conclusion.

Plaintiff argues that the question of whether he intended to deprive the defendants the Signal messages must go to a jury because it involves a credibility determination. The court rejects this argument. While some courts have sent the intent question to a jury after finding that the parties raised contested questions of fact, the Advisory Committee Notes to *Rule 37* leave the question of whether a court or a jury should determine intent to the court. See *Fed. R. Civ. P. 37*, Advisory Committee Notes ("This finding [of intent to deprive] may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial). This court concludes that the question of plaintiff's intent does not need to be resolved by a jury.

However, the court agrees with plaintiff that the record does not contain enough evidence to suggest that plaintiff spoliated the second set messages (via the disappearing messages function) for the purposes of hiding adverse information. Plaintiff argues that he turned on the disappearing messages feature for the purposes of data hygiene and to maintain storage, and there is no specific **[*26]** evidence in the record to refute that statement. Regardless, the court concludes that plaintiff's actions prejudiced CTA. Prejudice pursuant to Federal *Rule 37(e)* "means that a party's ability to obtain the evidence necessary for its case has been thwarted." *Taylor Made Express, Inc. v. Kidd, No. 21 C 2903, 2024 U.S. Dist. LEXIS 9211, 2024 WL 197231, *15 (N.D. Ill. Jan. 18, 2024)*. The record demonstrates that plaintiff and Haynes discussed the pending litigation against CTA in their post-October 2019 messages, and CTA plans to argue that Haynes is taking the fall for plaintiff. Evidence of messages discussing the litigation would have allowed CTA to strengthen its argument that Haynes's testimony should be scrutinized.

Last, the court concludes that plaintiff failed to preserve his cell phone with intent to deprive defendants of its contents. As discussed above, plaintiff was aware that CTA sought a complete image of his cell phone and had a motive at the time to hide information that might undermine his claim. After the first image, Duffy repeatedly misrepresented to CTA that plaintiff obtained a complete image of his cell phone, and repeatedly failed to correct his misrepresentation. Duffy, as plaintiff's counsel, acted on plaintiff's behalf. See *Malibu Media, LLC v. Tashiro, No. 1:13-CV-00205-WTL, 2015 U.S. Dist. LEXIS 64281, 2015 WL 2371597, at *24 (S.D. Ind. May 18, 2015)*, report and recommendation adopted, *No. 1:13-CV-205-WTL-MJD, 2015 U.S. Dist. LEXIS 75588, 2015 WL 3649359 (S.D. Ind. June 11, 2015)* ("As courts have repeatedly **[*27]** noted, for instance, 'clients may be held responsible for the acts and omissions of their chosen counsel.'").

Accordingly, the court adopts the first R&R's recommendation that plaintiff's complaint be dismissed with prejudice. Dismissal is the appropriate sanction in the instant case given the record demonstrating plaintiff and Duffy's evasive tactics and dishonesty, and the court's finding that plaintiff intended to deprive CTA of relevant ESI. A lesser sanction would not be sufficient to cure the prejudice that CTA has suffered due to the spoliation because it is "impossible to determine the full extent of the spoliation." See *Williams v. Am. Coll. of Educ. Inc., No. 16 C 11746, 2019 U.S. Dist. LEXIS 157447, 2019 WL 4412801, at *15 (N.D. Ill. Sept. 16, 2019)*. As a result, it is difficult to ascertain "the presumably unfavorable effect of that information, and thus no way to craft instructions or presumptions that would eliminate—or even substantially mitigate—the prejudice to [the defendant]." *Id. at *16*. Dismissal of the complaint will help deter other litigants from engaging in similar conduct. See *Sloan Valve Co. v. Zurn Indus. Inc., No. 10 C 204, 2012 U.S. Dist. LEXIS 71916, 2012 WL 1886353, at *3 (N.D. Ill. May 23, 2012)*.

The court next adopts the first R&R's recommendation that the court grant CTA's request for attorney's fees and costs for its Federal *Rule 37(e)* motion. Plaintiff argues that *Rule 37(e)*, unlike other provisions of *Rule 37*, does not permit fees and costs, **[*28]** especially where the Court has ordered dismissal of the complaint as a sanction. The court overrules plaintiff's objection. The Advisory Committee Notes to *Rule 37(e)* recognizes the discretion district courts have in fashioning an appropriate sanction "no greater than necessary to cure the prejudice" for misconduct that falls under *Rule 37(e)*. *Fed. R. Civ. P. 37(e)*, Advisory Committee's Note to 2015 Amendment. The court further concludes, in its discretion, that a monetary sanction is warranted given the financial prejudice that CTA has suffered. Plaintiff and Duffy's conduct during the discovery required CTA to extend fact discovery,

serve additional discovery, and engage in satellite litigation to uncover the spoliation of the relevant ESI and disprove plaintiff and Duffy's repeated misrepresentations.

The court adopts Judge McShain's recommendation on the appropriate award in the second R&R, which addressed CTA's petition for fees and costs.[11] Plaintiff objects to CTA's *Rule 37(e)* petition due to CTA's inclusion of the fees and costs associated with plaintiff's second deposition, which he argues would have occurred regardless of CTA's motion to compel because it was planned prior to the first session. The court overrules plaintiff's **[*29]** objection, and awards CTA $75,175.42 in fees and costs. As CTA asserts, plaintiff's spoliation of certain Signal messages led to CTA exploring a line of questioning in plaintiff's second deposition that otherwise would have been unnecessary.

However, as Judge McShain recommends, this court has reduced CTA's requested award for attorney's fees related to plaintiff's second deposition by two thirds to the sum of $75,175.42. Plaintiff will pay one-half of the fee award ($37,587.71), and Duffy will pay the other half of the award ($37,587.71). As Judge McShain explained, CTA did not establish that "the entire—or even the majority of—the second deposition was necessitated by the spoliation concerns that precipitated the *Rule 37(e)* motion." Judge McShain also recommended that the court exclude the $2,600 in costs that CTA incurred due to its choice to obtain a video recording of plaintiff's second deposition because that choice was unrelated to CTA's spoliation motion.

The court overrules plaintiff's general objection to the first R&R that Judge McShain should have granted him an evidentiary hearing on the motion for sanctions. In a proceeding to impose sanctions, due process requires that a party or **[*30]** attorney receive notice and an opportunity to respond. See *Kapco Mfg. Co. v. C & O Enterprises, Inc., 886 F.2d 1485, 1494-95 (7th Cir. 1989)*. The right to a hearing is limited to where a hearing could assist the court in its decision. *Id. at 1495*. In the instant case, Judge McShain afforded plaintiff notice and an opportunity to respond, and this court reviewed the record de novo. Plaintiff has not made a compelling argument that a hearing would help the court resolve the matter in a different manner.

The court now turns to CTA's motion for sanctions against Duffy, which CTA seeks pursuant to *28 U.S.C. § 1927*.[12] CTA's motion pursuant to *§ 1927* is "akin to [an] independent claim[] for inappropriate conduct during litigation" and must be adjudicated by a district court judge. See *Belcastro v. United Airlines, Inc., No. 17-cv-1682, 2020 U.S. Dist. LEXIS 44515, 2020 WL 1248343, at *4 (N.D. Ill. Mar. 15, 2020)*. Thus, this court reviews the first R&R's recommendations relating to *§ 1927* sanctions de novo.

The court adopts the First R&R's recommendation that it impose sanctions on Duffy under *§ 1927*. Under *§ 1927*, "[a]ny attorney . . . who so multiples the proceedings in any unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *28 U.S.C. § 1927*. The court determines that Duffy engaged in "conduct that a reasonably careful attorney would know to be **[*31]** unsound" by making a series of misrepresentations to CTA and the court, and by failing to correct the record. *Olson v. Reynolds, 484 F. App'x 61, 64 (7th Cir. 2012)*. Duffy misled the CTA when he informed CTA that the first image of plaintiff's cell phone was a "complete forensic image" and that "the image is a complete image of the data on the phone when the phone was imaged." Jerger testified that Duffy did not instruct Jerger to obtain a complete image. Then, Duffy continued to fail to correct the record, suggesting that Duffy was being intentionally evasive or misleading. Duffy's misrepresentations and omissions caused CTA to request an extension of the fact discovery deadline, serve additional discovery on Quest, and move to enforce a subpoena, which unreasonably extended the litigation.

Duffy objects and argues that if spoliation were sanctionable conduct under *§ 1927*, "every successful

[11] Both R&Rs recommend that the court find that CTA's $295 hourly rate for attorneys and $100 hourly rate for paralegals are reasonable for fees and costs and monetary sanctions. Plaintiff did not object to this rate.

[12] The court adopts the R&R's recommendation that the alleged misconduct at issue here is addressed by *§ 1927*, and therefore exercise of the court's inherent authority is unnecessary. The court's inherent authority to impose sanctions on counsel "is a residual authority, to be exercised sparingly and only when other rules do not provide sufficient basis for sanctions." *Dal Pozzo v. Basic Machinery Co., Inc., 463 F.3d 609, 614 (7th Cir. 2006)*.

motion for sanctions would trigger liability for 'multiplying' the proceedings." The court overrules this objection. Not every spoliation case involves an attorney's knowledge or participation.

The court adopts the first R&R's recommendation that it impose sanctions against Duffy in the amount of $53,388.00. CTA sought to recover the attorney's fees and costs **[*32]** it incurred between September 30, 2021, and March 9, 2022. Judge McShain excluded the fees and costs incurred by the CTA from September 30, 2021, to October 12, 2021, as fees and costs that would have been incurred regardless of disputes stemming from Quest's deficient discovery response.

Duffy objects to Judge McShain's inclusion of Jerger's second deposition in the recommended award as unreasonable, contending that the second deposition "was only necessitated by a clerical error with respect to document production" as opposed to misconduct on Duffy's part. Plaintiff further argues that CTA's motion to enforce and Jerger's second deposition were required only due to Duffy's initial misunderstanding of the court's order. The court overrules plaintiff's objection. Duffy did not produce the responsive documents until after Judge McShain granted CTA's motion to enforce its subpoena. Duffy is ordered to pay the total award of $53,388.00.

The court adopts the first R&R's recommendation that Quest should not be sanctioned, and denies CTA's motion for sanctions against Quest. As Judge McShain determined, Jerger and Quest acted at Duffy's direction, and CTA provides no evidence that Quest acted **[*33]** independently of Duffy's instructions.

Last, the first R&R recommends that this court grant CTA's request for attorney's fees and costs in connection to its motion to compel. This court reviews this portion of the first R&R for clear error.[13] "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997)*.

Under *Rule 37(a)(5)*, if a court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." A court may not award fees "if the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." Fed. Civ. P. 37(a)(5)(A)(ii), (iii).

Judge McShain determined that plaintiff's opposition to the motion was not substantially justified. The court adopts the first and second R&Rs' recommendations. Plaintiff fails to demonstrate that the first R&R's finding that his opposition to the **[*34]** motion was not substantially justified is clear error. Regarding the recommended award amount, plaintiff objects to the inclusion of fees and costs for meet-and-confer conferences. However, the court overrules plaintiff's objection because it was not clear error for Judge McShain to include such fees in the award. Judge McShain determined that these conferences were a result of plaintiff's failure to produce relevant discovery, and that during these conferences, CTA argued for the second imaging and for plaintiff to produce archived copies of his website. The court thus concludes that Judge McShain's award of $21,367.00 in fees and costs, to be paid by Duffy, is appropriate, and orders Duffy to pay that sum.[14]

**CONCLUSION**

For the reasons stated above, the court adopts the first and second R&Rs' recommendations. Plaintiff's complaint is dismissed with prejudice, and plaintiff and Duffy are ordered to pay $75,175.42, split equally between them, as an award for CTA's motion for *Rule 37(e)* sanctions. Duffy is further ordered to pay $53,388.00 as a sanction under *§ 1927*, and $21,367.00 as an award for CTA's motion to compel.

**DATE: August 7, 2024**

**ENTER**:

/s/ Robert W. Gettleman

[13] Unlike sanctions under *§ 1927*, a magistrate judge has the authority to award fees and costs under *Rule 37* to a party that files a successful motion to compel. See *Cage v. Harper, No. 17-CV-7621, 2020 U.S. Dist. LEXIS 49081, 2020 WL 1248685, at *20 (N.D. Ill. Mar. 16, 2020)*.

[14] Even if the court were to review Judge McShain's award de novo, it would reach the same result based on the court's review of the record.

**Robert W. Gettleman**

**United States [*35] District Judge**

---

End of Document