# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC. and PHILIPS MEDICAL SYSTEMS DMC, GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>JOSE BUAN, GL LEADING TECHNOLOGIES, INC., KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD., KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD., SHERMAN JEN, and ALLISON HIBBARD,<br><br>Defendants. | ) | No. 19 CV 2648<br><br>Judge Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In our Memorandum Opinion and Order of July 13, 2023, we (1) granted the motion of Plaintiffs Philips Medical Systems (Cleveland), Inc. and Philips Medical Systems DMC, GmbH (together, "Philips") for a permanent injunction against Defendant GL Leading Technologies, Inc. ("GL Leading") and approved Plaintiffs' request for an award of attorneys' fees against GL Leading, subject to further briefing on the proper amount of fees; (2) awarded Plaintiffs $2,486,408.17 in attorneys' fees on account of their trade secret claims against Defendants Kunshan Yiyuan Medical Technology Co., Ltd. ("Yiyuan") and Kunshan GuoLi Electronic Technology Co., Ltd. ("GuoLi") (together, the "Kunshan Defendants"); and (3) concluded that civil contempt sanctions against the Kunshan Defendants were appropriate. (Mem. Op. & Order of July 13, 2023 (Dkt. No. 520).)

Today we consider four motions that relate to our July rulings:

- On July 19, 2023, GuoLi moved for reconsideration of our decision that contempt sanctions against it are appropriate. (Motion of Kunshan GuoLi Electronic Co., Ltd. for Reconsideration and to Vacate Decision Finding GuoLi in Contempt ("GuoLi's Mot. Recons.") (Dkt. No. 524).)

- On August 3, 2023, Plaintiffs moved for a specific award of attorneys' fees against GL Leading. (Motion for Accounting of Attorneys' Fees Against GL Leading Technologies, Inc. ("Pls.' Fee Mot.") (Dkt. Nos. 528, 529).)[1]

- On August 10, 2023, GuoLi moved to vacate the default judgment, permanent injunction, and award of attorneys' fees against it. (Motion of Kunshan GuoLi Electronic Co., Ltd. to Vacate Default Judgment, to Vacate the Injunction, and to Vacate and/or Reconsider Attorneys' Fees Award Against GuoLi ("GuoLi's Mot. Vacate") (Dkt. No. 532).)

- On September 6, 2023, GuoLi moved for leave to file a substitute memorandum in support of its motion to vacate. (Motion for Leave to File Substitute Memorandum of Kunshan GuoLi Electronic Co., Ltd. in Support of Omnibus Motion to Vacate Default Judgment, to Vacate the Injunction, and to Vacate and/or Reconsider Attorneys' Fees Award Against GuoLi and to Reset Briefing Schedule ("GuoLi's Mot. Leave File Substitute Mem.") (Dkt. No. 556).)

We outlined the factual and procedural background of this case at length in our Memorandum Opinion and Order of January 10, 2023, in which we granted in part Plaintiffs' motion for a permanent injunction and an award of attorneys' fees against the Kunshan Defendants, and we will not repeat it here except as necessary for purposes of discussion. (Mem. Op. & Order of Jan. 10, 2023 (Dkt. No. 484) at 2-6.)

---

[1] With respect to Plaintiffs' fee motion, we refer in this opinion to redacted information concerning Plaintiffs' counsel's staffing, hourly rates, and total fees as necessary to explain our reasoning, notwithstanding the redaction of this information from Plaintiffs' filings. Although counsel may wish to keep this information confidential, when they ask us to use it to award them attorneys' fees, it "must be revealed." *See Prolitec Inc. v. ScentAir Techs. Inc.*, No. 12-CV-0483-BHL, 2021 WL 270675, at *3 n.2 (E.D. Wis. Jan. 27, 2021) (citing *Baxter Int'l, Inc. v. Abbott Labs.,* 297 F.3d 544, 547 (7th Cir. 2002)).

## ANALYSIS

### I. Plaintiffs' Motion for an Award of Attorneys' Fees Against GL Leading

We previously held that under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*, Plaintiffs are entitled to reasonable attorneys' fees they incurred in connection with their trade secret claims against GL Leading. (Mem. Op. & Order of July 13, 2023 at 10.) The only question is the appropriate amount of fees. While we have "wide discretion" in making this determination, *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999), we must apply the correct standard, *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). Although we are treating Plaintiffs' request as unopposed,[2] we still must ensure that the requested fee award is reasonable and justify our conclusions. *See id.*

Plaintiffs seek an attorneys' fees award of $1,894,327.15 for 3,333.13 hours of legal work on their trade secret claims against GL Leading—3,190.83 hours performed by attorneys and paralegals at the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz") and 142.3 hours performed by an attorney and a paralegal at Steptoe & Johnson LLP ("Steptoe"). We begin the reasonableness analysis by computing a "lodestar": the product of the hours reasonably expended on the matter multiplied by a reasonable hourly rate. *Montanez*, 755 F.3d at 553; *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 351 (7th Cir. 2018). Although the lodestar

---

[2] Counsel for GL Leading was granted leave to withdraw from this litigation in December 2022. As a corporation, GL Leading cannot proceed unless represented by counsel. We gave GL Leading ample opportunity to retain replacement counsel, and it failed to do so; it has been unrepresented for more than a year. Furthermore, Plaintiffs state that GL Leading has been dissolved and all attempts to contact the persons listed with the Illinois Secretary of State in conjunction with the dissolution have been unsuccessful. (Pls.' Fee Mot. at 1 n.2.) It is therefore appropriate to treat Plaintiffs' fee motion as unopposed, so we excuse Plaintiffs from complying with the procedures for fee motions set forth in Local Rule 54.3.

yields a "presumptively reasonable" fee, we may adjust the fee based on factors not included in the computation, such as the complexity of the facts or legal issues involved, the degree of success obtained, and the public interest addressed by the litigation. *Montanez*, 755 F.3d at 553, 557.

First, we assess the reasonableness of Plaintiffs' counsel's rates. A reasonable hourly rate is based on the local market rate for the services rendered. *Id.* at 553; *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). Plaintiffs have the burden of proof on this issue. *See Baker v. Lindgren*, 856 F.3d 498, 504-05 (7th Cir. 2017). The "best evidence" of the local market rate "is the amount the attorney bills for similar work." *Vega v. Chi. Park Dist.*, 12 F.4th 696, 705 (7th Cir. 2021) (citation and internal punctuation omitted); *see also Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004) ("[T]he best evidence of the market value of legal services is what people will pay for it."); *City of Chi. v. Garland*, No. 18 C 6859, 2021 WL 1676387, at *6 (N.D. Ill. Apr. 28, 2021) (approving fees where counsel "established their market rates based on the actual billable rates charged to and paid by firm clients").

Plaintiffs present evidence that the maximum hourly rates charged by various members of their legal team during their litigation against GL Leading ranged from $205.00 to $681.00. (Pls.' Fee Mot. at 5; Declaration of Adam P. Samansky ("Samansky Decl.") (Dkt. Nos. 528-1, 529-1) ¶ 2; Samansky Decl., Ex. A (Dkt. Nos. 528-2, 529-2); Declaration of Jeremy S. Goldkind ("Goldkind Decl.") (Dkt. Nos. 528-3, 529-3) ¶ 2; Goldkind Decl., Ex. A (Dkt. Nos. 528-4, 529-4).) The billing partners for Mintz and Steptoe, as well as Plaintiffs' in-house Senior Legal Counsel, submitted declarations disclosing their team's hourly rates, stating that these rates were billed and paid in full, and attesting that the rates are similar to what the firms customarily charge other clients (and were in some instances lower). (*See generally* Samansky Decl.; Goldkind Decl.; Declaration of Michael Lapin (Dkt. Nos. 528-5, 529-5).) The attorneys' and paralegals' billing rates were

commensurate with their respective experience. (Samansky Decl. ¶¶ 2-3, 6-12; Goldkind Decl. ¶¶ 2-3, 6.) Plaintiffs have demonstrated that the rates charged by counsel were comparable to or below those charged to and paid by clients in other trade secret disputes and those found to be reasonable in complex trade secret disputes between global competitors. (Pls.' Fee Mot. at 5-7; Samansky Decl. ¶¶ 4-5; Goldkind Decl. ¶¶ 4-5.) The reasonableness of counsel's rates is further supported as within the 75th percentile of local rates as reported by the American Intellectual Property Law Association—an appropriate range given the complexity, duration, and international scope of this case. (Mem. Op. & Order of July 13, 2023 at 13 (citing Dkt. No. 489-2).) Plaintiffs have met their burden of showing that their counsel's hourly rates are reasonable.

We turn to the second factor in the lodestar analysis: the number of hours expended on the claims against GL Leading. *See Montanez*, 755 F.3d at 553. Because GL Leading need pay only for time *reasonably* spent by Plaintiffs' counsel on these claims, we must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (citation and internal punctuation omitted). We must disallow hours spent on tasks that were easily delegable to non-professional assistance. *Spegon*, 175 F.3d at 553; *Nichols v. Ill. Dep't of Transp.*, No. 12 C 1789, 2019 WL 157915, at *6 (N.D. Ill. Jan. 10, 2019), *aff'd*, 4 F.4th 437 (7th Cir. 2021); *Smith v. Rosebud Farm, Inc.*, No. 11 C 9147, 2018 WL 4030591, at *7 (N.D. Ill. Aug. 23, 2018) (time spent on clerical tasks, such as electronically filing documents and logging case events into an internal case tracking system, is not compensable).

Plaintiffs are seeking fees for a total of 3,333.13 hours, including 3,190.83 hours for Mintz timekeepers and 142.3 hours for Steptoe timekeepers on tasks related to the claims against GL Leading. (Pls.' Fee Mot. at 7.) This figure strikes us as not unreasonable considering the length and complexity of the litigation. This case has involved over 600 docket entries, including

numerous discovery battles between GL Leading and Plaintiffs that led to extensive motion practice and thereby increased the work required of Plaintiffs' counsel. Counsel state that they have excluded from the instant motion time spent on tasks related to defendants other than GL Leading and time already compensated by our award of fees against the Kunshan Defendants so that there is no double recovery. (Samansky Decl. ¶¶ 20-21; Goldkind Decl. ¶ 12.) For example, if 75 percent of a time entry was previously allocated to the Kunshan Defendants, on the current motion no more than 25 percent of that entry is sought from GL Leading. (Samansky Decl. ¶ 21.) Counsel further state that during their contemporaneous review as the litigation has progressed, they have exercised billing judgment and sought to minimize the amount of fees by reducing or eliminating certain charges where appropriate. (Samansky Decl. ¶ 19; Goldkind Decl. ¶ 11.) Accordingly, we find that the number of hours billed by Plaintiffs' counsel on the claims against GL Leading is not excessive or redundant. Our review of the supporting billing records submitted by Plaintiffs' counsel confirms this conclusion. The records are detailed and clearly exceed the threshold of "specifying who did what and at what cost." *Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, No. 17 C 8872, 2020 WL 2098059, at *3 (N.D. Ill. May 1, 2020), *aff'd*, 989 F.3d 556 (7th Cir. 2021). The bulk of the billing records bear color-coded time entries that facilitated our review; entries as to which any portion was previously requested and awarded against the Kunshan Defendants appear in purple, and entries as to which no portion was previously requested appear in green. (Samansky Decl. ¶ 21 & Ex. A.)

Our review of the records has, however, disclosed a handful of entries for work that is of an administrative or clerical nature and thus unrecoverable. Steptoe's records include entries totaling 7.8 hours for paralegal work that is clerical in nature (preparing courtesy copies, electronically filing and serving documents, and creating calendar notifications). (Goldkind Decl.,

Ex. A.) These hours were billed at hourly rates ranging from $160.00 to $205.00 during the period from 2019 to 2023. (*Id.* at 1-3.) The fees associated with the 7.8 hours of clerical work total $1,348.00, so we will reduce the lodestar by that amount, to $1,892,979.15 ($1,894,327.15 - $1,348.00).

The resulting lodestar calculation of $1,892,979.15 is presumptively reasonable. *See Montanez*, 755 F.3d at 553. We may adjust the lodestar, but only in "limited circumstances," *Johnson*, 668 F.3d at 929, and we see no reason to do so here. GL Leading has not responded to Plaintiffs' filings and appears to have abandoned the litigation. Plaintiffs have not requested an upward adjustment of the lodestar. Nor will we decrease the lodestar, since Plaintiffs have been successful on all of their claims against GL Leading (we have entered a default judgment as to liability), and the public interest is served by holding those who misappropriate trade secrets accountable. (Mem. Op. & Order of July 13, 2023 at 15.) Therefore, we conclude that Plaintiffs are entitled to recover $1,892,979.15 in attorneys' fees from GL Leading.

## II. GuoLi's Motion for Reconsideration of Our Contempt Ruling

GuoLi moves under Federal Rule of Civil Procedure 54(b) for reconsideration of our ruling that civil contempt sanctions against it are appropriate. Rule 54(b) provides that an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment[.]"). We entered a default judgment against GuoLi and Yiyuan on May 26, 2022, (Dkt. No. 419), but we have not yet adjudicated all the claims and all the parties' rights and liabilities in this case, so Rule 54(b) applies.

"Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was clearly erroneous and would work a manifest injustice." *Mahwikizi v. Uber Techs., Inc.*, No. 22 C 3680, 2023 WL 4625519, at *1 (N.D. Ill. July 19, 2023) (citation and internal punctuation omitted). Rule 54(b) motions to reconsider are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e), under which a movant must establish a manifest error of law or fact or present newly discovered evidence. *Id.* "A party moving for reconsideration bears a heavy burden and its motion must be supported by a showing of extraordinary circumstances." *Duminie v. Ne. Reg'l Commuter R.R.*, No. 17 C 3030, 2020 WL 4505831, at *2 (N.D. Ill. Aug. 5, 2020).

GuoLi first argues that we should vacate our order holding it in contempt because our observation that the Kunshan Defendants had not hired replacement counsel was incorrect as to GuoLi, and we issued our order before GuoLi had an opportunity to respond to Plaintiffs' motion. (GuoLi's Mot. Recons. at 8-9.) It is true that after GuoLi's counsel were granted leave to withdraw after having stated that GuoLi did not intend to find substitute counsel, (Dkt. No. 410), and it was unrepresented in this case for over a year, substitute counsel entered an appearance for GuoLi on June 19, 2023. But GuoLi did nothing at that juncture to convey that it had changed its position and now wished to obey the Court's orders and begin participating in this litigation again, so it was not deprived of an opportunity to respond to plaintiffs' contempt motion.

To recap, after the Kunshan Defendants abandoned this litigation, we adopted Judge Kim's Report and Recommendation recommending that we enter a default judgment against them as a sanction for refusing to obey judicial orders, and we entered that default judgment. (Dkt. No. 419.) Subsequently, we entered a Permanent Injunction Order against the Kunshan Defendants. (Dkt. Nos. 484, 503.) On May 18, 2023, Plaintiffs filed their contempt motion against the Kunshan

Defendants, and their certificate of service indicates that they provided notice by email that day to the Defendants' principals. (Pls.' Mot. Contempt (Dkt. No. 512) at 16.) GuoLi does not dispute that it received actual notice of the motion. We did not set a briefing schedule because the Kunshan Defendants had not participated in this case since their counsel were granted leave to withdraw in May 2022, (Dkt. No. 420), after having informed us that the Defendants had decided to flout Magistrate Judge Kim's multiple orders to produce discovery and did not intend to find substitute counsel, (Dkt. Nos. 397, 410). A month after Plaintiffs moved for contempt, on June 19, 2023, new counsel for GuoLi filed an appearance on the docket, but took no further action whatsoever on the case docket. Plaintiffs' contempt motion remained unopposed until we entered our memorandum opinion and order over three weeks later, on July 13. It was only *thereafter*—eight weeks from the filing of Plaintiffs' motion—that GuoLi resurfaced.

If, after its long absence from this case, GuoLi truly desired to begin participating in the case again and respond to Plaintiffs' motion, it had several weeks in which to do so. (Indeed, GuoLi opted to act quickly after our ruling was issued, filing its motion for reconsideration less than a week later.) GuoLi makes much of the fact that no briefing schedule was set on the motion, but the lack of a briefing schedule did not impede its ability to file a response, seek leave to file a response, or, at the very least, take the easy and prudent step of notifying the Court of any such intention. GuoLi also attempts to blame its lack of diligence on someone else, asserting that two weeks prior to its counsel's appearance, on June 5, 2023, counsel attempted to contact "the Court's clerk" (to which it alternatively refers as "the clerk's office") to "determine the Court's procedure" on the motion but "did not receive a call back." (GuoLi's Mot. Recons. at 9; GuoLi's Reply Supp. Mot. Recons. (Dkt. No. 555) at 5.)

GuoLi provides no details about this call and no reason for its lack of follow-up action. Nevertheless, our web page then stated and now states that "[a]ll communications" with the Court "must be made in the form of a motion, brief, or a status report, served on opposing counsel." *See* https://www.ilnd.uscourts.gov/judge-info.aspx?IuUaWzNcEoPZOGhuSC8vaA== (last visited Jan. 17, 2024). It is not the Court's responsibility to divine an intent that a party itself has not made known. GuoLi had ample opportunity to properly communicate with the Court in the eight-week span between the motion and our ruling, and it offers no explanation for its failure to do so.[3] GuoLi's choice to wait and see does not mean it was denied an opportunity to respond to Plaintiffs' motion. In 2022, Magistrate Judge Kim admonished the Kunshan Defendants about such tactics when denying one of their previous motions for reconsideration: "To be sure, this court disfavors a trial-and-error approach to litigation." (Mem. Op. & Order of Mar. 1, 2022 (Dkt. No. 386) at 5.)

In any event, the status of GuoLi's representation by counsel was not a basis for our contempt ruling, and the lack of a briefing schedule did not prejudice GuoLi because the substantive argument it now makes is without merit. There was clear and convincing evidence that the Kunshan Defendants violated our permanent injunction, of which they had notice, by continuing to sell and advertise knockoff products using Plaintiffs' trade secrets and retaining and failing to turn over documents relating to those trade secrets. (Mem. Op. & Order of July 13, 2023 at 17-18.) In addition, a March 2023 email to Plaintiffs from Yiyuan's Chairman, Lanyong Zhang (the "Zhang Email"), demonstrates that the Kunshan Defendants willfully ignored our injunction order; they took the position that they were not required to comply with the order and even

[3] GuoLi also states that its counsel contacted Plaintiffs' counsel on July 11, 2023 "to request a briefing schedule" on the contempt motion. (GuoLi's Mot. Recons. at 9.) Putting aside the dilatory nature of this request, that was a curious course of action on GuoLi's part. The Court, not counsel, sets briefing schedules.

threatened retaliation against Plaintiffs for attempting to hold them accountable. (*Id.* at 19-20.) We concluded that an order freezing the Kunshan Defendants' assets is an appropriate remedy to induce compliance with the permanent injunction, given the fact that the Kunshan Defendants operate overseas and have indicated that they believe they are not subject to this court's jurisdiction.[4] (*Id.* at 20-21.)

GuoLi contends that it "could not have violated the injunction" by making or selling the products at issue because there is "evidence" that "GuoLi spun off Yiyuan in 2018" and GuoLi "has not been in the business of medical X-ray tube since then." (GuoLi's Mot. Recons. at 4-5, 10.) In support, GuoLi relies on the January 2022 Declaration of Yiyuan's Deputy General Manager, Feng Zhou, and the May 2020 and January 2022 Declarations of GuoLi's General Manager, Hao Huang, who stated that after May 2018, GuoLi "transferred" or "spun off" its "medical X-ray vacuum tube business" to Yiyuan. Huang also stated that GuoLi "transferred" to Yiyuan "technical documents related to any X-ray technology" and "has had no technical documents in its possession" created after May 2018. (Declaration of Feng Zhou (Dkt. No. 367-6) ¶ 4; Declaration of Hao Huang (Dkt. No. 367-1) ¶¶ 5, 7; Declaration of Hao Huang (Dkt. No. 158-3) ¶ 7.)

These vague statements in the Zhou and Huang Declarations do not demonstrate that it would have been impossible for GuoLi to have violated the injunction, nor do they have the talismanic significance GuoLi ascribes to them. The phrases "transfer" and "spin off" are not legal terms. They do not describe the relationship between GuoLi and Yiyuan or their ownership or

---

[4] After we entered our Memorandum Opinion and Order so holding, Plaintiffs submitted a proposed contempt order. Prior to the Court's entry of a contempt order, GuoLi filed its motion for reconsideration. Therefore, we entered the contempt order against Yiyuan only and set a briefing schedule on GuoLi's motion.

control with any precision or refute the evidence submitted by Plaintiffs. And, as Plaintiffs observed in subsequent discovery disputes, their outstanding discovery requests to GuoLi were not limited to "technical documents." (*E.g.*, Dkt. No. 372 at 24.)

Furthermore, the Declarations predate the events that led to the default judgment against the Kunshan Defendants, which GuoLi avoids discussing in its motion. In a series of discovery rulings, Magistrate Judge Kim held that Plaintiffs were entitled to discovery that would establish the Kunshan Defendants' corporate structure and the nature of their relationship, and he repeatedly ordered the Kunshan Defendants to produce those documents. (*See, e.g.*, Dkt. Nos. 377, 385, 400.) They refused to comply with those orders. When the Kunshan Defendants' counsel then moved for leave to withdraw, counsel told this Court that the Defendants were "not only . . . refusing to comply with Court orders" but were "similarly refusing the advice of counsel to comply with those orders." (Dkt. No. 410 at 2.) Counsel also stated that "[a]lthough Plaintiffs recently served Defense Counsel with a myriad of deposition notices, including for employees of the China-based Defendants, they are not going to present themselves voluntarily for depositions[.]" (*Id.* at 6.) Those deposition notices included notices for the Declarants on whose statements GuoLi is now relying, Zhou and Huang. (Dkt. Nos. 541-1, 541-2.)

When Judge Kim issued his Order and Report and Recommendation recommending entry of the default judgment, he explained that the Kunshan Defendants had "produced neither the class of documents they agreed to produce nor the class of documents this court ordered them to produce," and without that compliance, Plaintiffs would be "denied the necessary foundational information to pursue other meaningful and well-tailored discovery." (Order & R & R. of May 10, 2022 (Dkt. No. 416) at 1-2.) Judge Kim further stated that Plaintiffs would be "entitled to all reasonable inferences to be drawn in their favor from the Kunshan Defendants' failure to produce

[the] documents." (*Id.* at 2.) Given GuoLi's willful disobedience of multiple court orders and its refusal to cooperate in discovery, including in the production of documents that would be relevant to show the relationship between GuoLi and Yiyuan and their corporate structure, we preclude GuoLi from relying on the Zhou and Huang Declarations for purposes of the current motion.

As a result of the default judgment against GuoLi and Yiyuan, (Dkt. Nos. 416, 419), all of Plaintiffs' factual allegations in the Second Amended Complaint (the operative complaint at the relevant time) are treated as true. *See Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Wehrs v. Wells*, 688 F.3d 886, 888 (7th Cir. 2012). Therefore, it is deemed true, and GuoLi may not contest, that Yiyuan is a subsidiary of GuoLi; the companies share common directors and management, information technology, electronic data storage, and communication infrastructure; and that the two companies have been acting in concert (along with GL Leading) with respect to the unlawful use of Plaintiffs' trade secrets and confidential information in the development and commercialization of at least the GLA2153 X-ray tube. (Second Amended Complaint ("SAC") (Dkt. No. 92) ¶¶ 108-11.) That is the same knockoff X-ray tube product that the Kunshan Defendants were permanently enjoined from manufacturing or selling and that Plaintiffs produced evidence that they were continuing to manufacture and sell in violation of the injunction.

As we indicated in our contempt order, the Zhang Email is evidence that both of the Kunshan Defendants, who litigated this case in lockstep and were simultaneously represented by the same counsel until March 2022 (and were then simultaneously unrepresented for over a year), continued to work in concert to ignore the injunction and took the position that they were not

required to comply with it.[5] After Plaintiffs' counsel emailed a copy of the permanent injunction to both Zhang and GuoLi's Chairman, Jianping Yin, Zhang responded with the aforementioned email. (Dkt. No. 512-3.) In his email, which was cc'd to Yin, Zhang set out several arguments in an attempt to justify the Kunshan Defendants' defiance of court orders. He purported to speak for both GuoLi and Yiyuan, stating that "Kunshan GuoLi Electronic Technology Co. and Kunshan Yiyuan Medical Technology Co. withdrew from this litigation in the United States in March 2022; "[o]beying the court's discovery orders . . . would force *us* to violate Chinese law"; "GuoLi and Yiyuan" dispute that "the Northern District Court of Illinois has personal jurisdiction over *us*"; and "GuoLi and Yiyuan, as legally operating companies in China, will abide by the outcome of the Chinese court's order" in a similar suit pending in China. (*Id.* (emphasis added).) On behalf of *both* entities, Zhang also threatened to sue Plaintiffs and their counsel: "If you continue to disseminate information about the U.S. litigation, including the injunction, to GuoLi and Yiyuan's customers and stakeholders in China, *we* will consider suing Philips and you in the Chinese courts for alleged commercial disparagement." (*Id.* (emphasis added).) GuoLi contends that "[n]o evidence supports Plaintiffs' argument that the email was sent 'on behalf of both Kunshan Defendants,'" (GuoLi's Reply Supp. Mot. Recons. at 3), but the text of the email itself, together with the fact that Zhang carbon copied GuoLi's Chairman, amply supports that conclusion.

In sum, GuoLi has not demonstrated that we made a manifest error of law or fact that requires us to reconsider our contempt ruling. Accordingly, we will enter the same contempt order against GuoLi that was entered against Yiyuan. (Dkt. No. 527.)

---

[5] In its reply brief, GuoLi argues that the Zhang Email, which we discussed in our contempt ruling, is "inadmissible hearsay for which there is no exception." (GuoLi's Reply Supp. Mot. Recons. at 3.) The argument is waived for two reasons: it is undeveloped, and GuoLi raised it for the first time in its reply brief. *See Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 464 (7th Cir. 2021). GuoLi's due process argument, raised for the first time in its reply brief, is also waived.

## III. GuoLi's Motions to Vacate and for Leave to File a Substitute Memorandum

GuoLi moves to vacate the default judgment (Dkt. No. 419), the permanent injunction (Dkt. Nos. 484, 503), and the award of attorneys' fees (Dkt. Nos. 484, 520) against it. (GuoLi's Mot. Vacate at 1; GuoLi's Notice of Correction (Dkt. No. 584) at 1-2.)

### A. Motion for Leave to File a Substitute Memorandum

As a preliminary matter, we must take up GuoLi's motion for leave to file a substitute memorandum in support of its motion to vacate. GuoLi filed its motion to vacate and supporting memorandum on August 10, 2023. Nearly a month later and the day before the deadline for Plaintiffs' response to the motion to vacate, GuoLi filed a motion for leave to file a substitute memorandum. GuoLi says that it seeks "[t]o address arguments" contained in a letter pursuant to Federal Rule of Civil Procedure 11(c) that Plaintiffs had sent GuoLi's counsel nearly three weeks earlier, on August 17, 2023.[6] (GuoLi's Mot. Leave File Substitute Mem. at 1.)

GuoLi does not explain in its motion why it waited three weeks after receiving Plaintiffs' letter to seek to file a substitute memorandum, nor does it discuss the arguments contained in Plaintiffs' letter or attach the letter to its motion. GuoLi's argument for substitution is therefore vague and undeveloped, and we could deny the motion on this basis. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (failure to make a cogent argument for relief in a motion is reason enough to deny it, and parties should not assume that any motion will be granted as a routine matter). In the interest of completeness, however, we will discuss the arguments GuoLi presents in its reply brief in support of its motion for leave to file a substitute memorandum.

---

[6] Rule 11(c) provides that prior to filing a motion for sanctions, a party must notify the opposing party to allow that party the opportunity to "withdraw[] or appropriately correct[]" the challenged filing. Fed. R. Civ. P. 11(c)(2).

GuoLi submits a proposed substitute memorandum with highlighted changes. (GuoLi's Substitute Mem. Supp. Mot. Vacate (Dkt. No. 556-2).) The primary change GuoLi seeks is the addition of a ground for relief with respect to its request to vacate the default judgment—Federal Rule of Civil Procedure 55(c). In GuoLi's reply brief (and only in its reply brief), GuoLi asserts that in their Rule 11 letter, Plaintiffs "challenged GuoLi's reliance on Rule 60(b) in seeking to vacate the Court's default judgment" and that GuoLi's "substitute memorandum cites an additional ground (Rule 55(c)) to vacate a non-final judgment, which has a less strict standard than vacating a final default judgment under Rule 60(b) (which GuoLi satisfied in its original brief)." (GuoLi's Reply Supp. Mot. Leave File Substitute Mem. (Dkt. No. 575) at 2.) GuoLi further argues that "Seventh Circuit case law mandates that GuoLi should be permitted to file its substitute memorandum," citing *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 885 (7th Cir. 2017). (*Id.*)

We disagree. *PNC Bank* stands for the proposition that compliance with Rule 11(c)(2) "requires the opportunity to withdraw or correct [a] challenged [filing] within 21 days without imposition of sanctions." *Id.* at 888. GuoLi does not propose to "withdraw or correct" its reliance on Rule 60; it merely augments its original brief by adding Rule 55 as a ground for relief. By its plain terms, Rule 11 is not a vehicle for belatedly supplementing, as opposed to withdrawing or correcting, a filing. Nevertheless, since in any event we must apply the Rule 55 standard to GuoLi's motion to vacate the default judgment and permanent injunction, as discussed below, we will permit GuoLi to supplement its memorandum with Rule 55 argument.

GuoLi also contends in its reply brief that its proposed substitute memorandum adds a "clarification." (GuoLi's Reply Supp. Mot. Leave File Substitute Mem. at 4.) In its original brief, GuoLi argued that "[b]ecause GuoLi did not have responsive documents in its possession at the

time the Magistrate Judge ordered their production, GuoLi could not have refused to comply with those orders." (GuoLi's Mem. Supp. Mot. Vacate (Dkt. No. 536) at 9-10.) In its substitute memorandum, GuoLi proposes to modify this statement as follows: "Because GuoLi did not have responsive documents in its possession *relating to Philips['s] Trade Secrets claim* at the time the Magistrate Judge ordered their production, GuoLi could not have refused to comply with those orders." (Dkt. No. 556-2 at 10 (emphasis added); *see also* Dkt. No. 556-2 at 9-11, 22-23, 31.) GuoLi does not call this qualification a "correction," but, as Plaintiffs point out, it appears to be a concession that GuoLi's previous repeated assertion that it had "no documents" to produce in response to Judge Kim's orders, (GuoLi's Mem. Supp. Mot. Vacate at 10, 14) was not correct; the documents GuoLi now says it did not possess were those "relating to Philips's Trade Secrets Claim," however that phrase may be defined by GuoLi.

We will permit GuoLi to make this correction where the qualification is needed, but the change undercuts GuoLi's assertion that it did not violate the court's discovery orders. Plaintiffs point out that even with the proposed revision, there can be no dispute that GuoLi possessed at least some responsive documents but refused to produce any. GuoLi's reply is telling. On the one hand, GuoLi states that its "clarification in no way constitutes admissions of anything." (GuoLi's Reply Supp. Mot. Leave File Substitute Mem. at 4.) At the same time, it also appears to concede that it did not produce certain documents that relate to its "corporate structure." (*Id.*) GuoLi attempts to justify its refusal to produce documents by arguing that the material was "publicly referenced" and "did not relate to Philips' Trade Secrets Claim but, rather, as the Magistrate noted[] the 'personal jurisdiction' issue." (*Id.*) GuoLi continues: "Even if the corporate documents . . . were marginally relevant to trade secret claims, GuoLi's point is that the failure to produce corporate structure documents (as opposed to documents relating to alleged trade secrets) should

not have resulted in the entry of a default judgment, especially since they were publicly referenced in GuoLi's IPO filing." (*Id.* at 4-5.) Thus, while GuoLi previously argued that it did not violate the court's discovery orders, it now seems to argue that even if it did, the violation was not egregious enough to warrant entry of default judgment. But GuoLi cites no authority for the proposition that a document that is "publicly referenced," whatever that phrase might mean, need not be produced in discovery. We also reject GuoLi's overly narrow view of relevance.

GuoLi's proposed substitute memorandum also contains additions on pages 6-7, 24, 27, and 28 that do not relate to Rule 55 or the qualification regarding the documents GuoLi possessed. GuoLi does not explain the need for those proposed changes, and they appear to supplement the original brief rather than correct it. Accordingly, GuoLi's motion for leave to file a substitute memorandum is granted as to (1) the Rule 55 material (which appears on pages 1 and 13 through 15, as well as the entirety of Section D on pages 22 and 23) and (2) the qualifications on pages 9, 10, 11, 22, 23, and 31 regarding the documents it possessed, but it is denied as to the remaining proposed additions. GuoLi need not file a revised substitute memorandum; we have considered the changes we permitted and disregarded the remaining changes.

### B. Motion to Vacate

GuoLi seeks to vacate the default judgment and permanent injunction under Federal Rule of Civil Procedure 60(b)(1) and (b)(4) and, in its substitute memorandum, Federal Rule of Civil Procedure 55(c), and to vacate the attorneys' fees award under Federal Rule of Civil Procedure 54(b) or 59(e). (GuoLi's Substitute Mem. Supp. Mot. Vacate at 13-15.)

#### 1. Default Judgment and Permanent Injunction

Rule 60(b) allows a court to "relieve a party . . . from a final judgment" in a number of instances, including "mistake, inadvertence, surprise, or excusable neglect" or when the judgment

is void. Fed. R. Civ. P. 60(b)(1), (4). GuoLi asserts that the default judgment was premised on mistake and void for lack of personal jurisdiction and further that "[b]ecause the default judgment should be vacated, the permanent injunction based on it should also be vacated." (GuoLi's Substitute Mem. Supp. Mot. Vacate at 1, 11, 15, 17.)

Rule 60(b) applies only when a final judgment is entered. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020). GuoLi contends in its substitute memorandum that "[n]o final judgments have been entered in this case," but it continues to seek relief under Rule 60(b) (as well as Rule 55(c)). (GuoLi's Substitute Mem. Supp. Mot. Vacate at 1.) Plaintiffs do not squarely address the issue. The default judgment and permanent injunction are not final judgments to which Rule 60 applies. We entered default judgment against GuoLi as to liability only, and Plaintiffs intend to seek a trial on damages, (Dkt. No. 490 at 1 n.2). The Rule 55(c) good-cause standard therefore applies. *See Arwa Chiropractic*, 961 F.3d at 948.

While the Rule 55(c) good-cause standard is less strictly applied than Rule 60(b)'s standard, *id.*, it still requires a movant to show (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's claims. *Id.* (citing *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1401 (7th Cir. 1993)); *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014). We need not discuss the third prong because the first and second prongs are dispositive.

GuoLi contends that there was good cause for its default for a number of reasons: we lack personal jurisdiction over it; Plaintiffs have sued GuoLi in China and seek to use discovery from this case in the case pending in China; GuoLi "never sold any of the accused products and was out of the medical X-ray tube business for over a year" before it was sued; it had no documents to produce "relating to" Plaintiffs' trade secret claims at the time Judge Kim entered his order

recommending entry of default judgment; and the "expense of this litigation." (GuoLi's Substitute Mem. Supp. Mot. Vacate at 16, 22.) GuoLi cites no supporting authority, and none of these arguments purports to address its inaction.[7] GuoLi also says that courts in the Seventh Circuit "have generally set aside an entry of default in the absence of willfulness," (GuoLi's Reply Supp. Mot. Vacate at 14), but, as discussed above and as we have repeatedly observed, GuoLi willfully ignored discovery orders, stopped participating in this litigation in early 2022, and continued to ignore this case for over a year. Its insistence that it did not act willfully runs contrary to reality. It fails to show good cause. *See Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003) (a district court is "justified in entering default against a party and refusing to vacate the default if the defaulting party has exhibited a willful refusal to litigate the case properly").

GuoLi also fails to demonstrate quick action.[8] GuoLi declares in conclusory fashion that it "moved to vacate the default promptly after this Court entered the final injunction against it" but develops no argument on this point whatsoever. (GuoLi's Substitute Mem. Supp. Mot. Vacate at 16.) Its action to vacate the default judgment is nonetheless measured from the entry of the default judgment, not from the permanent injunction. *See Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 861 (7th Cir. 2016). The default judgment was entered on May 26, 2022; GuoLi did not file its motion to vacate until August 10, 2023, over fourteen months later.

In its reply brief, GuoLi argues that it meets the "quick action" prong when "using the time frames under Rule 60(b) as a guide," citing *Trade Well* for the proposition that the "'quick action'

---

7 Some of these contentions, including the personal-jurisdiction argument, are merely a rehash of those we previously rejected.

8 Furthermore, GuoLi never responded in the first place to Plaintiffs' motion for entry of default judgment or Plaintiffs' motion for a permanent injunction, nor did it object to Judge Kim's order recommending that we enter a default judgment.

factor varies from case to case depending on the circumstances of the case." (GuoLi's Reply Supp. Mot. Vacate (Dkt. No. 587) at 15.)[9] But GuoLi does not explain what circumstances justify its delay, and Rule 60(b)'s time parameters are of no help. GuoLi's motion to vacate was filed outside the rule's one-year limit for motions under subsections (b)(1), (2), and (3), and outside the overarching "reasonable time" standard in any event. GuoLi develops no argument as to how a fourteen-month delay can be considered reasonable. GuoLi's reliance on *Trade Well* is also unavailing; in that case, the Seventh Circuit upheld the district court's determination that five months did not meet the standard, especially given that the defendant had timely notice of the default. GuoLi does not contest that it had timely notice. Fourteen months was not quick action (nor, for that matter, was the six months that elapsed before GuoLi challenged the entry of the permanent injunction deriving from the default judgment). *See Acosta v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557, 561 (7th Cir. 2017) (a two- to three-month delay after entry of default judgment was "not quick"); *Oku v. Oyster Gaston5, LLC*, No. 19 C 7673, 2020 WL 5763644, at *2-3 (N.D. Ill. Sept. 28, 2020) (a four-week delay was not quick action where prompt notice was undisputed); *Sulda v. Shippingquest.com, LLC*, No. 17 C 2350, 2018 WL 11197748, at *1 n.2 (N.D. Ill. Jan. 29, 2018) (a two-month delay was not quick action); *Sharma v. Big Limos MFG, LLC*, No. 17 C 21, 2017 WL 2779798, at *6 (N.D. Ill. June 27, 2017) (a two-month delay was not quick action).

GuoLi fails to demonstrate good cause or quick action. Its motion to vacate the default judgment and permanent injunction is denied.

---

[9] In its reply brief, GuoLi also argues that its motion to vacate the default judgment is timely under Rule 54(b), which imposes no fixed deadline; it also invokes Rule 54(b) for the first time as a basis for relief from the permanent injunction. (GuoLi's Reply Supp. Mot. Vacate at 1, 23.) These arguments are waived for GuoLi's failure to assert them in its opening memorandum, original or substitute. *See Vesey*, 999 F.3d at 464. GuoLi's briefing has presented a continuously moving target.

### B. Attorneys' Fees Award

GuoLi moves to vacate the award of attorneys' fees against it under Federal Rule of Civil Procedure "54(b) and/or 59." (GuoLi's Substitute Mem. Supp. Mot. Vacate at 1.) Motions to reconsider under Rule 54(b) or Rule 59(e) are governed by largely the same standard: a movant must clearly establish that the court committed a "manifest error of law or fact" or that there is "newly discovered evidence" that would affect the prior ruling. *Bedford v. DeWitt*, No. 19 C 01, 2023 WL 6312107, at *2 (N.D. Ill. Sept. 28, 2023) (citing *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954-55 (7th Cir. 2013)). Such motions are granted in only "rare circumstances," and the movant bears a "heavy burden." *Id.*

Plaintiffs assert that GuoLi waived any challenge to our fee orders by previously failing to oppose their fee motion or accounting of fees. We will assume, without deciding, that waiver does not bar GuoLi's challenge.[10] We awarded Plaintiffs $2,486,408.17 in attorneys' fees incurred in connection with their trade secret claims against the Kunshan Defendants, under the DTSA and ITSA. (Mem. Op. & Order of Jan. 10, 2023 at 22-23; Mem. Op. & Order of July 13, 2023 at 10-15.) Both statutes permit an award of reasonable attorneys' fees to the prevailing party where a trade secret has been willfully and maliciously misappropriated. 18 U.S.C. § 1836(b)(3)(D); 765 Ill. Comp. Stat. 1065/5(iii). GuoLi does not rely on newly discovered evidence, so it is entitled to relief only if it can demonstrate that our fee rulings constituted manifest error. "A manifest error occurs when the district court commits a wholesale disregard, misapplication, or failure to

---

[10] We will observe, however, that GuoLi was dilatory in addressing our ruling in January 2023 that a fee award was warranted under the DTSA and ITSA. GuoLi did not seek to vacate that ruling until seven months later, about a month after we awarded Plaintiffs a specific amount of attorneys' fees. It offers no explanation for that delay.

recognize controlling precedent." *Stragapede v. City of Evanston*, 865 F.3d 861, 868 (7th Cir. 2017) (citation and internal punctuation omitted).

GuoLi first argues that we should not have awarded Plaintiffs any fees under the DTSA because there were no facts in the Second Amended Complaint that support a conclusion that GuoLi's conduct was willful and malicious, and Plaintiffs did not provide an "affidavit of facts" that demonstrated such conduct. (GuoLi's Substitute Mem. Supp. Mot. Vacate at 2, 24.) We are unpersuaded. Plaintiffs allege that GuoLi and Yiyuan "'knowingly, willfully, and maliciously misappropriated the Philips Trade Secrets in a conscious disregard for [Plaintiffs'] rights [and] in a deliberate attempt to injure [Plaintiffs'] business and improve' their own business." (Mem. Op. & Order of Jan. 10, 2023 at 22 (quoting SAC ¶¶ 179, 197).) This allegation is accepted as true as a result of the default judgment. *See Arwa Chiropractic*, 961 F.3d at 948. GuoLi's contention that the allegation is not well-pleaded is belied by paragraphs 101 through 161 of the Second Amended Complaint, which set forth the Kunshan Defendants' specific acts and permit the inference that GuoLi acted willfully and maliciously in misappropriating Plaintiffs' trade secrets. (SAC ¶¶ 101-161.) Therefore, there was no need for Plaintiffs to submit an affidavit regarding their factual allegations. Plaintiffs provided proper support for their motion by submitting detailed affidavits as to the amount of reasonable attorneys' fees incurred on their claims against the Kunshan Defendants.

Next, GuoLi asserts that we should have held a hearing "to determine facts to support the amount of fees, if any, that should be assessed against GuoLi, as opposed to Yiyuan." (GuoLi's Substitute Mem. Supp. Mot. Vacate at 24.) The decisions GuoLi cites do not support this proposition, and there was no basis for differentiating between GuoLi and Yiyuan; the Kunshan Defendants were equally responsible for the attorneys' fees Plaintiffs incurred on their claims

against them. As plaintiffs correctly point out, (Pls.' Opp'n GuoLi's Mot. Vacate (Dkt. No. 562) at 39), GuoLi and Yiyuan acted in lockstep in this proceeding prior to the filing of Plaintiffs' fee motion, through their motions, responses, objections, agreements, changes in counsel, and their ultimate refusal to produce discovery or further participate in the litigation.

GuoLi also maintains that even if we were to reject its argument that Plaintiffs were not entitled to any fee award, "the amount of fees should be substantially reduced since it is based on block billing that does not distinguish between work performed as to GuoLi and/or Yiyuan or other parties." (GuoLi's Substitute Mem. Supp. Mot. Vacate at 25.) We stated in our previous opinion that the fact that Plaintiffs "block billed" certain time entries does not render their fees unreasonable, (Mem. Op. & Order of July 13, 2023 at 14), and GuoLi does not convince us that we erred. Single time entries that cover multiple activities or activities relating to more than one defendant are "neither surprising nor inappropriate" for large and complex cases like this one, *see Phoenix Bond & Indemnity Co. v. Bridge*, No. 05 C 4095 & 07 C 1367, 2012 WL 6091112, at *7 (N.D. Ill. Dec. 7, 2012), and our review of Plaintiffs' counsel's time sheets satisfied us that they allowed a reasonable assessment of the properly compensable time attributable to the Kunshan Defendants.

GuoLi cites a single decision, *Huss v. IBM Medical & Dental Plan*, No. 07 C 7028, 2010 WL 2836743 (N.D. Ill. July 15, 2010), in support of its argument. The Court in *Huss* stated that block billing is typically grounds for reducing an award in two instances: (1) when a time entry relates to multiple aspects of the same case, not all of which are compensable, and "it is not possible to determine the amount of time spent on each"; and (2) "when the entries lack enough specificity to determine if the time spent on each task is reasonable." *Id.* at *6. Neither instance is true here. Plaintiffs were able to estimate the percentage of time attributable to the claims against GuoLi and

Yiyuan, and their estimates were reasonable. Furthermore, Plaintiffs' counsel's time sheets were sufficiently detailed to permit our conclusion that the time spent on tasks was reasonable. Because GuoLi fails to identify any manifest error, its motion to vacate the attorneys' fees award is denied.

In our discretion, we deny Plaintiffs' requests for an order requiring GuoLi to pay their reasonable expenses and attorneys' fees incurred in responding to GuoLi's motions. (*See* Pls.' Opp'n GuoLi's Mot. Recons. (Dkt. No. 541) at 15; Pls.' Opp'n GuoLi's Mot. Vacate at 40; Pls.' Opp'n GuoLi's Mot. Leave File Substitute Mem. (Dkt. No. 572) at 5.)

**CONCLUSION**

We deny the motion of Defendant Kunshan GuoLi Electronic Technology Co., Ltd. [524] for reconsideration of our determination that civil contempt sanctions are appropriate. A contempt order similar to that entered against Defendant Kunshan Yiyuan Medical Technology Co., Ltd. will issue.

We grant in part and deny in part the motion of Defendant Kunshan GuoLi Electronic Technology Co., Ltd. to file a substitute memorandum [556] in support of its motion to vacate. We have considered GuoLi's substitute memorandum to the extent that it includes (1) the Rule 55 material (which appears on pages 1, and 13 through 15 and in the entirety of Section D on pages 22 and 23) and (2) the qualifications on pages 9, 10, 11, 22, 23, and 31 regarding the documents it possessed, but not the remaining proposed additions.

We deny the motion of Defendant Kunshan GuoLi Electronic Technology Co., Ltd. to vacate the default judgment, permanent injunction, and award of attorneys' fees against it [532].

We find that the amount of attorneys' fees that Plaintiffs seek to recover on account of Defendant GL Leading's misappropriation of Plaintiffs' trade secrets is reasonable, with the exception of $1,348.00 in fees attributable to clerical work, and grant Plaintiffs' request in large

part [528]. We therefore award Plaintiffs and order Defendant GL Leading to pay attorneys' fees in the amount of $1,892,979.15.

It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: January 19, 2024