**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| XIAOLING CHE and JINYAN DUAN,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>SHENZHEN MUMUWAN MAOYI YOUXIAN GONG SI; SHENZHEN XIMEIKEJI YOUXIAN GONGSI; QINGYUNXIANGESIWEI-SHANGMAOYOUXIANGONGSI; and SHENZHEN MENGDUDU CHONGWU YONGPIN YOUXIAN GONGSI,<br><br>Defendants/Counter-Plaintiffs. | **Case No. 1:25-cv-04946**<br><br>Hon. Virginia M. Kendall |

**DECLARATION OF MARJORIE OUYANG IN SUPPORT OF DEFENDANTS' OBJECTIONS TO PLAINTIFFS' SUBMISSION OF ATTORNEYS' FEES AND EXPENSES**

I, Marjorie Ouyang, declare as follows:

1. I am the founding partner of Valley & Summit Law PC and counsel of record for Defendants/Counter-Plaintiffs in this action. I am admitted to practice before this Court. I submit this declaration in support of Defendants' Objections to Plaintiffs' Submission of Attorneys' Fees and Expenses. I have personal knowledge of the facts stated below and, if called as a witness, could and would testify competently to them.

2. On behalf of Defendants and the witness, I attended the remote deposition of Wan Zhang that Plaintiffs took on August 11, 2026 (Central Time) (the "Zhang Deposition").

3. Plaintiffs' Rule 30(b)(6) notice scheduled the deposition to begin on August 12, 2026 at 8:00 a.m. Hong Kong time, corresponding to August 11, 2026 at 7:00 p.m. Central Daylight Time. A true and correct copy of that notice is attached as Exhibit 1. The notice identifies forty-one topics for examination. Plaintiffs separately noticed Ms. Zhang's individual

deposition for the same date and time. A true and correct copy of the individual notice is attached as Exhibit 2.

4. I joined the remote deposition at approximately the noticed start time. Based on what I personally observed on the remote platform, Plaintiffs' counsel and the deposition personnel, including the court reporter and interpreter, were connected and available. The participants waited while Ms. Zhang completed the arrangements necessary to connect and proceed with the examination.

5. The examination went on the record at approximately 8:45 a.m. Hong Kong time and concluded at approximately 2:58 p.m. Hong Kong time. Attached as Exhibit 3 are true and correct excerpts from the certified transcript of the Zhang Deposition, including the cover and appearance pages and pages 4, 36–39, 47, 53–57, 69–77, 82–88, and 92–100.

6. From the noticed 8:00 a.m. start through the 2:58 p.m. conclusion, the elapsed time was 6 hours and 58 minutes, including the approximately forty-five minutes before the examination went on the record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2026, in Los Angeles, California.

/s/ Marjorie Ouyang
Marjorie Ouyang
VALLEY & SUMMIT LAW PC
One Park Plaza, Suite 600
Irvine, CA 92614
Tel: (909) 248-4522
marjorie.ouyang@valleysummitlaw.com

*Counsel for Defendants/Counter-Plaintiffs*

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
*Eastern Division*

| | |
|---|---|
| Xiaoling Che, et al.,<br><br>Plaintiffs/Counter-Defendants,<br>v.<br><br>Shenzhen Mumuwan Maoyi Youxian Gong Si, et al.,<br><br>Defendants/Counter-Plaintiffs. | Case No. 1:25-cv-04946<br><br>Honorable Virginia M. Kendall |

**PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 26 and 30(b)(6), Plaintiffs Xiaoling Che and Jinyan Duan, by and through their attorneys of record in this action, will take the deposition of Defendants Shenzhen Mumuwan Maoyi Youxian Gong Si, Shenzhen Ximeikeji Youxian Gongsi, QingYunXianGeSiWei-ShangMaoYouXianGongSi, and Shenzhen Mengdudu Chongwu Yongpin Youxian Gongsi (Defendants) upon oral examination beginning on August 12, 2026 at 8:00 am Hong Kong time (which corresponds to August 11, 7:00pm Central Daylight time) and will continue from day to day until completed. The deposition will be taken remotely and will be recorded by stenographic and/or audiovisual means. The deposition will be taken before a qualified notary public or other officer authorized by law to administer oaths.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), each Defendant shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the matters set forth in Exhibit A. Plaintiffs request that Defendants identify, for each person designated, the deposition topic(s) on which that person will testify. Defendants further

request that each witness bring to the deposition all documents reviewed in preparation for the deposition.

**EXHIBIT A**

**DEFINITIONS**

These Interrogatories are subject to the following definitions:

1. "Accused Products" mean every apparatus, product, device, or other instrumentality that Plaintiffs contend falls within the scope of any claim of the Asserted Patent in this Litigation, as identified in the Complaint, Plaintiffs' Infringement Contentions in this Litigation (including any amendments thereto), and/or any other assertion of infringement.

2. "Asserted Patent" means U.S. Patent No. 12,220,648, and any related patents or related patent applications.

3. "Communication" means any manner in which information is transmitted between two or more Persons, regardless of the medium used to transmit that information.

4. "Complaint" means the Amended Complaint in the above-captioned action filed in the Litigation on May 8, 2025 (Dkt. 3), and any amendments thereto.

5. "Document" includes electronically stored information and tangible things, as set forth in Fed. R. Civ. P. 34(a)(1)(A) and (B).

6. "Identify" when referring to Communications means to give, to the extent known,

   a. a description of the substance of the Communication;

   b. the form of the Communication (e.g., telephone, facsimile, email, etc.);

   c. the identity of all parties to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each Person;

d. the identity of the Person whom You contend initiated the Communication; and

e. the time, date, and place of the Communication.

7. "Identify," when referring to a Document, shall mean to state the general nature or type, the general subject matter, title, number of pages, date, author or originator, addressee or recipient, copy recipients, present depository or depositories, name and address of any Person(s) having custody, and any other necessary basis for identification of such Document.

8. "Identify," when referring to a Person, shall mean to state the full name, last known physical address, employer, job title, email address and phone number of such Person.

9. "Litigation" means Case No. 1:25-cv-04946, pending in the District Court for the Northern District of Illinois.

10. "Person" includes any natural individual, and any entity or organization including, for example, a corporation, partnership, joint venture, firm, trust, group, association, or governmental agency, and any division, department, or other unit.

11. "Prior Art" means all Documents that Relate to the subject matter of the Asserted Patent and that qualify as prior art under any subsection of 35 U.S.C. § 102, including all systems, methods, apparatus, publications, patents, or uses.

12. "Relating to," "Relate to" and "Related to" mean concerning, referring to, reflecting, pertaining to, evidencing, or constituting, either directly or indirectly, in whole or in part.

13. "Related Entity" means any individual, business, corporation, partnership, sole proprietorship, marketplace seller account, manufacturer, supplier, distributor, or other entity that has directly or indirectly participated in the manufacture, sourcing, importation, marketing,

offering for sale, sale, fulfillment, or distribution of any Accused Product, including through shared ownership, management, employees, facilities, suppliers, inventory, financial accounts, marketplace accounts, email addresses, telephone numbers, business addresses, or family relationships.

14. "You," "Your," and "Defendants" mean Shenzhen Mumuwan Maoyi Youxian Gong Si, Shenzhen Ximeikeji Youxian Gongsi, QingYunXianGeSiWei-ShangMaoYouXianGongSi, and Shenzhen Mengdudu Chongwu Yongpin Youxian Gongsi, individually and collectively, as well as any of their past or present owners, officers, directors, agents, servants, employees, in-house and outside attorneys, accountants, consultants, predecessors in interest, corporate parents, affiliates, subsidiaries, or other Persons or entities acting on their behalf.

15. The use of the singular form of any word includes the plural and vice versa.

**TOPICS FOR EXAMINATION**

1. Your first knowledge or awareness of Plaintiffs or any puzzle board products sold by Plaintiff.

2. The timing and circumstances of when you first became aware of the Asserted Patent, or any application that led to the Asserted Patent.

3. Your actions (if any) in response to becoming aware of Plaintiffs, Plaintiffs' puzzle board products, the Asserted Patent, or any application that led to the Asserted Patent.

4. The conception, development and design of each Accused Product.

5. The manufacture and assembly of each Accused Products.

6. The importation of each Accused Product.

7. The operation of each Accused Product.

8. The internal names, external names, part numbers, part names, marketing names, code names, or other unique identifiers for the Accused Products.

9. The manufacturing drawings and schematics for each Accused Products.

10. All versions of each Accused Product, and the dates of implementation of each version.

11. Identity of all stores and marketplaces through which each Accused Product is, or has been, sold and/or offered for sale.

12. Documents that are currently provided, or have been provided, to customers of the Accused Products, either within the packaging of the Accused Products or otherwise.

13. The market for the Accused Products, including the identity of competitors, market share, market revenue or pricing.

14. Investigations, analyses, opinions, consultations, or evaluations performed by or for You concerning infringement, validity, enforceability, licensing, or design-around efforts Relating to the Asserted Patent.

15. Your organization and management structure, including each Defendants role with respect to the Accused Products.

16. The legal relationship between Defendants.

17. Each Related Entity that participates in the manufacture, sourcing, importation, marketing, offering for sale, sale, fulfillment, and/or distribution of the Accused Products.

18. The identity of individuals who directly or indirectly own, manage, control, supervise, or participate in the operations of Defendants or any Related Entity relating to the Accused Products.

19. The identity of persons who have, or have had, signatory authority, access authority, or operational control over any financial account, payment processor account, or marketplace account used in connection with any Accused Product.

20. Communications, negotiations, meetings, or discussions between You and any third party Relating to licensing, acquisition, enforcement, valuation, or settlement of the Asserted Patent or related technology.

21. License or Settlement Agreements that You have entered into Relating to puzzle boards and/or the Accused Products.

22. For each Accused Product, the revenues (net and gross), profits, and number of units sold from February 11, 2025 to the present.

23. The costs associated with the sale, importation, or other transfer of the Accused Products, including cost of goods sold, shipping fees, taxes, advertising expenses, rebates, commissions, licensing fees, and/or general and administrative expenses.

24. The factual bases and supporting documents for any cost, expense, deduction, offset, or apportionment You contend should be applied to reduce or otherwise affect any damages award in this action.

25. Your projected or forecasted sales of the Accused Products.

26. Marketing, promotion, and advertising of the Accused Products, including content of Amazon product listings, Amazon advertising and search optimization, promotional activities, and related performance metrics (i.e., the extent to which Amazon search rankings, sponsored placements, reviews, ratings, or advertising affected sales of the Accused Products).

27. Consumer demand for the Accused Products, including the extent to which product features drive consumer demand for the Accused Products.

28. The pricing of the Accused Products, including pricing strategy, price changes, discounts, and promotional pricing.

29. Any efforts by You, or others on your behalf, to design around the Asserted Patent

30. Communications by You or anyone on your behalf with anyone at Amazon.com Relating to the Asserted Patent.

31. Communications by You or anyone on your behalf with anyone at Amazon.com Relating to the Accused Products.

32. Any non-infringing alternatives to the Asserted Patent that You contend were available at any time from February 11, 2025 to the present.

33. The factual bases for any and all reasons You contend that any Accused Product does not infringe the Asserted Patent.

34. The factual bases for any and all reasons You contend the Asserted Patent is invalid or unenforceable.

35. The factual bases for Your contention that Plaintiffs are not entitled to a permanent injunction against the Accused Products.

36. The factual bases for Defendants' position on what a reasonable royalty rate should be for the Asserted patent.

37. The factual bases for any of Defendants' affirmative defenses in this action.

38. Your polices concerning the retention and destruction of Documents.

39. Your efforts to locate, collect, organize and produce Documents in response to any discovery request in this litigation.

40. The authenticity and authorship of Documents produced by You in this litigation.

41. Your answers and responses, including all facts supporting the answers and responses, to Plaintiffs discovery requests, including interrogatories and requests for production.

Respectfully submitted,

Dated: July 21, 2026

/s/ Steven M. Lubezny

Edward H. Rice
Marina N. Saito
Steven M. Lubezny
Rice Technology Law Group
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@ricetechlaw.com
marina@ricetechlaw.com
steve@ricetechlaw.com
(224) 331-0568

*Counsel for Plaintiffs*
*Xiaoling Che and Jinyan Duan*

## CERTIFICATE OF SERVICE

I certify that a copy of the above, PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) was served on July 21, 2026, via email at the email addresses indicated below:

Marjorie Ouyang
Marta Rocha
Valley & Summit Law
1 Park Plaza, Suite 600
Irvine, CA 92614
marjorie.ouyang@valleysummitlaw.com
marta.rocha@valleysummitlaw.com

*Attorneys for Defendants Shenzhen Mumuwan Maoyi Youxian Gong Si, Shenzhen Ximeikeji Youxian Gongsi, QingYunXianGeSiWei-ShangMaoYouXianGongSi, and Shenzhen Mengdudu Chongwu Yongpin Youxian Gongsi*

/s/ Steven M. Lubezny
Rice Technology Law Group
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
steve@ricetechlaw.com
(224) 331-0568

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
*Eastern Division*

| | |
|---|---|
| Xiaoling Che, et al.,<br><br>Plaintiffs/Counter-Defendants,<br>v.<br><br>Shenzhen Mumuwan Maoyi Youxian Gong Si, et al.,<br><br>Defendants/Counter-Plaintiffs. | Case No. 1:25-cv-04946<br><br>Honorable Virginia M. Kendall |

**PLAINTIFFS' NOTICE OF DEPOSITION OF WAN ZHANG PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(1)**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(1), Plaintiffs Xiaoling Che and Jinyan Duan, by and through their attorneys of record in this action, will take the deposition upon oral examination under oath of Wan Zhang. The deposition will take place on August 12, 2026 at 8:00 am Hong Kong Time (which corresponds to August 11, 7:00pm Central Daylight Time) and will continue from day to day until completed. The deposition will be taken remotely and will be recorded by stenographic and/or audiovisual means. The deposition will be taken before a qualified notary public or other officer authorized by law to administer oaths.

Respectfully submitted,

Dated: July 21, 2026

/s/ Steven M. Lubezny

Edward H. Rice
Marina N. Saito
Steven M. Lubezny
Rice Technology Law Group
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@ricetechlaw.com
marina@ricetechlaw.com

steve@ricetechlaw.com
(224) 331-0568

*Counsel for Plaintiffs*
*Xiaoling Che and Jinyan Duan*

**CERTIFICATE OF SERVICE**

I certify that a copy of the above, PLAINTIFFS' NOTICE OF DEPSOITION OF WAN ZHANG PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(1) was served on July 21, 2026, via email at the email addresses indicated below:

Marjorie Ouyang
Marta Rocha
Valley & Summit Law
1 Park Plaza, Suite 600
Irvine, CA 92614
marjorie.ouyang@valleysummitlaw.com
marta.rocha@valleysummitlaw.com

*Attorneys for Defendants Shenzhen Mumuwan Maoyi Youxian Gong Si, Shenzhen Ximeikeji Youxian Gongsi, QingYunXianGeSiWei-ShangMaoYouXianGongSi, and Shenzhen Mengdudu Chongwu Yongpin Youxian Gongsi*

/s/ Steven M. Lubezny
Rice Technology Law Group
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
steve@ricetechlaw.com
(224) 331-0568

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

- - - - - - - - - - - - - x
XIAOLING CHE, et al., :
Plaintiffs/Counter- :
Defendants, : Case No.
v. : 1:25-cv-04946
SHENZHEN MUMUWAN MAOYI :
YOUXIAN GONG :
SI, et al., :
Defendants/Counter- :
Plaintiffs. :
- - - - - - - - - - - - - x

Videotaped 30(b)(6)Deposition of Various Companies
Taken by and through their representative,
WAN ZHANG
Conducted Virtually
Tuesday, August 11, 2026
8:45 a.m. HKT

Pages: 1 - 100
Reported By: Jessica Shines, CSR, RPR

C O N T E N T S


| EXAMINATION OF WAN ZHANG | PAGE |
|---|---|
| BY MR. RICE | 6 |


E X H I B I T S

ALL EXHIBITS ATTACHED TO THE TRANSCRIPT


| Exhibits | Page Marked |
|---|---|
| 1 | 20 |
| 2 | 25 |
| 3 | 52 |
| 4 | 54 |
| 5 | 66 |
| 6 | 74 |
| 7 | 76 |
| 8 | 78 |


(EXHIBITS RETAINED BY COUNSEL)

P R O C E E D I N G S

THE VIDEOGRAPHER: We are now on the record. The time is 8:45.

She can click Okay on the screen.

The time is 8:45 a.m. Hong Kong time on August 11th -- excuse me -- August 11th, 2026. This begins the videoconference deposition of Wan Zhang taken in the matter of Xiaoling Che, et al. versus Shenzhen Mumuwan, et al. filed in the United States District Court for the Northern District of Illinois, the case number of which is 1:25-cv-04946. My name is Adam Mason. I am your remote videographer today. Will everyone present please identify themselves and state whom you represent.

MR. RICE: This is Edward Rice representing the plaintiffs, Xiaoling Che and Jinyan Duan.

Marjorie, are you going to identify yourself for the record?

MS. OUYANG: Yes. Marjorie Mingzi Ouyang representing the defendants and also defending the witness here today for the

before the break?
THE REPORTER: Question. Question, The supplier operates the factory where these tables are made?
Answer, Yes.
BY MR. RICE:
Q. Is -- I'm sorry. Go ahead.
Is Dongguan Hongyuan Electronics Co. Ltd. the supplier that Mumuwan uses for the accused puzzle table products?
THE INTERPRETER: Would you repeat the name of the supplier for the interpreter, please.
MR. RICE: Yes, and I'll spell it. Dongguan. D as in dog, O-N, G-G-U-A, N as in Nancy. Hongyuan -- H-O, N as in Nancy, G-Y-A, N as in Nancy -- Electronics Co. Ltd.
THE WITNESS: Yes, yes.
BY MR. RICE:
Q. Do you know whether Dongguan Hongyuan Electronics Co. Ltd. manufactures the puzzle tables that are sold by the other defendants in the litigation?
A. I don't know about that. This company

manufactures for us.

Q. Does anyone at Mumuwan know which company manufactures the puzzle tables for the other three defendants?

A. No.

Q. So to get the information regarding who manufactures and supplies the puzzle tables to the other three defendants, I would have to ask someone from those companies; is that correct?

A. Yes.

Q. Okay. Who ordered the products that Mumuwan purchased from this supplier?

A. Purchase. The purchasing person.

Q. And the purchasing person is different from the salesperson?

A. No. They're the same person.

Q. Okay. Do you know whether the Mumuwan puzzle tables sold on Woodever Direct were sold on Fulfillment by Amazon or fulfillment by manufacturer?

A. Amazon.

Q. So these ASINs are sold F as in Frank, B as in boy, A. Is that right?

THE INTERPRETER: Would you spell that

again, please.

MR. RICE: Yes. F as in frank, B as in boy, A. FBA.

THE WITNESS: Yes.

BY MR. RICE:

Q. Has Mumuwan -- let me start again.

Since Mumuwan began selling puzzle tables, has it changed the design of any of its puzzle table products?

A. Yes.

Q. Which designs did Mumuwan change? Which products did Mumuwan change?

A. The product that was sold in that store that was mentioned earlier.

Q. The product with the ASIN ending in KW?

A. Yes.

Q. How many times did Mumuwan change the design of the product ending in ASIN KW?

A. We have provided a written document regarding these specifics.

Q. Do you know -- well, would you need to look at a document to be able to answer this question?

A. Do you want the particular name of the

document that has this information? I know this information is contained based on the list of documents.

Q. Do you have the list in front of you?

A. Not now.

Q. Did Mumuwan change the product design more than one time?

A. Yes.

Q. Why did Mumuwan change the product design? Well, can you recall the first time that Mumuwan changed the product design?

A. In order to optimize the product structure, to make it more cost-effective and sturdy.

Q. When did Mumuwan make this change?

A. You meant when? I don't remember when exactly.

Q. Was it before this lawsuit was filed?

A. Yes. Roughly, I remember it as in 2024.

Q. Okay. Do you remember specifically what structural changes were made to optimize the cost and make it more sturdy?

A. I don't remember the specifics.

A. You meant how many ASIN numbers associated with puzzle tables that have been in sale by the company, right?

Q. Yes.

A. I am only aware that we sell puzzle tables. I am not -- I do not know how many ASIN numbers.

Q. Who would know that information?

A. Our salesperson.

Q. Has Mumuwan ever sold puzzle tables into the United States through any sales channel besides Amazon?

A. No, only via Amazon.

Q. Has Mumuwan sold puzzle tables through any Amazon store other than Woodever Direct?

A. No.

Q. Are you aware of a defendant named X-I-M-E-I?

MR. RICE: No, no. Again, Shenzhen X-I-M-E-I-K-E-J-I, Y-O-U-X-I-A-N, Gong Si.

THE WITNESS: This is one of the companies that I am representing today, right?

BY MR. RICE:

column it says Shenzhen Mumuwan Trading Co. Ltd.
Do you see that?
A. I can see it. Does it mean manufacturer?
Q. Manufacturer is the word that is in the left column.
A. I don't know. We -- Mumuwan doesn't manufacture. Where does this information come from?
Q. If you look at the top left corner of the exhibit, there is a URL that identifies the Internet page where this information is found and it's coming from the Amazon website.
A. I know about that, but do they need to verify first before putting up this information? Our company do not manufacture.
Q. Does Mumuwan manufacture -- is -- does Mumuwan manufacture any products at all?
A. No. It's a trading company.
Q. Okay. Do you have any idea why a company who sells the Norbase-brand puzzle table would identify Mumuwan as the product's manufacturer?
A. I don't know why. I want to know why

as well.
Q. Okay. Are you familiar with an Amazon store called Norbase U.S. Direct?
A. No.
Q. Okay. Let me show you another document. I'm going to mark a document Exhibit 4. This is a document that was provided to us by the defendants. Are you able to read any of this document?
A. I can't.
(Whereupon, Exhibit 4 was introduced into the record.)
BY MR. RICE:
Q. Okay. The first column is entitled Business Name and the second column is entitled Account. Do you see that?
A. Yes.
Q. On the last row of Exhibit 4, the business name listed is Shenzhen Nuo, N-U-O, Beishi, B-E-I-S-H-I, Chuang, C-H-U-A-N-G, Yifa, Y-I-F-A, Zhan, Z-H-A-N, Co. Ltd.
Do you see that?
A. Yes, I can see it.
Q. Are you familiar with that company?

A. No.
Q. Did you review any Mumuwan finance documents in preparation for your deposition today?
A. Not a specific document.
Q. What do you mean when you say "not a specific document"?
A. You asked about a specific financial document. I did not. I did not review.
Q. Did you review any sort of financial documents belonging to Mumuwan to prepare for today's deposition?
A. No. Some basic information I know, but I didn't review any documents on paper.
Q. Okay. When Mumuwan calculates its profits for the accused products, what type of costs does it subtract from gross revenue to identify product -- to identify profits?
A. I do not know the specifics, but generally the costs include transportation costs, advertising costs, purchasing prices, and warehouse storage fees.
Q. Do you know how much Mumuwan pays for transportation costs for the accused products?

A. I don't know the detailed information.

Q. Is -- do you have the same answer for the advertising costs, the purchasing costs, and the warehousing costs?

A. Yes, I cannot tell the specific amounts.

Q. Who would be able to address the specific amounts?

A. The salesperson. The finance -- the finance person should know the best.

Q. Are you familiar with the seller central portal on Amazon for the Mumuwan and Woodever Direct store?

A. Seller central portal. What does that mean?

Q. If you want to know how many products, how many accused products Mumuwan sold on Amazon, do you know how to get that information from the Amazon web page?

A. I do not know the detailed web address because I do not have to go to that place to view.

Q. Is there another place where you go to view that information?

A. If I want to view this information, the

finance division can provide the information to me.

Q. Have you asked the finance division to provide you with the current sales revenue data for Mumuwan's accused products?

A. I have, roughly.

Q. When did you do that?

A. Before I learned that I needed to do the deposition.

Q. And what did you do to learn that information?

A. Through the data from the finance, I learned about sales, the rough profit, et cetera.

Q. What -- of what time period -- well, let me ask the question, what were the rough profit figures you obtained?

A. For what time period?

Q. From February of -- February 11, 2025 until now.

A. Sales revenue is probably [redacted]

Q. Is that for all of the accused products that Mumuwan sells?

A. Yes.

Q. And that's the period from February 11,

'25, to the present day?

MR. RICE: I'm sorry. I didn't hear the answer.

THE WITNESS: Yes, that's the sales revenue.

BY MR. RICE:

Q. Okay. That's sales revenue for all of the accused Mumuwan products from February 11, 2025, to the present roughly; is that correct?

A. Yes.

Q. And what -- what [redacted]e the profits corresponding to these sales?

A. Profit is probably [redacted]

Q. Okay. And again, that's for all of the accused Mumuwan products from February 11, 2025, to the present day?

A. Yes.

Q. And this information is based on data you obtained from the finance department at some point before you learned you needed to do this deposition, is that right?

A. Yes.

Q. If we wanted to obtain exact numbers on

the sales revenue and profits, where would you go to get that information?

A. I will still need to fetch the data from the finance.

Q. Do you know whether this -- the sales revenue information is also available on Amazon?

A. I know that the -- I know that there can be access, but I don't know how. I haven't done that before.

Q. Is there someone at Mumuwan who is familiar with how to obtain revenue information from Amazon?

A. Salesperson. The salesperson.

Q. Okay. Do you have any idea how much revenue Ximei generated under the accused puzzle table ASINs since February 11, 2025?

A. I don't.

Q. Do you have any idea of Ximei's costs associated with the accused puzzle table products?

A. I don't.

Q. Okay. And you're not familiar with any of the Ximei documents; is that correct? The Ximei documents produced in this litigation.

A. Correct.

that question to you.

Q. Okay. Did Mumuwan ever consider taking a license to practice the patent?

A. Based on the circumstances we are in, if we can sell the products, then we will just keep going and we just hope that the case will end soon.

Q. Has Mumuwan ever considered changing its product design to avoid the claims in the lawsuit?

A. We -- we haven't been involved in infringement at all, so we do not need to consider change of product design nor compensation.

Q. Are all of the accused puzzle table products that Mumuwan sells the same basic product design?

A. Yes.

Q. Who provided the initial product design for the accused products?

A. You said provided the product design. To whom?

Q. Let me -- let me rephrase the question.

Who designed the Mumuwan accused products?

A. Our product design team.
Q. How many people are on the product design team?
A. There are two people on the product design team.
Q. Do you know what features Mumuwan considered to be important in designing this puzzle table product?
A. Cost-effective. We want to sell cost-effective products.
Q. Do you believe that the Mumuwan accused products have a competitive advantage over other similar puzzle table products on the market?
A. Yes. Yes, our products are light and structurally optimized and cost-effective.
Q. What do you mean when you say structurally optimized?
A. This refers to the design changes we made which we talked about earlier.
Q. So --
A. Basically, in designing the -- in making the changes in design, we have made them lighter and easier to carry and more cost-effective.

Q. How much less does your accused products weigh than the competing -- similar competing products?

A. Our products is very competitive in terms of its weight. In addition to being structurally sturdy, it only weighs about three kilograms.

Q. How much do the competitor puzzle tables weigh?

A. I don't know the specifics, but I know that in terms of weight, our product is very competitive.

Q. Did someone on the Mumuwan team purchase a competitor's products and compare the weight?

A. No, not necessary. It's not necessary to do that.

Q. Why? How would you know -- how would you know that your products weigh less unless you measure?

A. Not necessary because the specifications of the product will show all the details including the size, the weight. And it's just like you buy some product from Chinese Taobao

Act. It's very similar.

THE INTERPRETER: Taobao spells like T-A-O-B-A-O for the court reporter.

BY MR. RICE:

Q. What was your reason for believing that customers wanted to have a lighter-weight product?

A. As far as a puzzle table is concerned, it is bulky by nature. If the product is weighing less, then it is lighter and easier to carry. For the seller, that means less material will be used and, therefore, costs is reduced. From the consumer's perspective, they would be more willing to buy. So it is more cost-effective.

Q. Did you receive any information directly from consumers regarding a preference for lighter puzzle tables?

A. Through what China -- in what way do we get direct feedback from the consumers? We have enjoyed a large sales volume. That means our product is competitive. And as a consumer, I would prefer to buy a lighter wooden bulky product myself.

Q. Did your company perform any sort of consumer surveys or consumer studies to determine

Q. Is there any sort of connection between the defendant companies in terms of coordinating any of their sales activities?

A. I don't know about that.

Q. Would someone else at Mumuwan know about that?

A. I don't know whether they know about that or not.

Q. Is that the sort of information you would expect to know about as the general manager of the company?

A. I do general management. I haven't dived deeper into sales.

Q. Okay. Who owns Mumuwan?

A. Mumuwan belongs to our whole team.

Q. Does the whole team own Mumuwan in equal shares?

A. Everyone participates in decision-making. They have their different duties.

Q. Who is the financial owner of Mumuwan?

A. Financial owner? What do you mean by that?

Q. Does somebody own the company?

A. Me. I own shares.
Q. Do you own all the shares of the company?
A. Yes.
Q. Do you know who owns the other defendant companies?
A. I don't know about that. I don't.
Q. Do you know an individual named Baojing Wang spelled B-A-O-J-I-N-G, Wang, W-A-N-G?
A. No.
Q. Do you know an individual named Q-I-N, new word L-I-U?
A. No.
Q. Do you know an individual named Y-U-C-A-I, second name L-I-A-O?
A. No.
Q. Would you be able to describe in detail the changes that Mumuwan made to the accused products since February 11, 2025?
A. The product design division was responsible for that based on the needs that was learned from the sales. I cannot give detailed description.
Q. Okay. I am going to read a list of

A. What does that question mean?
Q. Well, has Mumuwan ever shipped the accused products with the rotating pieces already attached to the board?
A. I don't know about these specifics.
Q. And who would know?
A. The salesperson.
Q. Do you know whether the defendants have made any attempts to find physical samples of earlier puzzle tables that came before the patent that's in the litigation?
A. What does this question mean? Who? Get what?
Q. Okay. Is it -- do you understand that the defendants have asserted that the plaintiff's patent is invalid?
A. Yes, I know that.
Q. Do you know the reasons why the defendants have asserted that the plaintiff's patent is invalid?
A. Because these products had long been sold online well before the patent was licensed. Then how could the patent be valid? And according to the list of products we have submitted, we have

already submitted proof that these products had been sold way, way back online. So that proves the patent is invalid.

Q. Do you know whether the defendants have made an effort to find physical samples of the products that you believe were sold long before the patent?

A. I am not sure, but I believe they should have been done.

Q. Did you -- were you personally involved in any efforts to find physical samples of products that were sold before the plaintiff's patent?

A. No, I wasn't involved.

Q. Do you know whether anyone else from Mumuwan would have been involved in trying to locate physical samples of earlier puzzle tables that predate the plaintiff's patent?

A. I don't know.

Q. Okay. Let me take a short two-minute break and I'm just going to look over my notes and see if there's anything left.

MR. RICE: Marjorie, do you plan on asking the witness any questions?

MS. OUYANG: We don't plan to ask the witness any questions.

MR. RICE: Okay. Give me two minutes and I'll be back.

THE VIDEOGRAPHER: Would you like to go off the record, Counsel? Yeah, of course.

MR. RICE: Yes, please.

THE VIDEOGRAPHER: This marks the end of Media No. 4. The time is 2:37 p.m. We are off the record.

(Whereupon, there was a recess in the proceedings.)

THE VIDEOGRAPHER: This marks the beginning of Media No. 5. The time is 2:52 p.m. We are on the record.

MR. RICE: I do not have additional questions for this witness. And I -- I don't want to debate this issue on the transcript, but I want to make a record that we reserve our right, number one, to depose a witness who can answer questions on the 30(b)(6) topics on behalf of the other defendants; two, to address the 30(b)(6) topics that are directed to Mumuwan that this witness was

unable to answer; and three, to ask the Court to address the objection and instruction not to answer with the names of the members of the Mumuwan team, including the division heads. Given that this deposition was taken after business hours, we were unable to contact the Court for a ruling, but we reserve that issue for -- for future discussion and for potential motion practice.

MS. OUYANG: Yeah. So, Mr. Rice, we can always meet and confer regarding producing additional witnesses, but we are aware that discovery cutoff has already expired. So do you have any proposal regarding the discovery cutoff?

MR. RICE: Discovery has cut off.

MS. OUYANG: Yeah.

MR. RICE: That's my understanding. There was a carve-out for this 30(b)(6) deposition. There were no objections made to any of the deposition topics, so I assume that they're all fair game. And this witness was not able to answer questions on behalf of the other defendants, so we have no

information, no deposition testimony about any of the topics really from -- with regard to the other witnesses -- I'm sorry -- the other defendants.

So the carve-out that we had relied on is not -- does not work because this witness was not prepared to respond to the 30(b)(6) topics on behalf of all defendants. And therefore, I think under the existing carve-out we're entitled to complete our 30(b)(6) deposition with whatever witnesses you present as the corporate spokespeople for the other defendants. We can also discuss the topics that this witness was not able to answer but instead identified other individuals at the company who would have the information that she does not have and she did not obtain from these others in preparation for her 30(b)(6) deposition.

MS. OUYANG: We can always meet and confer to save recourses for the court.

MR. RICE: I'd be happy to meet and confer. We can -- we don't have to do that now. I just wanted to make the record before

closing the deposition formally.
MS. OUYANG: Understood, understood.
THE VIDEOGRAPHER: Thank you, everyone. Before we go off the record, I'll just need to get the orders. I'll start with you, Mr. Rice. Would you like your video copy expedited?
MR. RICE: It does not need to be expedited.
THE VIDEOGRAPHER: Would you like it synced?
MR. RICE: Yes, please.
THE VIDEOGRAPHER: Of course. And would you like your transcript expedited?
MR. RICE: I don't think we need it -- is it possible to get a rough copy or -- actually, we may need -- we may need a transcript because yeah, there may be issues we need to raise. So yes, I'd like to order an expedited copy of the transcript.
THE VIDEOGRAPHER: I believe you just need to give our court reporter a date that you would like that.
MR. RICE: What is the normal

turnaround time?
THE REPORTER: Two weeks is regular. Expedited can be anything from next day to a week. It's up to you.
MR. RICE: Okay. Could we get it by -- it's been -- I assume the price varies depending on how expedited.
THE REPORTER: It does.
MR. RICE: Monday, please.
THE REPORTER: Sounds good.
MR. MASON: Thank you so much, Mr. Rice.
And, Ms. Ouyang, would you like to order a video or transcript today?
MR. RICE: We would -- yeah, we wouldn't need -- we don't need a video, but we would need a transcript. How much is the paper transcript?
THE VIDEOGRAPHER: I don't --
THE REPORTER: I can have them contact you.
MS. OUYANG: Oh, okay. So if we can know the price, then we really appreciate it. Yeah. If we need it, we'll just need a paper

copy of the transcript. We don't need the video copy.

THE VIDEOGRAPHER: Thank you so much. Ms. Ouyang. If there's nothing further, please stand by for read-off.

This marks the end of Media No. 5 and concludes today's deposition. The time is 2:58 p.m. We are off the record.

(Off the record at 2:58 p.m. HKT.)

CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC

I, Jessica Shines, the officer before whom the foregoing deposition was taken, do hereby certify that said proceedings were electronically recorded by me; that reading and signing was not requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 18th day of August, 2026.

Notary Registration No.: 929934
My Commission Expires: 06/01/2030

Jessica Shines

_______________________________

Jessica Shines, Certified Shorthand Reporter,
Registered Professional Reporter, and Notary
Public for the State of Illinois

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, I electronically filed the foregoing Declaration of Marjorie Ouyang in Support of Defendants' Objections to Plaintiffs' Submission of Attorneys' Fees and Expenses with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Marjorie Ouyang
Marjorie Ouyang
VALLEY & SUMMIT LAW PC
One Park Plaza, Suite 600
Irvine, CA 92614
Tel: (909) 248-4522
marjorie.ouyang@valleysummitlaw.com

*Counsel for Defendants/Counter-Plaintiffs*