IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
*Eastern Division*

| | |
|---|---|
| Xiaoling Che, et al., Plaintiffs/Counter-Defendants, v. Shenzhen Mumuwan Maoyi Youxian Gong Si, et al., Defendants/Counter-Plaintiffs. | Case No. 1:25-cv-04946<br>Honorable Virginia M. Kendall |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND FINAL UNENFORCEABILITY AND INVALIDITY CONTENTIONS DUE TO CLAIM CONSTRUCTION ORDER**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

A. Defendants' Original Unenforceability and Invalidity Contentions Were Limited. .......... 3

B. Defendants' Abandoned Their Proposed Constructions during the Claim Construction Proceedings. .......... 4

C. Defendants' Proposed Amendments .......... 6

III. LEGAL STANDARD AND BURDEN .......... 7

IV. ARGUMENT .......... 8

A. Defendants Have Failed to Establish Good Cause for Their Proposed Amendments. .......... 8

1. The Court's Claim Construction Order Does Not Justify Defendants' Proposed Amendments. .......... 8

2. Defendants Fail to Demonstrate Diligence in Identifying and Asserting Their New Evidence. .......... 11

3. Defendants' New Inequitable Conduct Allegations Provide No Independent Basis for Amendment. .......... 13

B. Defendants Cannot Demonstrate the Absence of Unfair Prejudice. .......... 14

1. The Proposed Amendments Would Deprive Plaintiffs of Meaningful Fact Discovery. .......... 14

2. The Expert Discovery Schedule Does Not Eliminate Prejudice to Plaintiffs. .......... 15

V. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*ACME Worldwide Enters. v. United States,*
2022 U.S. Claims LEXIS 2324 (Fed. Cl. Oct. 11, 2022) ....................8-9

*Dexia Crédit Local v. Rogan*,
629 F.3d 612 (7th Cir. 2010) ....................9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006)....................14

*Oleksy v. GE*,
2013 U.S. Dist. LEXIS 107638 (N. D. Ill., July 31, 2013)....................8

*Peerless Indus., Inc. v. Crimson AV, LLC*,
2013 U.S. Dist. LEXIS 168684 (N.D. Ill. Nov. 27, 2013)....................8, 12

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................10

*Silver State Intellectual Techs., Inc. v. Garmin Int'l, Inc.*,
32 F. Supp. 3d 1155 (D. Nev. 2014)....................9

*Sloan Valve Co. v. Zurn Indus., Inc.*,
2013 U.S. Dist. LEXIS 22739 (N.D. Ill. Feb. 20, 2013) ....................8, 11

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011)....................13

*Verinata Health, Inc. v. Sequenom, Inc.*,
2014 U.S. Dist. LEXIS 25406 (N.D. Cal. Feb. 16, 2014) ....................9

*Xodus Med. Inc. v. U.S. Surgitech, Inc.*,
2025 U.S. Dist. LEXIS 63813 (N.D. Ill. Mar. 14, 2025)....................12-13

# I. INTRODUCTION

Defendants seek leave to rewrite their final invalidity and unenforceability contentions but offer no justification for doing so. Under LPR 3.4, Defendants bear the burden of establishing good cause for their proposed amendments. They also must demonstrate the absence of unfair prejudice to Plaintiffs. Defendants fail on both counts.

Defendants' argument for good cause consists of a single conclusory assertion that the Court's Claim Construction Order "altered Defendants' understanding of the scope and meaning of the asserted claims." But this lone, generic assertion cannot carry their burden on a good cause requirement, which is fact specific. Defendants never address the central issue of a good cause showing; i.e., how the Court's Order supposedly changed their understanding of the claims, why that change warrants any particular amendment, or why they could not have asserted their new theories and evidence earlier. Defendants cannot satisfy their burden merely by invoking the Claim Construction Order without explaining how it justifies their amendments.

Notably, Defendants cannot claim surprise or trace a need for revised contentions to the Claim Construction Order. First, the Court construed only one term: "a fixing portion extending from the puzzle plate"—and it adopted verbatim the definition that Plaintiffs had proposed throughout this case. Second, even before the Court issued its order, Defendants themselves had effectively acknowledged that Plaintiffs' interpretation was correct. Third, the ultimate construction merely reflected—as the Court recognized—the ordinary and customary meaning of the words in the claim. Defendants can hardly suggest that they were blindsided by a plain meaning construction, as that is precisely where the claim construction analysis must begin under Federal Circuit doctrine.

As for the six other terms Defendants originally disputed, Defendants voluntarily withdrew their proposed constructions, leaving nothing for the Court to decide. Thus, the

Court's Order neither introduced an unexpected construction nor resolved any disputed issues. Defendants fail to explain how the Court's Order, which simply acknowledged Defendants' withdrawal of these terms, necessitated their proposed amendments.

Further, while the Court's construction of plain meaning cannot justify any amendment, Defendants seek nothing less than a wholesale overhaul of their contentions. They propose to rewrite their invalidity claim charts so extensively that not a single row of any claim chart remains unchanged. They also seek to add new prior art, new obviousness combinations, new theories based on the alleged sale of physical products, and entirely new indefiniteness and inequitable conduct defenses. They even seek to reverse their prior admissions concerning what the prior art discloses, including for limitations the Court never addressed. Defendants fail to explain why these theories could not have been asserted in their original contentions. The information underlying their proposed amendments was available long before the Court's Order. An adverse claim construction ruling is not a license to start over.

Finally, Defendants fail to establish the absence of unfair prejudice. Fact discovery has closed. Defendants' proposed amendments introduce new factual issues—including the alleged prior sale and structure of B&P products—that Plaintiffs had no opportunity to investigate. Permitting the amendments would force Plaintiffs either to defend against new theories without meaningful discovery or to reopen discovery at substantial additional expense and delay.

Defendants fail to carry their burden on any element of the LPR 3.4 standard. The Court should deny their motion.

## II. BACKGROUND

### A. Defendants' Original Unenforceability and Invalidity Contentions Were Limited.

Defendants served their "Initial Non-Infringement and Invalidity Contentions" on November 24, 2025. *See* Exs. A-F (Defendants Initial Non-Infringement and Invalidity Contentions and accompanying charts). In those contentions, Defendants charted four purported prior art references: (i) U.S. Patent No. 5,127,720 ("Shulz") (*see* Ex. B) (ii) U.S. Patent No. 400,600 ("Ackerman") (*see* Ex. C); (iii) U.S. Patent Publication No. 2021/0170267 ("Malki") (*see* Ex. D); and (iv) a November 23, 2017, YouTube review of a "Bits and Pieces Jumbo Size Wood Puzzle Plateau" ("B&P") *(see* Ex. E). Based on these references, Defendants presented the following "reasons for invalidity":

> Defendants state that B&P anticipates all of the asserted claims of the '648 Patent. Defendants further state that Malki anticipates claims 1, 5, 6, 9, 17, 19, and 23, while Ackerman anticipates claims 1 and 9. Defendants further state that Shultz renders obvious all of the asserted claims, either in light of itself, or in combination with B&P and/or Malki. Ackerman renders claims 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 17 obvious, either in light of itself, or in combination with B&P or Malki. Furthermore, Malki renders claims 2, 3, 4, 10, 11, 12, 13, 14, 15 obvious, either in light of itself, or in combination with either B&P or Ackerman.

Ex. A at 7.

Defendants stated plainly that they were *not* asserting invalidity on the following bases:

- "Defendants have not asserted invalidity based on indefiniteness, lack of written description, enablement or unpatentability at this time." *Id.*
- "Defendants have not asserted that the '648 Patent is unenforceable at this time." *Id.* at 8.

Defendants also stated that they were not asserting that any claim limitations were subject to 35 U.S.C. § 112(f). *Id.* at 4.

Defendants never served Final Invalidity Contentions as required by the Local Patent Rules. Accordingly, Plaintiffs notified Defendants that they would treat the Defendants' Initial

Invalidity Contentions as final invalidity positions. Ex. G. Defendants never responded or objected to Plaintiffs' notification. And until now, they never sought leave to amend their invalidity contentions.

### B. Defendants' Abandoned Their Proposed Constructions during the Claim Construction Proceedings.

The parties' claim construction dispute focused principally on one limitation: "a fixing portion extending from the puzzle plate." From the outset, Plaintiffs maintained that the Accused Products practiced this limitation because Defendants' puzzle boards include a first region constituting the puzzle plate and a second region constituting the fixing portion. By contrast, Defendants originally contended, in their Non-Infringement and Invalidity Contentions, that the Accused Products lacked a "fixing portion" which, according to Defendants, required a component separate from puzzle plate. Ex. F (stating Defendants' position that the "claim element requires two separate components, puzzle plate, and a fixing portion."). Defendants did not contend that the Accused Products lacked any other claim limitations. *Id*.

The parties exchanged proposed constructions on May 18, 2026. Defendants argued that "a fixing portion extending from the puzzle plate" should be construed to require "a distinct structural extension of the puzzle plate dedicated specifically to attaching the restricting wall." Ex. H. Defendants also identified six other terms that they insisted required construction, including two terms that Defendants now argue should be governed by 112(f). *Id.* Plaintiffs, by contrast, maintained that the "fixing portion" limitation should be given its plain and ordinary meaning, and that none of the other terms required construction, noting that Defendants had waived their arguments on those terms and, in any event, those terms were unrelated to any dispute in the case. Ex. I, *see also* Dkt. 79 at 5-7.

As the claim construction process progressed, Defendants retreated from all of their proposed constructions. In their August 10, 2026 reply brief, Defendants effectively assented to Plaintiffs' interpretation of the "fixing portion" limitation, admitting that the claimed fixing portion and the puzzle plate "may form parts of one integral board." Dkt. 80 at 5. Shortly before the claim construction hearing, Defendants also withdrew their request to construe the six remaining terms. *See* Dkt. 90 at 2 (representing at the claim construction that "none of the other terms require construction."). At the hearing, Defendants' counsel conceded many of Plaintiffs' points responding to Defendants' previous arguments on the six additional claim terms. *Id.* at 8[1] ("many of those have been waived" and that "honestly, I would tend to agree with [Plaintiffs' counsel] in terms of the other features, which is why I didn't want to consume the Court's time dispute them because it wouldn't be efficient.").

The Court issued its Claim Construction Order on September 15, 2026, construing the "fixing portion" limitation. Dkt. 87. As the Court acknowledged, "Defendants largely abandoned their original construction" for the "fixing portion" limitation. *Id.* at 1. The Court also rejected Defendants' new arguments, which the Court described as "opaque." *Id.* The Court thus determined that the "fixing portion" limitation should be given its "plain and ordinary meaning, as stated by the Plaintiffs." *Id*. The Court did not construe any of the other six terms because Defendants had voluntarily withdrawn their requests for construction. *Id*.

---

[1] In its proposed Supplemental Unenforceability and Invalidity Contentions, Defendants repeatedly refer to the "parties agreed-to construction." Dkt. 98-1 at 8. But the parties did not agree to any constructions. Defendants simply withdrew their insistence that terms required construction, thus avoiding any need for the Court to address them.

### C. Defendants' Proposed Amendments

Defendants now seek leave to file what Defendants refer to as "Supplemental" Final Unenforceability and Invalidity Contentions. Dkt. 98-1. Defendants state that the purpose of their amendments is to provide "additional clarifying arguments" and "evidence." Dkt. 100 at 4. Defendants' "clarification," however, introduces entirely new invalidity and unenforceability theories, entirely new evidence, and entirely new claim charts. Yet, Defendants offer no redline to highlight their proposed amendments. Nor do they attach their original contentions to compare. We provide here only a few examples to illustrate the nature of Defendants' amendments.

In their original contentions, Defendants stated plainly that they were not asserting any unenforceability defenses. Ex. A at 8. Defendants now seek to assert, for the first time, an inequitable conduct defense. Dkt. 98-1 at 9-10.

In their original contentions, Defendants disclaimed any invalidity defense based on indefiniteness. Ex. A at 7. Defendants now seek to assert, for the first time, that four terms in claim 23 (none of which were raised during claim construction) are indefinite. Dkt. 98-1 at 9.

Defendants seek to fundamentally change their prior art theories. In their original contentions, Defendants asserted that the claims were anticipated by a YouTube *video review* of a Puzzle table product from Bits & Pieces ("B&P"). Ex. A at 5, 7; Ex. E. Now, Defendants assert, for the first time, an invalidity defense based on one or more B&P *products* (which Defendants refer to as "B&P" or "B&P + Spinner"). Dkt. 98-1 at 4-5, 8; Dkt. 98-3 at 41-82. Defendants also seek to introduce previously undisclosed evidence concerning the purported sale of these newly-disclosed products. Dkt. 98-2; Dkt. 98-3 at 41-82.

Defendants seek to introduce new obviousness arguments based on a new patent reference, Watkins, which it never previously disclosed. Dkt 98-1 at 3, 6; Dkt. 98-3 at 83, 92-96, 100-101, 106, 111-113, 124-126, 135, 138, 141, 146-147, 153, 160, 163, 175-176.

Defendants have also rewritten their claim charts—in which not a single row remains unchanged. *Compare* Ex. D (original Malki chart) with Dkt. 98-3 at 1-40 (new Malki Chart); and Ex. E (original B&P chart based on YouTube review) with Dkt. 98-3 at 41-82 (new B&P Chart based on B&P products).

In addition to introducing new invalidity theories and evidence, Defendants seek to reverse their earlier admissions concerning what their prior art discloses—including with respect to claim limitations that were never addressed during claim construction. For example, in their original contentions, Defendants expressly acknowledged that the Malki reference *did not* disclose the limitations recited in claims 2, 3, 4, and 12. Ex. D at 11, 23. Now, Defendants seek to assert the exact opposite—that Malki *does* disclose those limitations. Dkt. 98-3 at 8-11, 24-25.

## III. LEGAL STANDARD AND BURDEN

The Local Patent Rules establish a structured sequence for disclosing infringement, non-infringement, unenforceability, and invalidity contentions, as well as the parties' claim construction positions. The Rules require parties to disclose their contentions within prescribed deadlines and strictly limit subsequent amendments. Local Patent Rule 3.4 provides:

> A party may amend its Final Infringement Contentions; Final Non-infringement, Unenforceability and Invalidity Contentions; or Final Contentions in Response to any Unenforceability and Invalidity Contentions only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment.

N.D. Ill. L.P.R. 3.4.

This Court has "interpreted the good cause requirement to not only require a showing that a valid basis for amendment exists but also that the party seeking leave to amend acted diligently." *Oleksy v. GE*, 2013 U.S. Dist. LEXIS 107638, *7-8 (N. D. Ill., July 31, 2013) (attached as Ex. J). "In showing diligence, the relevant inquiry is not when the party learned about the information, but when it could have made the discovery." *Sloan Valve Co. v. Zurn Indus., Inc*., 2013 U.S. Dist. LEXIS 22739, *6 (N.D. Ill. Feb. 20, 2013) (attached as Ex. K); *Peerless Indus., Inc. v. Crimson AV, LLC*, 2013 U.S. Dist. LEXIS 168684, *18 (N.D. Ill. Nov. 27, 2013) (attached as Ex. L).

The burden of establishing diligence and lack of prejudice falls on the party seeking leave to amend. *Oleksy*, 2013 U.S. Dist. LEXIS 107638 at *7-8.

## IV. ARGUMENT

### A. Defendants Have Failed to Establish Good Cause for Their Proposed Amendments.

#### 1. The Court's Claim Construction Order Does Not Justify Defendants' Proposed Amendments.

Under LPR 3.4, a party seeking to amend its final invalidity contentions bears the burden of showing (1) good cause and (2) absence of unfair prejudice to opposing parties. The rule identifies one example of what "may" support good cause—i.e., when "a claim construction by the Court [is] different from that proposed by the party seeking amendment." LPR 3.4. The rule's permissive language reflects that, while an adverse claim construction may support good cause in appropriate circumstances, it does not automatically establish good cause. The moving party still bears the burden of demonstrating that the particular amendments it seeks are justified by the claim construction ruling, that it acted diligently in pursuing those amendments and that the change is not prejudicial to the opposing party. *See, e.g., Oleksy*, 2013 U.S. Dist. LEXIS 107638 at *7-8; *Sloan Valve*, 2013 U.S. Dist. LEXIS 22739 at *5-15; *see also ACME Worldwide*

*Enters. v. United States,* 2022 U.S. Claims LEXIS 2324, *6 (Fed. Cl. Oct. 11, 2022) (finding no good cause for amendment when movant failed to show that the Court's claim construction of plain meaning "justifies amendment.") (attached as Ex. M); *Verinata Health, Inc. v. Sequenom, Inc*., 2014 U.S. Dist. LEXIS 25406, *6-7 (N.D. Cal. Feb. 16, 2014) ("Court's differing claim construction 'in and of itself does not constitute good cause.'") (attached as Ex. N); *Silver State Intellectual Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1162 (D. Nev. 2014) ("The fact that the Court adopts a claim construction different from that proposed by the party seeking to amend does not necessarily constitute good cause to amend, particularly where the Court adopts the construction proposed by the other party, as such a construction would not come as a surprise to the party seeking to amend.").

Here, despite bearing the burden, Defendants make almost no effort to establish the "good cause" requirement. Defendants' opening brief addresses this point only in one conclusory sentence,[2] claiming that the "the Court's Claim Construction Order altered Defendants' understanding of the scope and meaning of the asserted claims." Dkt. 100 at 5. Defendants do not explain how the order altered their understanding. They do not explain why that alleged altered understanding justifies any of the proposed amendments. They do not even attempt to explain how their myriad new invalidity theories relate to the Court's construction, let alone why the Court's finding of plain and ordinary meaning warrants wholesale revisions for every claim limitation in every claim chart.

---

[2] Since Defendants bear the burden of establishing good cause, they cannot defer their affirmative showing until reply, thereby depriving Plaintiffs of a fair opportunity to respond. *See, e.g., Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("arguments raised for the first time in a reply brief are waived.").

Rather, Defendants appear to suggest that the mere fact that the Court rejected Defendants' original proposed construction automatically entitles them to re-do their invalidity contentions. But LPR 3.4 requires more than an adverse claim construction ruling. It requires a showing that the amendments were necessitated by the Court's ruling, which Defendants could not reasonably have identified sooner. Defendants fail to make this showing, which alone warrants denial of their motion.

In any event, Defendants cannot possibly claim that the Court's construction of "a fixing portion extending from the puzzle plate" was unexpected or unforeseeable. The Court did not apply a construction that Defendants had no reason to consider previously. On the contrary, the Court adopted the very construction that Plaintiffs had advocated consistently throughout claim construction. Dkt. 87. Also, as explained above, Defendants themselves essentially conceded the correctness of Plaintiffs' interpretation well before the Court issued its order. Dkt. 80 at 5.

Moreover, one of the core principles of claim construction is that, absent lexicography or disavowal, claim terms are given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). In adopting Plaintiffs' "fixing portion" definition, the Court merely applied that longstanding rule. Dkt. 87 at 1. Defendants cannot complain that they were caught off guard by the Court's application of a construction that governing precedent presumes to be correct.

Likewise, Defendants cannot plausibly justify their amendments by pointing to the other six terms for which they, at one point, requested construction. Defendants voluntarily withdrew their requests to construe these terms, and the Court provided no construction of them in its order. Having abandoned its own proposed claim constructions, Defendants cannot credibly rely on the Court's treatment of these six terms as justifying their amendments.

If anything, Defendants' withdrawal of their proposed constructions simply returned them to the positions taken in their original contentions. For example, Defendants initially asserted that no claim terms were governed by 35 U.S.C. § 112(f). Ex. A at 4. They later reversed course, proposing that "rotating assembly" and "supplement arrangement" were subject to § 112(f). Dkt. 76 at 8-14. Defendants then reversed course yet again, withdrawing these proposed § 112(f) constructions and returning to their original position. It is difficult to imagine how this double reversal back to their original contentions can justify their present efforts to amend those contentions.

In sum, the Court's Order—which simply applies "plain and ordinary meaning" consistent with the default rule of claim construction—cannot justify the wholesale revisions Defendants now seek, particularly where Defendants have made no showing that the ruling necessitated any of their proposed amendments. Indeed, accepting Defendants' position would effectively transform any unsuccessful attempt to narrow a claim term during the claim construction proceeding into good cause for reopening final invalidity contentions. Under their reasoning, any party that loses a construction could, upon losing, claim that the Court's ruling unexpectedly changed its understanding of the claims. That would undermine the notice function of the Local Patent Rules and turn the limited exception recognized by LPR 3.4 into a mechanism for circumventing the finality of invalidity contentions.

### 2. Defendants Fail to Demonstrate Diligence in Identifying and Asserting Their New Evidence.

Even apart from their failure to connect the proposed amendments to the Court's claim construction, Defendants cannot establish diligence. As this Court has explained, "the relevant inquiry is not when the party learned about the information, but when it could have made the discovery." *Sloan Valve* 2013 U.S. Dist. LEXIS 22739 at *6. Defendants, however, do not claim

that they were unaware of, and could not have discovered earlier, their newly-asserted evidence and arguments regarding Malki, B&P, B&P + Spinner and Watkins. In fact, they concede that all of the prior art was known and readily available to Defendants long before the Court's claim construction order. Thus, there is no question that Defendants could have included all of these proposed amendments in their original contentions.

Defendants insist that there is no "unfair surprise" because *Plaintiffs* were supposedly aware of the new references. *Id.* at 6. But that is not the test for establishing *Defendants'* diligence. A party's general awareness of a prior art reference does not mean that it is on notice that the opposing part intends to assert a patent invalidity theory based on that reference. And here, Plaintiffs had no notice of Defendants' newly-formed invalidity theories.[3] Plaintiffs' knowledge of the references thus has no bearing on whether Defendants exercised diligence. Defendants' admitted knowledge of that art, however, underscores their lack of good cause for failing to assert their proposed theories earlier. *See, e.g., Peerless Indus.,* 2013 U.S. Dist. LEXIS 168684 at *17–22 (finding no good cause where the moving party had possessed the relevant information well before seeking amendment).

The *Xodus* case, on which Defendants rely, does not help them. Dkt. 100 at 6-7; Dkt. 100-4. The *Xodus* case does not suggest that the absence of prejudice excuses a lack of diligence. On the contrary, *Xodus* underscores the importance of diligence. There, the court permitted the movant to add an on-sale bar defense because it first obtained the necessary supporting facts during a deposition and moved to amend just six days later. *Xodus Med. Inc.*

[3] Defendants suggest that the B&P + Spinner evidence was identified as "potentially invalidating prior art" in *Xiaoling Che v. The Partnerships and Unincorporated Associations Identified in Schedule A*, 24-CV-9239 (N.D. Ill. 2024). Dkt. 100 at 7. However, that matter involved a design patent, and so the issues were entirely different from this case.

*v. U.S. Surgitech, Inc.*, 2025 U.S. Dist. LEXIS 63813, *6-14 (N.D. Ill. Mar. 14, 2025). Here, by contrast, Defendants identify no newly discovered evidence or other event that first supplied the basis for their proposed amendments. The underlying information was already available, and Defendants offer no explanation for failing to assert their new theories earlier. Unlike the movant in *Xodus*, Defendants have not demonstrated diligence and therefore cannot establish good cause.

**3. Defendants' New Inequitable Conduct Allegations Provide No Independent Basis for Amendment.**

Defendants separately assert that "good cause exists to add B&P + Spinner and Watkins references" because Plaintiffs allegedly engaged in inequitable conduct by failing to disclose those references during prosecution of the '648 Patent. Dkt. 100 at 7–8. This argument also fails.

Defendants fail to explain the connection between the Court's claim construction order and the references that the patentee purportedly failed to disclose to the Patent Office during prosecution. Indeed, there is no connection. Also, none of the facts underlying Defendants' new inequitable conduct argument are new and Defendants cannot deny that they were aware of them long before the claim construction ruling. Dkt. 100 at 7.[4]

Defendants cannot use a claim construction ruling as a vehicle to add unrelated unenforceability theories based on information that was available long before the ruling.

[4] Notably, Defendants' new inequitable conduct allegations are also facially deficient. Inequitable conduct requires both materiality and specific intent to deceive the Patent Office. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–91 (Fed. Cir. 2011). Mere knowledge of a reference and failure to disclose it do not establish deceptive intent. *Id.* at 1290. Defendants' proposed amended contentions identify no facts supporting a reasonable inference on the specific intent requirement. Indeed, Defendants acknowledge that they lack evidence of specific intent, stating that they still need "evidence from Xiaoling Che regarding why he did not disclose" the prior art. But fact discovery closed months ago.

### B. Defendants Cannot Demonstrate the Absence of Unfair Prejudice.

#### 1. The Proposed Amendments Would Deprive Plaintiffs of Meaningful Fact Discovery.

Defendants' failure to establish an absence of unfair prejudice provides an independent basis to deny their motion. The Local Patent Rules require parties to disclose their invalidity theories early enough for the opposing party to investigate those theories through discovery. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006) (explaining that patent local rules require parties to crystallize their theories early in litigation, thereby preventing a "shifting sands" approach). Defendants' proposed amendments would introduce new invalidity theories after the close of fact discovery, depriving Plaintiffs of the opportunity to investigate and rebut them. Permitting the amendments would either force Plaintiffs to defend against these theories without meaningful discovery or require reopening discovery at substantial additional expense and delay. Neither result is fair to Plaintiffs.

Defendants' newly asserted theories based on the purported sale of B&P products illustrate the prejudice. In their original contentions, Defendants relied on a YouTube video as an allegedly anticipatory reference. Now, Defendants seek to assert anticipation and obviousness based on the sale of physical products. This materially different theory raises new factual questions concerning when the products were sold, what features they possessed, and whether the various images Defendants rely upon even depict the same products.

Investigating these issues would require substantial third-party discovery concerning the products' design, manufacture, and sales.[5] Because Defendants failed to disclose these theories

[5] The need for additional discovery is not hypothetical. Since filing their motion, Defendants have attempted to produce additional evidence concerning the B&P products, including a declaration from an Office Manager at the Internet Archive, even though fact discovery closed months ago.

during fact discovery, Plaintiffs had no opportunity to obtain the evidence necessary to evaluate and rebut them.

#### 2. The Expert Discovery Schedule Does Not Eliminate Prejudice to Plaintiffs.

Defendants attempt to minimize the prejudice resulting from their proposed amendments by arguing that expert discovery has not yet begun. Dkt. 100 at 6. That argument fails for two reasons. First, expert discovery is no substitute for the fact discovery that Plaintiffs will have lost. Second, the reason that the Parties have not yet exchanged expert reports is due to the delay caused by Defendants' failure to provide an adequately prepared 30(b)(6) witness. *See, e.g.* Dkt. 94 (granting Plaintiffs' Motion to Compel adequate Rule 30(b)(6) testimony and supplemental document production). Defendants cannot rely on a delay of their own making to excuse their untimely disclosure of new invalidity theories.

## V. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Leave to Amend Their Final Unenforceability and Invalidity Contentions.

Respectfully submitted,

Dated: October 27, 2026

/s/ Marina N. Saito

Edward H. Rice
Marina N. Saito
Steven M. Lubezny
Rice Technology Law Group
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@ricetechlaw.com
marina@ ricetechlaw.com
steve@ ricetechlaw.com
(224) 331-0568

*Counsel for Plaintiffs*
*Xiaoling Che and Jinyan Duan*